No. 19-7616

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT**

————————————

**UNITED STATES OF AMERICA,**
*Plaintiff/Appellee*,

**v.**

**JUSTIN EUGENE TAYLOR,**
*Defendant/Appellant*.

————————————

**On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. M. Hannah Lauck)**

————————————

**JOINT APPENDIX**

**VOLUME I of I (pages 1 - end)**

————————————

| | |
|---|---|
| **G. ZACHARY TERWILLIGER**<br>**United States Attorney** | **GEREMY C. KAMENS**<br>**Federal Public Defender** |
| **Richard D. Cooke**<br>**Daniel T. Young**<br>**Assistant U.S. Attorneys**<br>**Counsel for Appellee**<br>**2100 Jamieson Avenue**<br>**Alexandria, VA 22314**<br>**(703) 299-3700** | **Frances H. Pratt**<br>**Laura J. Koenig**<br>**Assistant Federal Public Defenders**<br>**Counsel for Appellant**<br>**1650 King Street, Suite 500**<br>**Alexandria, VA 22314**<br>**(703) 600-0800** |

This page intentionally left blank for double-sided pagination and printing

# **TABLE OF CONTENTS**

District Court Docket Sheet (as of Mar. 28, 2020)......................................................1

Second Superseding Indictment (Feb. 4, 2009, Doc. 17) .......................................11

Transcript, Re-arraignment and Plea Hearing (Feb. 13, 2009, Docs. 30, 51) .........15

Plea Agreement (Feb. 13, 2009, Doc. 31) ...............................................................32

Statement of Facts (Feb. 13, 2009, Doc. 32) ...........................................................48

Judgment in a Criminal Case (May 14, 2009, Doc. 44) ...........................................52

Fourth Circuit Order (authorizing filed of second or successive § 2255
   motion) (June 24, 2016, Doc. 74) (attachments 1 and 2 omitted)......................59

Second or Successive Motion to Vacate Judgment Under 28 U.S.C. § 2255
   (June 27, 2016, Doc. 76)....................................................................................61

United States' Motion to Dismiss § 2255 (Dec. 2, 2016, Doc. 81)..........................84

Petitioner's Response to Government's Motion to Dismiss (Dec. 8, 2016,
   Doc. 82)...........................................................................................................98

Memorandum Order (May 6, 2019, Doc. 86)..........................................................106

Memorandum Order (May 28, 2019, Doc. 88).........................................................110

Government's Supplemental Memorandum on *Davis v. United States* (July 8,
   2019, Doc. 89)................................................................................................112

Reply to Supplemental Memorandum of the United States Regarding *United
   States v. Davis* (Aug. 13, 2019, Doc. 92) .......................................................129

Memorandum Opinion (Aug. 26, 2019, Doc. 93) ...................................................146

Order (Aug. 26, 2019, Doc. 94).............................................................................154

i

Notice of Appeal (Oct. 25, 2019, Doc. 95)..............................................................155

Fourth Circuit Order (granting certificate of appealability) (Feb. 13, 2020, Doc. 98)............................................................................................................157

2255,APPEAL,CLOSED,STAYED

# U.S. District Court
## Eastern District of Virginia – (Richmond)
## CRIMINAL DOCKET FOR CASE #: 3:08–cr–00326–MHL–RCY–1

Case title: USA v. Taylor
Related Cases: 3:12–cv–00468–JRS–RCY
3:16–cv–00508–MHL

Date Filed: 07/10/2008
Date Terminated: 05/14/2009

Assigned to: District Judge M.
Hannah Lauck
Referred to: Magistrate Judge
Roderick C. Young

Appeals court case numbers:
'09–4468' 'USCA', 19–7616 USCA

### Defendant (1)

**Justin Eugene Taylor**
*TERMINATED: 05/14/2009*
*also known as*
Mookie
*TERMINATED: 05/14/2009*
*also known as*
Mook
*TERMINATED: 05/14/2009*

represented by **Justin Eugene Taylor**
39504–083
FCI Edgefield
Post Office Box 725
Edgefield, SC 29824
PRO SE

**Robert James Wagner**
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219
804–343–0800
Email: robert_wagner@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender*

**James Fred Sumpter**
James F. Sumpter, Esq.
Willow Oaks Office Building
6767 Forest Hill Ave
Suite 312
Richmond, VA 23225
(804) 320–0472
Fax: (804) 320–4149
Email: jamessumpter@msn.com
*Designation: CJA Appointment*

**Laura Jill Koenig**
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219
(804) 343–0800
Email: laura_koenig@fd.org
*ATTORNEY TO BE NOTICED*

**Paul Eugene Shelton , Jr**
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219

**J.A. 1**

(804) 565–0890
Fax: (804) 648–5033
Email: paul_shelton@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 21:846 Conspiracy to Possess with Intent to Distribute and Distribute Marijuana (1) | DISMISSED ON MOTION OF GOVT. |
| 21:846 Conspiracy to Possess with Intent to Distribute and Distribute Marijuana (1s) | DISMISSED ON MOTION OF GOVT. |
| 21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE AND DISTRIBUTE MARIJUANA (1ss) | DISMISSED ON MOTION OF GOVT. |
| 21:846 Attempt to Distribute Marijuana (2) | DISMISSED ON MOTION OF GOVT. |
| 21:846 Attempt to Distribute Marijuana (2s) | DISMISSED ON MOTION OF GOVT. |
| 21:846 ATTEMPT TO DISTRIBUTE MARIJUANA (2ss) | DISMISSED ON MOTION OF GOVT. |
| 18:924(c) Use and Carry Firearm During and In Relation to a Drug Trafficking Crime (3) | DISMISSED ON MOTION OF GOVT. |
| 18:924(c) Possess a Firearm in Furtherance of Drug Trafficking (3s) | DISMISSED ON MOTION OF GOVT. |
| 18:924(c)POSSESS A FIREARM IN FURTHERANCE OF DRUG TRAFFICKING (3ss) | DISMISSED ON MOTION OF GOVT. |
| 18:1951 Conspiracy to Interfere with Commerce By Threats and Violence (4) | DISMISSED ON MOTION OF GOVT. |
| 18:924(c)Use and Carry Firearm During and In Relation to a Drug Trafficking Crime (4s) | DISMISSED ON MOTION OF GOVT. |
| 18:924(c) USE AND CARRY FIREARM DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME (4ss) | DISMISSED ON MOTION OF GOVT. |
| 18:1951 Interference with Commerce By Threats and Violence (5) | DISMISSED ON MOTION OF GOVT. |

**J.A. 2**

| | |
|---|---|
| 18:1951 Conspiracy to Interfere with Commerce By Threats and Violence (5s) | DISMISSED ON MOTION OF GOVT. |
| 18:1951 CONSPIRACY TO INTERFERE WITH COMMERCE BY THREATS AND VIOLENCE (5ss) | 240 MONTHS IMPRISONMENT, 3 YEARS SUPERVISED RELEASE, $100 S/A, Restitution $6,855.74 |
| 18:924(c) Use and Carry Firearm During and in Relation to a Felony Crime of Violence (6) | DISMISSED ON MOTION OF GOVT. |
| 18:1951 and 2 Interference with Commerce By Threats and Violence; Aiding and Abetting (6s) | DISMISSED ON MOTION OF GOVT. |
| 18:1951; 2 INTERFERENCE WITH COMMERCE BY THREATS AND VIOLENCE AND AIDING AND ABETTING (6ss) | DISMISSED ON MOTION OF GOVT. |
| 18:924(c) Use and Carry Firearm During and In Relation to a Felony Crime of Violence (7s) | DISMISSED ON MOTION OF GOVT. |
| 18:924(c)USE AND CARRY FIREARM DURING AND IN RELATION TO A FELONY CRIME OF VIOLENCE (7ss) | 120 MONTHS IMPRISONMENT TO BE SERVED CONSECUTIVE TO CT 5 AND ANY OTHER SENTENCE DEFENDANT IS SERVING, 3 YEARS SUPERVISED RELEASE, $100 S/A |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Olivia L. Norman** |
| | | United States Attorney's Office |
| | | SunTrust Building |
| | | 919 East Main Street |
| | | Suite 1900 |
| | | Richmond, VA 23219 |
| | | (804) 819–5400 |
| | | Email: Olivia.Emerson@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**J.A. 3**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2008 | 5 | CJA 23 Financial Affidavit by Justin Eugene Taylor (kyou, ) (Entered: 10/03/2008) |
| 06/18/2008 | | Federal Public Defender Office is conflicted out of this case. Clerk's Office will appoint CJA Attorney for Justin Eugene Taylor (kyou, ) (Entered: 10/03/2008) |
| 06/18/2008 | 6 | CJA 20 as to Justin Eugene Taylor: Appointment of Attorney James Fred Sumpter for Justin Eugene Taylor. (kyou, ) (Entered: 10/03/2008) |
| 07/10/2008 | 1 | INDICTMENT as to Justin Eugene Taylor (1) count(s) 1, 2, 3, 4, 5, 6. (Attachments: # 1 Criminal Cover Sheet) (kyou, ) (Entered: 07/11/2008) |
| 07/10/2008 | 2 | Minute entry as to Justin Eugene Taylor before Mag Judge M. Hannah Lauck; Court Reporter Amy Darmstedter, ACCU–BETA; USA Appeared through: Stephen Miller.; on motion of govt bench warrant to issue as detainer (kyou, ) (Entered: 07/11/2008) |
| 07/11/2008 | 3 | Arrest Warrant Issued (as Detainer) by Magistrate Judge M. Hannah Lauck as to Justin Eugene Taylor. (kyou, ) (Entered: 07/11/2008) |
| 09/29/2008 | | Set/Reset Hearings as to Justin Eugene Taylor: Arraignment set for 10/7/2008 at 11:30 AM before District Judge James R. Spencer. (khan, ) (Entered: 09/29/2008) |
| 10/01/2008 | 4 | Application for Writ of Habeas Corpus ad Prosequendum as to Justin Eugene Taylor. Signed by District Judge James R. Spencer on 10/1/08. (lsal) (lsal, ). (Entered: 10/01/2008) |
| 10/01/2008 | 7 | Writ of Habeas Corpus ad Prosequendum Issued as to Justin Eugene Taylor for 10/7/08 and hand–delivered to U.S. Marshal for service (lsal) (lsal, ). (Entered: 10/01/2008) |
| 10/07/2008 | 8 | Minute Entry for proceedings held before District Judge James R. Spencer:Arraignment as to Justin Eugene Taylor (1) Count 1,2,3,4,5,6 held on 10/7/2008. Dft entered a plea of not guilty. Jury Trial set 12/15/08 at 10:00 a.m. Govt. to submit restraining order. Dft remanded to custody. (Court Reporter Jeff Kull, OCR.) (khan, ) (Entered: 10/07/2008) |
| 10/07/2008 | | Set/Reset Hearings as to Justin Eugene Taylor: Jury Trial set for 12/15/2008 at 10:00 AM before District Judge James R. Spencer. (khan, ) (Entered: 10/07/2008) |
| 12/02/2008 | 9 | SUPERSEDING INDICTMENT as to Justin Eugene Taylor (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s, 7s. (Attachments: # 1 Criminal Cover Sheet) (kyou, ) (Entered: 12/03/2008) |
| 12/02/2008 | | Set Hearings as to Justin Eugene Taylor: Arraignment set for 12/15/2008 at 01:00 PM before District Judge James R. Spencer. (kyou, ) (Entered: 12/04/2008) |
| 12/10/2008 | 10 | Joint MOTION to Continue *Jury Trial* by USA as to Justin Eugene Taylor. (Hawkins, Olivia) (Entered: 12/10/2008) |
| 12/11/2008 | | Set/Reset Hearings as to Justin Eugene Taylor: Arraignment on Superseding Indictment set for 12/15/2008 at 10:00 AM before District Judge James R. Spencer. (khan, ) (Entered: 12/11/2008) |
| 12/12/2008 | 11 | ORDER Granting 10 Joint Motion to Continue Trial; a new trial date will be scheduled at defendant's arraignment on the superseding indictment as to Justin Eugene Taylor (1). Signed by District Judge James R. Spencer on 12/12/08. (lsal) (Entered: 12/12/2008) |
| 12/12/2008 | | Jury Trial on 12/15/08 CONTINUED as to Justin Eugene Taylor: (khan, ) (Entered: 12/12/2008) |
| 12/15/2008 | 12 | Minute Entry for proceedings held before District Judge James R. Spencer:Arraignment as to Justin Eugene Taylor (1) Count 1s,2s,3s,4s,5s,6s,7s held on 12/15/2008. Dft entered a plea of not guilty, requested a trial by jury. Jury Trial set 2/17/09 at 10:00 a.m. Dft remanded to custody. (Court Reporter Jeff Kull, OCR.) (khan, ) (Entered: 12/16/2008) |
| 12/15/2008 | | Set/Reset Hearings as to Justin Eugene Taylor: Jury Trial set for 2/17/2009 at 10:00 AM before District Judge James R. Spencer. (khan, ) (Entered: 12/16/2008) |

**J.A. 4**

| | | |
|---|---|---|
| 02/02/2009 | 13 | Sealed Document (lsal) (Entered: 02/02/2009) |
| 02/02/2009 | 14 | Sealed Document as to document #13; (lsal) (Entered: 02/02/2009) |
| 02/02/2009 | 15 | Sealed Document (lsal) (Entered: 02/02/2009) |
| 02/02/2009 | 16 | Sealed Document as to Sealed Document #15 (lsal) (Entered: 02/02/2009) |
| 02/04/2009 | 17 | SECOND SUPERSEDING INDICTMENT as to Justin Eugene Taylor (1) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 6ss, 7ss. (Attachments: # 1 Criminal Cover Sheet) (kyou, ) (Entered: 02/05/2009) |
| 02/05/2009 | | Set Hearings as to Justin Eugene Taylor: Arraignment set for 2/17/2009 at 10:00 PM before District Judge James R. Spencer. (kyou, ) (Entered: 02/05/2009) |
| 02/05/2009 | 18 | Sealed Document (lsal) (Entered: 02/05/2009) |
| 02/05/2009 | 19 | Sealed Document (lsal) (Entered: 02/05/2009) |
| 02/05/2009 | 20 | Sealed Document (lsal) (Entered: 02/05/2009) |
| 02/05/2009 | 21 | Sealed Document (lsal) (Entered: 02/05/2009) |
| 02/09/2009 | 22 | Sealed Document as to Justin Eugene Taylor (lsal) (Entered: 02/09/2009) |
| 02/09/2009 | 23 | Sealed Document in reference to document #22 as to Justin Eugene Taylor (lsal) (Entered: 02/09/2009) |
| 02/09/2009 | 24 | Sealed Document as to Justin Eugene Taylor (lsal) (Entered: 02/09/2009) |
| 02/09/2009 | 25 | Sealed Document as to document #24 as to Justin Eugene Taylor (lsal) (Entered: 02/09/2009) |
| 02/12/2009 | 26 | MOTION For Temporary Custody and Transport of Material Witness *JAMES WILLIAM HANKS* by USA as to Justin Eugene Taylor. (Attachments: # 1 Proposed Order for Temporary Custody & Transport)(Hawkins, Olivia) (Entered: 02/12/2009) |
| 02/12/2009 | 27 | ORDER Granting 26 Motion for Temporary Custody and Transportation; ORDERED that Special Agents Russell Johnson, Timothy Boles, James Panos and Task Force Officer Luther Burdette of the Bureau of ATF are authorized to take temporary custody and transfer material witness James William Hanks III from the U.S. Marshals Service on February 13, 2009 and to maintain temporary custody and transport said prisoner to United States District Court for trial testimony beginning on Feburary 17, 2009 and return prisoner upon completion of testimony to United States Marshal Service; further ORDERED that during the period of temporary custody James William Hanks III shall remain at all times in the custody and control of said Special Agents as to Justin Eugene Taylor (1). Signed by District Judge James R. Spencer on 2/12/09. (lsal) (Entered: 02/12/2009) |
| 02/13/2009 | 28 | MOTION for Temporary Custody and Transport of Defendant *for Plea* by USA as to Justin Eugene Taylor. (Attachments: # 1 Proposed Order for Temporary Custody and Transport of Defendant)(Hawkins, Olivia) (Entered: 02/13/2009) |
| 02/13/2009 | | Set/Reset Hearings as to Justin Eugene Taylor: Plea Agreement Hearing set for 2/13/2009 at 02:00 PM before District Judge James R. Spencer. (khan, ) (Entered: 02/13/2009) |
| 02/13/2009 | 29 | ORDER granting 28 Motion for Temporary Custody & Transportation as to Justin Eugene Taylor (1). Signed by District Judge James R. Spencer on 2/13/2009. (cgar) (Entered: 02/13/2009) |
| 02/13/2009 | 30 | Minute Entry for proceedings held before District Judge James R. Spencer:Plea Agreement Hearing as to Justin Eugene Taylor held on 2/13/2009. Dft entered plea of guilty to Cts 5 & 7 of the Second Superseding Indictment. Plea Agreement filed. Statement of Facts filed and used as summary. JUDGMENT: dft guilty as charged in Cts 5 & 7 of the Second Superseding Indictment. Sentencing set 5/14/09 at 9:00 a.m. Dft remanded to custody. (Court Reporter Jeff Kull, OCR.) (khan, ) (Entered: 02/13/2009) |

| 02/13/2009 | 31 | PLEA AGREEMENT as to Justin Eugene Taylor (khan, ) (Entered: 02/13/2009) |
|---|---|---|
| 02/13/2009 | 32 | Statement of Facts as to Justin Eugene Taylor (khan, ) (Entered: 02/13/2009) |
| 02/13/2009 | | Set/Reset Hearings as to Justin Eugene Taylor: Sentencing set for 5/14/2009 at 09:00 AM before District Judge James R. Spencer. (khan, ) (Entered: 02/13/2009) |
| 02/13/2009 | | Jury Trial on 2/17/09 CANCELED as to Justin Eugene Taylor: Dft entered plea on 2/13/09. (khan, ) (Entered: 02/13/2009) |
| 02/13/2009 | | Dft entered plea on 2/13/09 as to Justin Eugene Taylor: (khan, ) (Entered: 02/13/2009) |
| 02/13/2009 | 33 | Order for sentencing guidelines as to Justin Eugene Taylor.. Signed by District Judge James R. Spencer on 2/13/09. (khan, ) (Entered: 02/17/2009) |
| 05/05/2009 | 34 | First MOTION for Downward Departure by Justin Eugene Taylor. (Sumpter, James) (Entered: 05/05/2009) |
| 05/06/2009 | 35 | Second MOTION for Downward Departure *because of a redetermination of the Criminal History Catergory* by Justin Eugene Taylor. (Sumpter, James) (Entered: 05/06/2009) |
| 05/11/2009 | 36 | Position on Sentencing by USA as to Justin Eugene Taylor (Hawkins, Olivia) (Entered: 05/11/2009) |
| 05/11/2009 | 37 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by USA as to Justin Eugene Taylor (Hawkins, Olivia) (Entered: 05/11/2009) |
| 05/12/2009 | 38 | RESPONSE in Opposition by USA as to Justin Eugene Taylor re 35 Second MOTION for Downward Departure *because of a redetermination of the Criminal History Catergory* (Hawkins, Olivia) (Entered: 05/12/2009) |
| 05/13/2009 | 39 | RESPONSE to Motion by USA as to Justin Eugene Taylor re 34 First MOTION for Downward Departure (Hawkins, Olivia) (Entered: 05/13/2009) |
| 05/14/2009 | 40 | Minute Entry for proceedings held before District Judge James R. Spencer:Sentencing held on 5/14/2009 for Justin Eugene Taylor (1), Count(s) 1, 1s, 1ss, 2, 2s, 2ss, 3, 3s, 3ss, 4, 4s, 4ss, 5, 5s, 6, 6s, 6ss, 7s, DISMISSED ON MOTION OF GOVT.; Count(s) 5ss, 240 MONTHS IMPRISONMENT, 3 YEARS SUPERVISED RELEASE, $100 S/A, Restitution $6,855.74; Count(s) 7ss, 120 MONTHS IMPRISONMENT TO BE SERVED CONSECUTIVE TO CT 5 AND ANY OTHER SENTENCE DEFENDANT IS SERVING, 3 YEARS SUPERVISED RELEASE, $100 S/A. Dft remanded to custody.(Court Reporter Jeff Kull, OCR.) (khan, ) (Entered: 05/18/2009) |
| 05/14/2009 | 44 | JUDGMENT as to Justin Eugene Taylor (1), Count(s) 1, 1s, 1ss, 2, 2s, 2ss, 3, 3s, 3ss, 4, 4s, 4ss, 5, 5s, 6, 6s, 6ss, 7s, DISMISSED ON MOTION OF GOVT.; Count(s) 5ss, 240 MONTHS IMPRISONMENT, 3 YEARS SUPERVISED RELEASE, $100 S/A, Restitution $6,855.74; Count(s) 7ss, 120 MONTHS IMPRISONMENT TO BE SERVED CONSECUTIVE TO CT 5 AND ANY OTHER SENTENCE DEFENDANT IS SERVING, 3 YEARS SUPERVISED RELEASE, $100 S/A Dft remanded to custody.. Signed by District Judge James R. Spencer on 5/14/09. (khan, ) (Entered: 05/21/2009) |
| 05/14/2009 | 45 | Sealed Statement of Reasons as to Justin Eugene Taylor. Signed by District Judge James R. Spencer on 5/14/09. (khan, ) (Entered: 05/21/2009) |
| 05/19/2009 | 41 | *SEE DOC #42* NOTICE *of Appeal* by Justin Eugene Taylor (Sumpter, James) (Entered: 05/19/2009) |
| 05/19/2009 | 42 | NOTICE OF APPEAL by Justin Eugene Taylor (Sumpter, James) (Entered: 05/20/2009) |
| 05/20/2009 | | Notice of Correction re 41 Notice (Other). The filing user selected the wrong event. Notice was selected and Notice of Appeal should have been selected. The filing user has been asked to refile the document using the correct event as soon as possible. (kyou, ) (Entered: 05/20/2009) |
| 05/21/2009 | 43 | Transmission of Notice of Appeal as to Justin Eugene Taylor to US Court of Appeals re 42 Notice of Appeal (lbre, ) (Entered: 05/21/2009) |

**J.A. 6**

| | | |
|---|---|---|
| 05/21/2009 | | Appeal Remark re 42 Notice of Appeal : Letter to USPO requesting Presentence Report (lbre, ) (Entered: 05/21/2009) |
| 05/21/2009 | | USCA Case Number 09–4468, Case Manager A.Brownlee for 42 Notice of Appeal filed by Justin Eugene Taylor. (lbre, ) (Entered: 05/22/2009) |
| 05/21/2009 | 46 | ORDER of USCA as to Justin Eugene Taylor re 42 Notice of Appeal APPPOINTS James Fred Sumpter to represent appellant pursuant to the CJA (lbre, ) (Entered: 05/22/2009) |
| 05/26/2009 | | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Justin Eugene Taylor received from USPO (lbre, ) (Entered: 05/26/2009) |
| 12/15/2009 | 47 | ORDER of USCA as to Justin Eugene Taylor re 42 Notice of Appeal : The Court appoints Christopher Richard Pudelski to represent appellant pursuant to the CJA. (lbre, ) (Entered: 12/15/2009) |
| 02/08/2010 | 48 | TRANSCRIPT as to Justin Eugene Taylor for dates of May 14, 2009 Sentencing before Judge James R. Spencer, re 42 Notice of Appeal Court Reporter/Transcriber Jeffrey B. Kull, Telephone number 804–916–2258. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/10/2010. Redacted Transcript Deadline set for 4/12/2010. Release of Transcript Restriction set for 5/10/2010.(kull, jeff) (Entered: 02/08/2010) |
| 02/09/2010 | 49 | TRANSCRIPT of Arraignment Proceedings for dates of October 7, 2008 before Judge James R. Spencer; Court Reporter/Transcriber Jeffrey B. Kull, Telephone number (804) 916–2258. The transcript is a paper document which may be viewed at the Clerk's Office (lsal) (1 volume 8 pages) (Entered: 02/09/2010) |
| 02/09/2010 | 50 | TRANSCRIPT of Arraignment on Superseding Indictment Proceedings for date of December 15, 2008, before Judge James R. Spencer; Court Reporter/Transcriber Jeffrey B. Kull, Telephone number (804) 916–2258. The transcript is a paper document which may be viewed at the Clerk's Office (lsal) (1 volume 7 pages) (Entered: 02/09/2010) |
| 02/09/2010 | 51 | TRANSCRIPT of Rearraignment and Plea of Guilty Proceedings for date of February 13, 2009 before Judge James R. Spencer; Court Reporter/Transcriber Jeffrey B. Kull, Telephone number (804) 916–2258. The transcript is a paper document which may be viewed at the Clerk's Office (lsal) (1 volume 17 pages) (Entered: 02/09/2010) |
| 02/09/2010 | 52 | Notice of Filing of Official Transcript: Appeal Transcript document #48 (lsal) (Entered: 02/09/2010) |
| 01/07/2011 | 53 | ORDER of USCA as to Justin Eugene Taylor re 42 Notice of Appeal : We grant the Governments motion to dismiss. (lbre, ) (Entered: 01/10/2011) |
| 01/07/2011 | 54 | JUDGMENT of USCA as to Justin Eugene Taylor re 42 Notice of Appeal : In accordance with the decision of this Court, this appeal is dismissed. This judgment shall take effect upon issuance of this Court's mandate in accordance with Fed. R. App. P. 41. (lbre, ) (Entered: 01/10/2011) |
| 01/21/2011 | 55 | ORDER of USCA – STAY OF MANDATE UNDER FED. R. APP. P. 41(d)(1) as to Justin Eugene Taylor re 42 Notice of Appeal : This Court's mandate is stayed under Fed. R. App. P. 41(d)(1), which provides that "[t]he timely filing of a petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion." (lbre, ) (Entered: 01/25/2011) |
| 02/22/2011 | 56 | ORDER of USCA as to Justin Eugene Taylor re 42 Notice of Appeal : The Court denies the petition for rehearing and rehearing en banc. No judge requested a poll under Fed. R. App. P. 35 on the petition for rehearing en banc. (lbre, ) (Entered: 02/23/2011) |
| 03/02/2011 | 57 | USCA Mandate as to Justin Eugene Taylor re 42 Notice of Appeal : The judgment of this Court, entered 1/7/2011, takes effect today. This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. (lbre, ) (Entered: 03/02/2011) |

**J.A. 7**

| | | |
|---|---|---|
| 06/26/2012 | 58 | MOTION to Vacate under 28 U.S.C. 2255 filed by Justin Eugene Taylor (lsal) Civil case 3:12–cv–00468 opened. (Entered: 06/26/2012) |
| 06/27/2012 | 59 | ORDER that United States file its responsive pleadings within 45 days of this Order to petitioner's Motion Under 2255; petitioner entitled to file a reply within 20 days of date on which Government files its pleading. Clerk SEND copy of this Order to petitioner, and counsel for United States; Signed by District Judge James R. Spencer on 6/27/12 (lsal) (Copies mailed: yes, as directed) (Entered: 06/27/2012) |
| 07/10/2012 | | Presentence Report destroyed by USDC on 7/10/12 for Justin Eugene Taylor (mful, ) (Entered: 07/10/2012) |
| 08/09/2012 | 60 | MOTION for Extension of Time to File Response/Reply as to 58 MOTION to Vacate under 28 U.S.C. 2255, 59 Order, by USA as to Justin Eugene Taylor. (Norman, Olivia) (Entered: 08/09/2012) |
| 08/13/2012 | 61 | ORDER Granting 60 Motion for Extension of Time to File Response to defendant's 58 Motion Under 2255; Government shall file its response brief within 30 days of date of this Order; Clerk SEND copy of this Order to petitioner and all counsel of record as to Justin Eugene Taylor (1). Signed by District Judge James R. Spencer on 8/10/12 (lsal) (Copies mailed: yes, as directed) (Entered: 08/13/2012) |
| 10/18/2012 | 62 | MOTION for Extension of Time to File Response/Reply as to 59 Order, by USA as to Justin Eugene Taylor. (Norman, Olivia) (Entered: 10/18/2012) |
| 10/19/2012 | 63 | ORDER Granting 62 Motion for Extension of Time to File Response to 2255 Motion; ORDERED that Government shall file its response brief on or before November 2, 2012; Clerk SEND copy of this Order to petitioner and all counsel of record as to Justin Eugene Taylor (1). Signed by District Judge Henry E. Hudson on 10/19/12 (lsal) (Entered: 10/19/2012) |
| 10/31/2012 | 64 | RESPONSE in Opposition by USA as to Justin Eugene Taylor re 58 MOTION to Vacate under 28 U.S.C. 2255 (Attachments: # 1 Exhibit Opening Brief, # 2 Exhibit Motion to Dismiss Appeal, # 3 Exhibit Order Deferring Ruling on Motion to Dismiss, # 4 Exhibit Response Brief, # 5 Exhibit Order Granting Motion to Dismiss, # 6 Exhibit Order Denying Rehearing, # 7 Exhibit Notice of Order Denying Writ of Cert)(Norman, Olivia) (Entered: 10/31/2012) |
| 11/01/2012 | 65 | NOTICE *OF FILING* by USA as to Justin Eugene Taylor (Attachments: # 1 Exhibit Joint Appendix, Vol. 1, part 1, # 2 Exhibit Joint Appendix, Vol. 1, part 2, # 3 Exhibit Joint Appendix, Vol. 1, part 3)(Norman, Olivia) (Entered: 11/01/2012) |
| 03/05/2014 | 67 | Letter from Justin Taylor (Attachments: # 1 Envelope, # 2 Response from USDC Clerk's Office)(tjoh, ) (Entered: 03/06/2014) |
| 03/28/2014 | 68 | Letter from defendant. (Attachments: # 1 Envelope, # 2 Response from USDC Clerk's Office)(tjoh, ) (Entered: 03/28/2014) |
| 07/07/2015 | 69 | MEMORANDUM OPINION as to Justin Eugene Taylor. Signed by District Judge James R. Spencer on 07/07/2015. Copy mailed to petitioner 7/7/15. (tjoh, ) (Entered: 07/07/2015) |
| 07/07/2015 | 70 | ORDER denying 58 Motion to Vacate (2255) as to Justin Eugene Taylor (1). Signed by District Judge James R. Spencer on 07/07/2015. Copy mailed to petitioner on 7/7/15. (tjoh, ) Civil Case 3:12–cv–00468–JRS closed. (Entered: 07/07/2015) |
| 06/13/2016 | | Appeal Remark: USCA 2244 case docketed. USCA Case No. 16–9177, Case Manager Barbara Rowe. (lgar, ) (Entered: 06/13/2016) |
| 06/13/2016 | 71 | ORDER of USCA as to Justin Eugene Taylor: The court appoints the Federal Defender for the Eastern District of Virginia to represent movant in this case. (lgar, ) (Entered: 06/13/2016) |
| 06/13/2016 | 72 | PRESENTENCE INVESTIGATION REPORT as to Justin Eugene Taylor. (reed, joann) (Entered: 06/13/2016) |
| 06/13/2016 | 73 | Appeal Remark: USCA 2244 Partial Record Request. (lgar, ) (Entered: 06/13/2016) |

**J.A. 8**

| 06/13/2016 | | Assembled SUPPLEMENTAL Electronic Transmitted to 4CCA by Justin Eugene Taylor: Presentence Report only. (lgar, ) (Entered: 06/13/2016) |
|---|---|---|
| 06/24/2016 | 74 | 2244 ORDER of USCA as to Justin Eugene Taylor: USCA grants authorization for Taylor to file a second or successive § 2255 motion,(See order for details) (Attachments: # 1 Notice, # 2 Proposed 2255)(teva, ) (Entered: 06/24/2016) |
| 06/27/2016 | 75 | NOTICE OF ATTORNEY APPEARANCE: Paul Eugene Shelton, Jr appearing for Justin Eugene Taylor (Shelton, Paul) (Entered: 06/27/2016) |
| 06/27/2016 | 76 | MOTION to Vacate under 28 U.S.C. 2255 by Justin Eugene Taylor. (Shelton, Paul) Civil case 3:16–cv–00508 opened. (Entered: 06/27/2016) |
| 07/26/2016 | 77 | NOTICE *of filing of Statement of Movant* by Justin Eugene Taylor re 76 MOTION to Vacate under 28 U.S.C. 2255 (Attachments: # 1 Statement of Movant)(Shelton, Paul) (Entered: 07/26/2016) |
| 09/09/2016 | | Case as to Justin Eugene Taylor Referred to Magistrate Judge Roderick C. Young for § 2255 Motion. (tjoh, ) (Entered: 09/09/2016) |
| 09/09/2016 | 78 | MEMORANDUM ORDER(Directing Transmission of 28 U.S.C. § 2255 Motion) The Clerk is DIRECTED TO ELECTRONICALLY TRANSMIT a copy of the motion 76 , 77 and this Memorandum Order to the United States Attorney who shall file a complete, fully briefed response to that motion within sixty (60) days of service. Any reply by Petitioner shall be filed thirty (30) days thereafter. If, in its response, the United States contends that the events of any in–court proceedingsbear on the merits of Petitioner's claims, the response shall cite to the relevant page of the transcript of that proceeding. If the proceeding has not been transcribed, the United States shall contact the appropriate court reporter to transcribe the proceeding. See Rules Governing § 2255 Proceedings for the U.S. District Courts, Rule 5. Signed by Magistrate Judge Roderick C. Young on 09/09/2016. (tjoh, ) (Entered: 09/09/2016) |
| 10/18/2016 | 79 | ORDER that this matter is before the Court on its own initiative. Justin Eugene Taylor has filed a Motion under 28:2255. The Clerk is DIRECTED to directly reassign this case to the Honorable M. Hannah Lauck. Signed by District Judge James R. Spencer on 10/18/16. (Entered: 10/18/2016) |
| 10/18/2016 | | Case as to Justin Eugene Taylor REASSIGNED to District Judge M. Hannah Lauck. District Judge James R. Spencer no longer assigned to the case per Order entered on 10/18/16. (jtho, ) (Entered: 10/18/2016) |
| 12/02/2016 | 80 | MOTION for Leave to File *Response to Defendant's 2255 Motion Filed Pursuant to Johnson* by USA as to Justin Eugene Taylor. (Norman, Olivia) (Entered: 12/02/2016) |
| 12/02/2016 | 81 | MOTION to Dismiss *Defendant's 2255 Motion Filed Pursuant to Johnson* by USA as to Justin Eugene Taylor. (Norman, Olivia) (Entered: 12/02/2016) |
| 12/08/2016 | 82 | RESPONSE in Opposition by Justin Eugene Taylor re 81 MOTION to Dismiss *Defendant's 2255 Motion Filed Pursuant to Johnson* (Shelton, Paul) (Entered: 12/08/2016) |
| 12/19/2016 | 83 | MEMORANDUM ORDER re 80 Motion for Extension of Time to File Response is GRANTED as to Justin Eugene Taylor. See Order for details. Signed by Magistrate Judge Roderick C. Young on 12/19/2016. Memorandum Order mailed to Petitioner as directed and sent to counsel of record. (ccol, ) (Entered: 12/19/2016) |
| 07/27/2017 | 84 | NOTICE OF ATTORNEY APPEARANCE: Laura Jill Koenig appearing for Justin Eugene Taylor (Koenig, Laura) (Entered: 07/27/2017) |
| 04/05/2019 | 85 | NOTICE OF ATTORNEY APPEARANCE: Robert James Wagner appearing for Justin Eugene Taylor (Wagner, Robert) (Entered: 04/05/2019) |
| 05/06/2019 | 86 | MEMORANDUM ORDER It is ORDERED that: Within fourteen (14) days of the date of entry hereof, the Government shall file a further response to the § 2255 Motion and address the impact of the Simms case. Taylor shall have eleven (11) days thereafter to file any further reply. Signed by District Judge M. Hannah Lauck on 05/06/2019. Copies distributed as directed. (tjoh, ) (Entered: 05/06/2019) |

**J.A. 9**

| | | |
|---|---|---|
| 05/20/2019 | 87 | MOTION to Stay re 86 Order, *to Supplement in light of United States v. Simms, 914 F.3d 229 (4th Cir. 2019)*. (Norman, Olivia) (Entered: 05/20/2019) |
| 05/28/2019 | 88 | MEMORANDUM ORDER – The Motion to Stay the Case 87 is GRANTED. Within fifteen (15) days after the Supreme Court decides Davis, the Government must file further briefing on the impact of both Davis and Simms. Any response by Taylor is due fifteen (15) days thereafter. SEE ORDER FOR DETAILS. Signed by District Judge M. Hannah Lauck on 05/28/2019. (Copies distributed as directed) (smej, ) (Entered: 05/28/2019) |
| 07/08/2019 | 89 | Supplemental Memorandum by USA as to Justin Eugene Taylor re 87 MOTION to Stay re 86 Order, *to Supplement in light of United States v. Simms, 914 F.3d 229 (4th Cir. 2019)*, 81 MOTION to Dismiss *Defendant's 2255 Motion Filed Pursuant to Johnson* (Norman, Olivia) (Entered: 07/08/2019) |
| 07/23/2019 | 90 | Consent MOTION for Extension *of Reply Deadline* by Justin Eugene Taylor. (Attachments: # 1 Proposed Order)(Koenig, Laura) (Entered: 07/23/2019) |
| 07/24/2019 | 91 | MEMORANDUM ORDER – Petitioner moves for an extension of time to file his response. That Motion (ECF No. 90) is GRANTED to the extent that Petitioner shall have twenty (20) days from the date of entry hereof to file any further response. Signed by Magistrate Judge Roderick C. Young on 07/24/2019. Copy mailed to Petitioner. (tjoh, ) (Entered: 07/24/2019) |
| 08/13/2019 | 92 | REPLY to 89 Supplemental Memorandum by Justin Eugene Taylor. re: 76 Motion to Vacate, 81 Motion to Dismiss (Koenig, Laura) Modified docket text on 8/14/2019 (jsau, ). (Entered: 08/13/2019) |
| 08/26/2019 | 93 | MEMORANDUM OPINION as to Justin Eugene Taylor. Signed by District Judge M. Hannah Lauck on 08/26/2019. (tjoh, ) (Entered: 08/26/2019) |
| 08/26/2019 | 94 | ORDER – It is ORDERED that: The § 2255 Motion (ECF No. 76) is DENIED; The Government's Motion to Dismiss (ECF No. 81) is DENIED AS MOOT; Taylor's claim is DISMISSED; The action is DISMISSED; and, A certificate of appealability is DENIED. Signed by District Judge M. Hannah Lauck on 08/26/2019. (tjoh, ) Civil Case 3:16–cv–00508–MHL closed. (Entered: 08/26/2019) |
| 10/25/2019 | 95 | NOTICE OF APPEAL (NO FEE RECEIVED) by Justin Eugene Taylor as to 94 Order on Motion to Vacate (2255),, Order on Motion to Dismiss, 93 Memorandum Opinion (Koenig, Laura) Modified on 10/28/2019 (tjoh, ). (Entered: 10/25/2019) |
| 10/28/2019 | 96 | PRESENTENCE INVESTIGATION REPORT as to Justin Eugene Taylor. (reed, joann) (Entered: 10/28/2019) |
| 10/28/2019 | 97 | Transmission of Notice of Appeal to 4CCA as to Justin Eugene Taylor to US Court of Appeals re 95 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (lbre, ) (Entered: 10/28/2019) |
| 10/31/2019 | | USCA Case Number 19–7616 USCA Case manager: Jeff Neal for 95 Notice of Appeal filed by Justin Eugene Taylor. (teva, ) (Entered: 10/31/2019) |
| 10/31/2019 | | Assembled INITIAL Electronic Record Transmitted to 4CCA re 95 Notice of Appeal (teva, ) (Entered: 10/31/2019) |
| 02/13/2020 | 98 | ORDER of USCA as to Justin Eugene Taylor re 95 Notice of Appeal:Justin Eugene Taylor seeks to appeal the district courts order denying relief on his28 U.S.C. § 2255 (2018) motion. We grant a certificate of appealability on the following issues: See Order. (teva, ) (Entered: 02/13/2020) |

**J.A. 10**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

FEB _ 4 2009

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:08CR326 |
| | ) | |
| JUSTIN EUGENE TAYLOR, | ) | |
| a.k.a. "Mookie," | ) | |
| a.k.a. "Mook," | ) | |
| | ) | |
| Defendant. | ) | |

# SECOND SUPERSEDING INDICTMENT
### FEBRUARY 2009 TERM - At Richmond, Virginia

THE GRAND JURY CHARGES THAT:

## COUNT ONE
### (Conspiracy to Possess With Intent to Distribute and Distribute Marijuana)

Starting before January 1, 2002, and continuing through and including December 14, 2004, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendant, JUSTIN EUGENE TAYLOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with others, known and unknown, to possess with the intent to distribute and distribute marijuana, a Schedule I controlled substance.

(In violation of Title 21, United States Code, Section 846).

1

**J.A. 11**

## COUNT TWO
(Attempt to Distribute Marijuana)

On or about August 14, 2003, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendant, JUSTIN EUGENE TAYLOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly, intentionally and unlawfully attempt to distribute marijuana, a Schedule I controlled substance.

(In violation of Title 21, United States Code, Section 846).

## COUNT THREE
(Possess a Firearm in Furtherance of Drug Trafficking)

Starting before January 1, 2002, and continuing through and including December 14, 2004, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendant, JUSTIN EUGENE TAYLOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly and unlawfully possess a firearm in furtherance of drug trafficking, to wit: conspiracy to distribute and possess with the intent to distribute marijuana, as charged in Count One of the Indictment.

(In violation of Title 18, United States Code, Section 924(c)).

## COUNT FOUR
(Use and Carry Firearm During and In Relation to a Drug Trafficking Crime)

On or about August 14, 2003, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendant, JUSTIN EUGENE TAYLOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly and unlawfully use and carry a firearm during and in relation to a drug trafficking crime, to wit: attempt to distribute marijuana, as charged in Count Two.

(In violation of Title 18, United States Code, Section 924(c)).

2

**J.A. 12**

## COUNT FIVE
(Conspiracy to Interfere With Commerce By Threats and Violence)

On or about August 14, 2003, in the Eastern District of Virginia and within the jurisdiction of this Court, JUSTIN EUGENE TAYLOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly and unlawfully conspire with another to obstruct, delay, and affect commerce by robbery, to wit: by robbery at gun-point of an individual of United States Currency, which was intended to be used for, and during the course of the individual's attempted purchase of marijuana, which resulted in the killing of Martin Silvester.

(In violation of Title 18, United States Code, Section 1951).

## COUNT SIX
(Interference With Commerce By Threats and Violence)

On or about August 14, 2003, in the Eastern District of Virginia and within the jurisdiction of this Court, JUSTIN EUGENE TAYLOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly and unlawfully obstruct, delay, and affect commerce by attempting robbery, and did aid and abet the same, to wit: by attempting and aiding and abetting another to attempt to rob at gun-point of an individual of United States Currency, which was intended to be used for, and during the course of the individual's attempted purchase of marijuana, which resulted in the killing of Martin Silvester.

(In violation of Title 18, United States Code, Sections 2 and 1951).

## COUNT SEVEN
(Use and Carry Firearm During and In Relation to a Felony Crime of Violence)

On or about August 14, 2003, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendant, JUSTIN EUGENE TAYLOR, a.k.a. "Mookie," a.k.a.

3

**J.A. 13**

"Mook," did knowingly and unlawfully use and carry a firearm during and in relation to a felony crime of violence, to wit: conspiracy to interfere with commerce by armed robbery as charged in Count Five and Interference with Commerce by Threats and Force as charged in Count Six.

(In violation of Title 18, United States Code, Section 924(c)).

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

_____
FOREPERSON

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY

By: _____
Olivia N. Hawkins
Assistant United States Attorney

J.A. 14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

-----------------------------------------------

UNITED STATES OF AMERICA,

FILED

FEB - 9 2010

CLERK, U.S. DISTRICT C...
RICHMOND VA

                                    Plaintiff;

v.                                          Criminal Action

                                            3:08CR326

JUSTIN EUGENE TAYLOR,


                                    Defendant.
------------------------------------------------

February 13, 2009
Richmond, Virginia
2:00 p.m.

REARRAIGNMENT AND PLEA OF GUILTY

BEFORE:          HONORABLE JAMES R. SPENCER
                 Chief United States District Judge


APPEARANCES:     OLIVIA HAWKINS, ESQ.
                 Office of the U.S. Attorney
                 Main Street Centre
                 Richmond, Virginia  23219

                        Counsel for Government;


                 JAMES F. SUMPTER, ESQ.
                 P.O. Box 5564
                 Midlothian, Virginia  23112

                        Counsel for Defendant.




                 JEFFREY B. KULL
                 OFFICIAL COURT REPORTER

J.A. 15

5/

P-R-O-C-E-E-D-I-N-G-S

THE CLERK: Case Number 3:08CR326: United States of America versus Justin Eugene Taylor. The United States is represented by Olivia Hawkins. The defendant is represented by Fred Sumpter. Are counsel ready to proceed?

MS. HAWKINS: The United States is ready.

MR. SUMPTER: Defense is ready, Your Honor.

THE COURT: All right.

MS. HAWKINS: Good afternoon, Your Honor. We are here for the rearraignment of Mr. Justin Eugene Taylor on Counts Five and Seven of the second superseding indictment. There is a written Plea Agreement as well as a written Statement of Facts in support of the plea.

THE COURT: All right. Mr. Sumpter, if you and your client would approach the lectern, please. Mr. Taylor will be placed under oath.

Defendant sworn.)

BY THE COURT:

Q   All right, Mr. Taylor, would you state your name for me, please?

A   Justin Eugene Taylor.

Q   And how old are you, sir?

A   25.

Q   And how far did you go in school?

A     A little bit of college.

Q     Have you been treated recently for any kind of narcotics addiction or mental illness?

A     No.

Q     Are you currently under the influence of any kind of medication, alcoholic beverage, or drug?

A     No.

Q     Have you had an opportunity to receive a copy of this second superseding indictment, the charges against you; have you seen that?

A     Yes.

Q     Do you understand the charges against you?

A     Yes.

Q     And have you had an opportunity to discuss these charges with your lawyer?

A     Yes.

Q     Are you fully satisfied with the counsel, representation, and advice given to you in this matter by your lawyer?

A     Yes.

Q     Now, Mr. Taylor, I understand that your purpose in appearing before the Court this afternoon is to enter a plea of guilty to Counts Five and Seven of this pending second superseding indictment.  Count Five charges you with conspiracy to interfere with commerce by threats and

violence in violation of Title 18 U.S. Code Section 1951, and Count Seven charges you with use and carrying a firearm during and in relation to a crime of violence in violation of Title 18 U.S. Code Section 924(c). Is that what you intend to do, Mr. Taylor, enter a plea of guilty to these two counts of your indictment?

A     Yes, sir.

Q     And I further understand that you would be entering these pleas of guilty in relation to a Plea Agreement that you and your lawyer have negotiated with the United States; is that right?

A     Yes, sir.

Q     All right.  Now --

MS. HAWKINS:  Your Honor, if I may add, too, it is somewhat unusual, but the Commonwealth of Virginia, Commonwealth's Attorney's Office for the City of Richmond has also signed on to the Plea Agreement as well.

THE COURT:  I noticed that.

MS. HAWKINS:  And Ms. Shannon Dion is here as a Special Assistant Commonwealth's Attorney as well as an Assistant Attorney General and has signed on to the Plea Agreement as well as the Statement of Facts.

THE COURT:  Right.

BY THE COURT:

Q     Mr. Taylor, my first order of business is to discuss

this Plea Agreement with you toward this end: I need to assure myself that you have a clear and appropriate understanding of the terms and conditions of this Plea Agreement before we can proceed. Now, first of all, I have the Plea Agreement here in front of me. And it appears to be a 15-page typewritten document with the signatures of the government's representative for the Commonwealth as well as the United States on the 14th page, and then your signature as well as the signature of your lawyer appearing on the 15th page. Now, Mr. Taylor, did you review this Plea Agreement and did you indeed affix your signature to this Plea Agreement?

A    Yes, sir.

Q    Now, what I am going to do, Mr. Taylor, is outline for you what appears to me to be the essential terms of this Plea Agreement. And when I say essential terms, I mean what it is that you are giving up, what it is that you are getting out of this negotiated plea arrangement.

As I read the Plea Agreement, and if there is anything additional, you all let me know because obviously I just had to read through it just now. But it appears to me that the essential terms are as follows: One, as I've indicated, that you have agreed to enter a plea of guilty to Counts Five and Seven of this second superseding indictment; that you agree to plead guilty because you are

in fact guilty of the charged offenses; that you have agreed to waive your right to appeal any conviction by the Court, as well as any sentence imposed, as long as that sentence is within the maximum provided by statute. You have agreed to pay the mandatory special assessment of $100 per felony count for a total of $200. You have agreed to the entry of a restitution order for the full amount of the victim's losses, which has not been calculated at this time, the named victim, Scott Sylvester. As I said, the restitution being an amount to be determined. You have agreed to cooperate with the United States; I believe it is Paragraph 13.

MS. HAWKINS: I'm sorry to interrupt. He has reserved the option to cooperate and the standard cooperating language is in there in the event he exercises that option.

THE COURT: All right. Well, in any case, whether the defendant agrees to cooperate, it is at their option. If you want to cooperate, then that's up to you.

MS. HAWKINS: I just want to make it clear on the record that the plea itself is not contingent upon him cooperating.

THE COURT: Dependent on his cooperation. All right. You have agreed to take on certain obligations regarding the assets that might be subject to forfeiture,

that is, to identify them and to agree to the forfeiting of these assets, any asset of a value more than $1,000 that you have owned or had an interest in in the last five years, you are to identify it and if the government deems it necessary, forfeit it. You have agreed to forfeit all interest in any drug-related assets that you own or exercise control over.

Now, in exchange for these promises on your part, the government has made the following promises to you: Immunity from further prosecution in this district. And let me ask you, Ms. Hawkins, is the Commonwealth providing some zone of immunity as well?

MS. HAWKINS: Yes, Your Honor, by agreement, in Paragraph 11, which starts on Page 6, both the United States and the Commonwealth's Attorney for the City of Richmond have agreed not to further criminally prosecute the defendant for the specific conduct described in the indictment, the Statement of Facts. And specifically, we listed, it starts on Page 7, that we specifically will not further prosecute him in the Eastern District of Virginia or the City of Richmond for a list of the following offenses, that are all related to the charges in the indictment, the charges of conviction, and the Statement of Facts, but just to make it absolutely clear.

THE COURT: All right. So the government,

J.A. 21

Mr. Taylor, has agreed not to seek to further prosecute you in this district and the Commonwealth of Virginia is also part of that agreement, and they have outlined here in the Plea Agreement with some specificity the zone of immunity, that is, those potential charges that they have agreed they would not be bringing against you.

The government has also agreed that they will not use any truthful information provided by you to either prosecute you additionally or increase the sentence that you might otherwise receive.

Now, if indeed I accept your plea of guilty today, the government has agreed to dismiss the previous indictments as well as the other charges contained in this second superseding indictment against you. They would move to dismiss these at the appropriate time, which is normally at sentencing. And the government has indicated that they will not contact any other state or federal prosecuting jurisdiction and voluntarily turn over truthful information that you have provided under this agreement to aid some other jurisdiction in prosecuting you. They have indicated that they will not do that.

Now, as far as I can tell, Mr. Taylor, I've just outlined for you what are the essential terms of the Plea Agreement. Is this your understanding of the Plea Agreement, sir?

A      Yes, sir.

Q      Now, has anyone made any other or different promises to you to get you to plead guilty other than what's contained in the written Plea Agreement?

A      No, sir.

Q      Has anyone attempted in any way to force you to plead guilty?

A      No, sir.

Q      Are you pleading guilty, Mr. Taylor, not only for the benefits of this Plea Agreement, but also because in your own mind you know that you are in fact guilty of these offenses?

A      Yes, sir.

Q      Now, Mr. Taylor, these offenses to which you are attempting to enter a plea of guilty are felony offenses. And there are certain negative ramifications that can come from the very fact of a felony conviction.  You may lose certain valuable civil rights, such as the right to vote, the right to sit on a jury, the right to own or possess any kind of firearm.  You may lose these rights simply as a result of being convicted of a felony.  This is outside of any sentence or punishment.  Do you understand that?

A      Yes, sir.

Q      The maximum possible penalty for these two offenses are as follows:  As to Count Five, the charge of

conspiracy to interfere with commerce by threats and violence, the penalty is a term of imprisonment up to 20 years, $250,000 fine, a special assessment of $100, and up to three years of supervised release following any jail time.

The maximum possible penalty for the charge as outlined in Count Seven is as follows: A five-year mandatory minimum term of imprisonment that must be consecutive to any other term of imprisonment, up to a maximum term of life in prison, a $250,000 fine, full restitution where appropriate, a special assessment of $100, and up to five years of supervised release following any period of jail time.

Now, Mr. Taylor, do you understand these to be the maximum possible penalties in your case?

A    Yes, sir.

Q    All right. Now, Mr. Taylor, I have here another document, and this one is a typewritten document involving four pages. It is titled Statement of Facts. And here again, I note that your signature appears on the fourth page of this document. And for the record, I just read through the Statement of Facts, and it does indeed outline each of the essential elements of the offenses charged against Mr. Taylor.

Mr. Taylor, let me ask you this question

regarding the Statement of Facts: Do you mean by placing your signature here on this Statement of Facts not only that you have read and understood it, but also, that to the best of your knowledge, the information contained in the Statement of Facts is true and accurate; is that correct?

A    Correct.

Q    Now, Mr. Taylor, let me explain to you what would happen to your case if indeed I accept your pleas of guilty this afternoon. Your matter would be referred to the Probation Department and the Probation Department would be tasked with putting together a Presentence Report to help me when it comes time for sentencing. Now, in putting this Presentence Report together, the Probation Officer assigned to your case will do essentially two things: On the one hand, the Probation Officer will do a historical investigation into your life and times. That is, they will speak with your family, family members and friends, and look at your school records and work records and any prior criminal record. They will gather as much information as they can regarding who you are as a human being. They will then put this information in narrative form, put it in the Presentence Report, and give it to me.

They would also take a look at what it is that you did, the offense, these crimes. They would gather the

facts and circumstances as best they could surrounding these offenses, and then likewise put it in the Presentence Report and give it to me. Now, once they have done that, they will be able to suggest to me based on their findings in the Presentence Report a Sentencing Guidelines Range. That's a range of punishment out of which I can determine what your actual sentence should be.

Now, I'm telling you this because I want you to understand that there is no way that anyone can tell you today what your actual sentence is going to be. The best I can do is tell you the maximum penalties, as I have done. But in terms of what your actual sentence will be, I can't tell you, and your lawyer can't tell you, and the prosecutor can't tell you. They can make a guess or an estimate. But until the Probation Officer does the work that I have just described, no one can tell you what your actual sentence is going to be. Do you understand that?

A    Yes, sir.

Q    Now, I need to explain to you, Mr. Taylor, what your rights would have been if you had entered a plea of not guilty. First of all, obviously, you have a right to do just that, an absolute right to enter a plea of not guilty to any offense charged against you. And if you did that, you would have the right to a trial by jury or a trial by the Court, if that was your selection. And you would have

the right to begin any trial cloaked in the presumption of innocence, and that presumption would remain with you unless and until the government proved your guilt beyond a reasonable doubt. You would have the right to have your lawyer represent your interests and your interests only throughout any trial proceedings. You would have the right to confront any witnesses called against you, that is, to see them and hear them as they testified, and then have your lawyer cross-examine them. You would have the right to remain silent, that is, to say nothing, unless you voluntarily elected to testify in your own defense. You would also have the right to compel the attendance of witnesses to come and testify in your defense.

Now, by entering these pleas of guilty, and if I accept your pleas of guilty, you will waive, and by "waive," of course, I mean give up for all time all of these rights that are associated with a criminal trial. Do you understand that, sir?

A    Yes, sir.

THE COURT: All right, Mr. Sumpter, do you know of any reason why Mr. Taylor would be incompetent to enter a plea of guilty this afternoon?

MR. SUMPTER: I do not, Your Honor.

THE COURT: In that case, Mr. Taylor, let me ask you first of all as to Count Five, which charges you with

conspiracy to interfere with commerce by threats and violence in violation of Title 18 U.S. Code Section 1951, how do you plead, guilty or not guilty?

THE DEFENDANT: Not guilty. I'm sorry, guilty.

THE COURT: All right. Let me ask you again to be sure that we understand each other. As to Count Five, which charges you with conspiracy to interfere with commerce by threats and violence in violation of Title 18 U.S. Code Section 1951, how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: As to Count Seven, which charges you with carrying and use of a firearm during and in relation to a crime of violence in violation of Title 18 U.S. Code Section 924(c), how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right. It is the finding of the Court in the case of United States versus Justin Eugene Taylor that the defendant is fully competent and capable of entering an informed plea; that the defendant is aware of the nature of the charges against him and the consequences of his plea. The Court finds further that these pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the offenses charged.

Mr. Taylor's pleas of guilty are therefore accepted, and he is now adjudged guilty of the offenses as outlined in Counts Five and Seven. You all may have a seat.

What about May 14th for sentencing? We would do it at 9 o'clock if that's available.

MS. HAWKINS: That's available for the government.

MR. SUMPTER: That's good, Your Honor.

THE COURT: All right.

(Defendant and counsel executing Sentencing Order.)

All right, Mr. Taylor, your matter has been placed on the Court's calendar for a sentencing to commence at 9 a.m. on May 14th of the year 2009. And that will take place here in this courtroom. Now, in the meantime, someone from the Probation Office will be in touch with you to interview you regarding matters related to this case as well as your background. We consider this a critical stage of the case, and therefore, you have a right to have your lawyer present during the course of that interview. And I would urge you to exercise that right.

I would also urge you to cooperate as much as you can with the Probation Officer assigned to your case during the course of this interview, because as I told you

earlier, the Probation Department's Presentence Report will go a long ways toward determining what your actual sentence is going to be.

All right, that completes the matter.

MS. HAWKINS: Your Honor, the government does have one somewhat related motion. We had a material witness warrant that was issued for the appearance of a witness on Tuesday, the 17th. It is an ECF case, so I'm not sure if that needs to be filed ECF or if we can make an oral motion and hand the sketch order to you.

THE COURT: You can make the oral motion and do the sketch order.

MS. HAWKINS: The United States would then move to dismiss the material witness warrant that's currently pending against James William Hanks, Criminal Number 3:09MJ54. He is actually in custody on his way here. Right now, he is in the air between Memphis and here. But upon his arrival here, I have already checked with the Marshal's Service and he will be released. And this is his home. So he will be released to Richmond, Virginia.

THE COURT: All right. We will do the order today.

(Document proffered to Court.)

THE COURT: All right. That completes the matter. We will be in adjournment.

(Proceedings adjourned at 3 o'clock p.m.)

CERTIFICATE OF REPORTER

I, Jeffrey B. Kull, Official Reporter, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____ /s/ _Jeffrey B. Kull_

Jeffrey B. Kull,
Official Federal Reporter

_____ /s/ _Feb. 8, 2010_

Date

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:08CR326 |
| | ) | |
| JUSTIN EUGENE TAYLOR, | ) | |
|     a.k.a. "Mookie," | ) | |
|     a.k.a. "Mook," | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Dana J. Boente, Acting United States Attorney for the Eastern District of Virginia, Olivia N. Hawkins, Assistant United States Attorney, Michael Herring, Commonwealth's Attorney of the City of Richmond, Virginia, Shannon Y. Dion, Special Assistant Commonwealth's Attorney for the City of Richmond, Virginia and Assistant Attorney General for the Commonwealth of Virginia, the defendant, JUSTIN EUGENE TAYLOR, and the defendant's counsel have entered into an agreement pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. The terms of the agreement are as follows:

**1)    Offense and Maximum Penalties**

The defendant agrees to plead guilty to Counts Five and Seven of the Second Superseding Indictment. Count Five charges the defendant with Conspiracy to Interfere with Commerce by Threats and Violence in violation of Title 18, United States Code, Section 1951. The maximum penalties for this offense are a maximum term of twenty years of imprisonment, a fine of $250,000, full restitution, a special assessment, and three years of supervised release. Count Seven charges the defendant with the use and carry of a firearm during and in relation to a crime of violence in violation of Title 18, United States

**J.A. 32**

Code, Section 924(c). The maximum penalties for this offense are a minimum mandatory term of five years imprisonment that must run consecutive to any other term of imprisonment and a maximum term of life imprisonment, a fine of $250,000, full restitution, a special assessment, and five years of supervised release. The defendant understands that any supervised release term is in addition to any prison term the defendant may receive, and that a violation of a term of supervised release could result in the defendant being returned to prison for the full term of supervised release.

## 2)     Detention Pending Sentencing

The defendant understands that this case is governed by Title 18, United States Code, Sections 3143(a)(2) and 3145(c). These provisions provide that a judicial officer shall order that a person who has been found guilty of an offense of this kind be detained unless there are statutory justifications why such person's detention would not be appropriate.

## 3)     Factual Basis for the Plea

The defendant will plead guilty because the defendant is in fact guilty of the charged offenses. The defendant admits the facts set forth in the statement of facts filed with this plea agreement and agrees that those facts establish guilt of the offenses charged beyond a reasonable doubt. The statement of facts, which is hereby incorporated into this plea agreement, constitutes a stipulation of facts for purposes of Section 1B1.2(a) of the Sentencing Guidelines.

## 4)     Assistance and Advice of Counsel

The defendant is satisfied that the defendant's attorney has rendered effective

2

**J.A. 33**

assistance.  The defendant understands that by entering into this agreement, defendant surrenders certain rights as provided in this agreement.  The defendant understands that the rights of criminal defendants include the following:

a)      the right to plead not guilty and to persist in that plea;

b)      the right to a jury trial;

c)      the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings; and

d)      the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

**5)      Role of the Court and the Probation Office**

The defendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum described above but that the Court will determine the defendant's actual sentence in accordance with 18 U.S.C. § 3553(a).  The defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range under the U.S. Sentencing Commission's Sentencing Guidelines Manual the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court.  Additionally, pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the Court, after considering the factors set forth in 18

3

**J.A. 34**

U.S.C. § 3553(a), may impose a sentence above or below the advisory sentencing range, subject only to review by higher courts for reasonableness.  The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence.  **Notwithstanding the foregoing and in accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States, with the concurrence of the Commonwealth of Virginia, and the defendant agree that U.S.S.G. §2B3.1(c), cross reference applies to this case.**

### 6)      Waiver of Appeal, FOIA and Privacy Act Rights

The defendant also understands that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement.  This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).  The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

4

**J.A. 35**

### 7)      Waiver of DNA Testing

The defendant also understands that Title 18, United States Code, Section 3600 affords a defendant the right to request DNA testing of evidence after conviction. Nonetheless, the defendant knowingly waives that right.   The defendant further understands that this waiver applies to DNA testing of any items of evidence in this case that could be subjected to DNA testing, and that the waiver forecloses any opportunity to have evidence submitted for DNA testing in this case or in any post-conviction proceeding for any purpose, including to support a claim of innocence to the charges admitted in this plea agreement.

### 8)      Special Assessment

Before sentencing in this case, the defendant agrees to pay a mandatory special assessment of one hundred dollars ($100.00) per count of conviction.

### 9)      Payment of Monetary Penalties

The defendant understands and agrees that, pursuant to Title 18, United States Code, Sections 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States as provided for in Section 3613.  Furthermore, the defendant agrees to provide all of his financial information to the United States and the Probation Office and, if requested, to participate in a pre-sentencing debtor's examination.  If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.  If the defendant is incarcerated, the

5

**J.A. 36**

defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

**10)    Restitution for Offense of Conviction**

The defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. At this time, the Government is aware that the following victim has suffered the following losses:

| VICTIM'S NAME | AMOUNT |
| --- | --- |
| Scott Sylvester | To be determined |

**11)    Immunity from Further Prosecution in this District**

The United States and the Commonwealth's Attorney for the City of Richmond, Virginia will not further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the indictment or statement of facts, except that the United States and the Commonwealth's Attorney's Office for the City of Richmond, Virginia may prosecute the defendant for any crime of violence or conspiracy to commit, or aiding and abetting, a crime of violence not charged in the indictment or specifically referenced in the Statement of Facts as an offense. In such a prosecution the United States or the Commonwealth may allege and prove conduct described in the indictment or statement of facts. "Crime of violence" has the meaning set forth in 18 U.S.C. Section 16. In addition, notwithstanding any other provision of this paragraph, the United States and the Commonwealth's Attorney's Office for the City of Richmond, Virginia will not further prosecute the defendant in the Eastern District of Virginia or the City of Richmond for the

6

**J.A. 37**

following offenses:

    a.    Murder of Martin Sylvester on August 14, 2003;

    b.    Any firearm related charge arising out of the murder of Martin Sylvester on August 14, 2003;

    c.    The attempted larceny from Martin Sylvester on August 14, 2003;

    d.    The attempted distribution of marijuana to Martin Sylvester on August 14, 2003;

    e.    Conspiracy to commit any of the offenses listed in items a-d of this subparagraph.

**12)    Dismissal of Other Counts**

As a condition of the execution of this agreement and the Court's acceptance of the defendant's plea of guilty, the United States will move to dismiss the original indictment, the first superseding indictment and the remaining counts of the Second Superseding Indictment against this defendant.

**13)    Defendant's Cooperation**

The defendant reserves the option to cooperate.  If the defendant exercises his option to cooperate, the defendant agrees to cooperate fully and truthfully with the United States and the Commonwealth of Virginia, and provide all information known to the defendant regarding any criminal activity as requested by the government.  In that regard, if the defendant exercises the option to cooperate:

    a)    The defendant agrees to testify truthfully and completely at any grand juries, trials or other proceedings.

**J.A. 38**

b) The defendant agrees to be reasonably available for debriefing and pre-trial conferences as the United States may require.

c) The defendant agrees to provide all documents, records, writings, or materials of any kind in the defendant's possession or under the defendant's care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

d) The defendant agrees that, at the request of the United States, the defendant will voluntarily submit to polygraph examinations, and that the United States will choose the polygraph examiner and specify the procedures for the examinations.

e) The defendant agrees that the Statement of Facts is limited to information to support the plea. The defendant will provide more detailed facts relating to this case during ensuing debriefings.

f) The defendant is hereby on notice that the defendant may not violate any federal, state, or local criminal law while cooperating with the government, and that the government will, in its discretion, consider any such violation in evaluating whether to file a motion for a downward departure or reduction of sentence.

g) Nothing in this agreement places any obligation on the government to seek the defendant's cooperation or assistance.

**14) Use of Information Provided by the Defendant Under This Agreement**

8

**J.A. 39**

The United States and the Commonwealth of Virginia will not use any truthful information provided pursuant to this agreement in any criminal prosecution against the defendant in the Eastern District of Virginia, except in any prosecution for a crime of violence or conspiracy to commit, or aiding and abetting, a crime of violence (as defined in 18 U.S.C. section 16), as limited by paragraph 11 of this Plea Agreement. Pursuant to U.S.S.G. section 1B1.8, no truthful information that the defendant provides under this agreement will be used in determining the applicable guideline range, except as provided in section 1B1.8(b). Nothing in this plea agreement, however, restricts the Court's or Probation Officer's access to information and records in the possession of the United States. Furthermore, nothing in this agreement prevents the government in any way from prosecuting the defendant should the defendant provide false, untruthful, or perjurious information or testimony, or from using information provided by the defendant in furtherance of any forfeiture action, whether criminal or civil, administrative or judicial. The United States will bring this plea agreement and the full extent of the defendant's cooperation to the attention of other prosecuting offices if requested.

15)   **Prosecution in Other Jurisdictions**

The United States Attorney's Office for the Eastern District of Virginia will not contact any other state or federal prosecuting jurisdiction and voluntarily turn over truthful information that the defendant provides under this agreement to aid a prosecution of the defendant in that jurisdiction. Should any other prosecuting jurisdiction attempt to use truthful information the defendant provides pursuant to this agreement against the defendant, the United States Attorney's Office for Eastern District of Virginia agrees, upon

9

**J.A. 40**

request, to contact that jurisdiction and ask that jurisdiction to abide by the immunity provisions of this plea agreement. The parties understand that the prosecuting jurisdiction retains the discretion over whether to use such information.

### 16) Defendant Must Provide Full, Complete and Truthful Cooperation

This plea agreement is not conditioned upon charges being brought against any other individual. This plea agreement is not conditioned upon any outcome in any pending investigation. This plea agreement is not conditioned upon any result in any future prosecution which may occur because of the defendant's cooperation. This plea agreement is not conditioned upon any result in any future grand jury presentation or trial involving charges resulting from this investigation. This plea agreement is conditioned upon the defendant providing full, complete and truthful cooperation, if the defendant exercises his option to cooperate.

### 17) Motion for a Downward Departure

The parties agree that the United States reserves the right to seek any departure from the applicable sentencing guidelines, pursuant to Section 5K1.1 of the Sentencing Guidelines and Policy Statements, or any reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, if, in its sole discretion, the United States determines that such a departure or reduction of sentence is appropriate.

### 18) The Defendant's Obligations Regarding Assets Subject to Forfeiture

The defendant agrees to identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest. The defendant agrees to take all steps as

10

**J.A. 41**

requested by the United States to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant. The defendant agrees to undergo any polygraph examination the United States may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years. Defendant agrees to forfeit to the United States all of the defendant's interests in any asset of a value of more than $1000 that, within the last five years, the defendant owned, or in which the defendant maintained an interest, the ownership of which the defendant fails to disclose to the United States in accordance with this agreement.

**19)  Forfeiture Agreement**

The defendant agrees to forfeit all interests in any drug related asset the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense. The defendant further agrees to waive all interest in the asset(s) in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

**20)  Waiver of Further Review of Forfeiture**

11

**J.A. 42**

The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.  The defendant also waives any failure by the Court to advise the defendant of any applicable forfeiture at the time the guilty plea is accepted as required by Rule 11(b)(1)(J).  The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding.  The defendant understands and agrees that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct and substitute assets for property otherwise subject to forfeiture.

**21)   Breach of the Plea Agreement and Remedies**

This agreement is effective when signed by the defendant, the defendant's attorney, an attorney for the United States and an attorney for the Commonwealth of Virginia.  The defendant agrees to entry of this plea agreement at the date and time scheduled with the Court by the United States (in consultation with the defendant's attorney).  If the defendant withdraws from this agreement, or commits or attempts to commit any additional federal, state or local crimes, or intentionally gives materially false, incomplete, or misleading testimony or information, or otherwise violates any provision of this agreement, then:

a)   The United States and the Commonwealth of Virginia will be released from its obligations under this agreement, including any obligation to seek a downward departure or a reduction in sentence.   The

12

**J.A. 43**

defendant, however, may not withdraw the guilty plea entered pursuant to this agreement;

b) The defendant will be subject to prosecution for any federal criminal violation, including, but not limited to, perjury and obstruction of justice, that is not time-barred by the applicable statute of limitations on the date this agreement is signed. Notwithstanding the subsequent expiration of the statute of limitations, in any such prosecution, the defendant agrees to waive any statute-of-limitations defense; and

c) Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided, or statements made, by the defendant, and all such information, statements, and leads derived therefrom may be used against the defendant. The defendant waives any right to claim that statements made before or after the date of this agreement, including the statement of facts accompanying this agreement or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution or federal law.

Any alleged breach of this agreement by either party shall be determined by the Court in an appropriate proceeding at which the defendant's disclosures and documentary evidence

13

**J.A. 44**

shall be admissible and at which the moving party shall be required to establish a breach of the plea agreement by a preponderance of the evidence. The proceeding established by this paragraph does not apply, however, to the decision of the United States whether to file a motion based on "substantial assistance" as that phrase is used in Rule 35(b) of the Federal Rules of Criminal Procedure and Section 5K1.1 of the Sentencing Guidelines and Policy Statements. The defendant agrees that the decision whether to file such a motion rests in the sole discretion of the United States.

22)     Nature of the Agreement and Modifications

This written agreement constitutes the complete plea agreement between the United States, the Commonwealth of Virginia, the defendant, and the defendant's counsel. The defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause the defendant to plead guilty. Any modification of this plea agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY

By: _____
Olivia N. Hawkins
Assistant United States Attorney

MICHAEL HERRING
COMMONWEALTH'S ATTORNEY

By: _____
Shannon Y. Dion
Special Assistant Commonwealth's
Attorney

Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal indictment. Further, I fully

14

**J.A. 45**

understand all rights with respect to 18 U.S.C. § 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

Date: 2/13/09 _____
Justin Eugene Taylor
Defendant

**Defense Counsel Signature**: I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending indictment. Further, I have reviewed 18 U.S.C. § 3553 and the Sentencing Guidelines Manual, and I have fully explained to the defendant the provisions that may apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.

Date: 2/13/09 _____
James Sumpter
Counsel for the Defendant

**J.A. 46**

## U. S. DEPARTMENT OF JUSTICE

### Statement of Special Assessment Account

This statement reflects your special assessment only. There may be other penalties imposed at sentencing.

| ACCOUNT INFORMATION | |
|---|---|
| CRIM. ACTION NO.: | 3:08CR326 |
| DEFENDANT'S NAME: | JUSTIN EUGENE TAYLOR |
| PAY THIS AMOUNT: | $200 |

INSTRUCTIONS:

1. **MAKE CHECK OR MONEY ORDER PAYABLE TO:**
   *CLERK, U.S. DISTRICT COURT*

2. **PAYMENT MUST REACH THE CLERK'S OFFICE BEFORE YOUR SENTENCING DATE**

3. **PAYMENT SHOULD BE SENT TO:**

| | In person (9 AM to 4 PM) | By mail: |
|---|---|---|
| **Richmond cases:** | **Clerk, U.S. District Court 701 East Broad Street, Suite 3000 Richmond, VA 23219** | |

4. **INCLUDE DEFENDANT'S NAME ON CHECK OR MONEY ORDER**

5. **ENCLOSE THIS COUPON TO INSURE PROPER and PROMPT APPLICATION OF PAYMENT**

**J.A. 47**

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:08CR326 |
| | ) | |
| JUSTIN EUGENE TAYLOR, | ) | |
| a.k.a. "Mookie," | ) | |
| a.k.a. "Mook," | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Counts Five and Seven of the pending Second Superseding Indictment and the following facts are true and correct and that had the matter gone to trial the United States could have proven each of them beyond a reasonable doubt.

1. Starting before January 1, 2002, and continuing through December 14, 2003, and thereafter, JUSTIN EUGENE TAYLOR conspired with others to distribute and possess with the intent to distribute marijuana. In furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others, known and unknown, would obtain wholesale quantities of marijuana and distribute the marijuana to coconspirators for redistribution. Also in furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others would arrange wholesale marijuana transactions and, rather than complete the transaction, would take the money from the customer, intentionally fail to distribute the marijuana to the customer, and use the money to finance their own drug trafficking business.

**J.A. 48**

2. Prior to August 14, 2003, JUSTIN EUGENE TAYLOR met Martin Sylvester and Jonathan Hartzell. During that meeting, JUSTIN EUGENE TAYLOR discussed his ability to supply Martin Sylvester with marijuana for redistribution and exchanged cell phone numbers with Sylvester.

3. On August 14, 2003, JUSTIN EUGENE TAYLOR arranged to meet Martin Sylvester for the purpose of distributing marijuana to Sylvester so that Sylvester could redistribute the marijuana to others. Per their arrangements, JUSTIN EUGENE TAYLOR met Martin Sylvester and Jonathan Hartzell at the residence of a mutual acquaintance. JUSTIN EUGENE TAYLOR was driven in his car to the residence by his Coconspirator, who dropped off JUSTIN EUGENE TAYLOR without being seen. JUSTIN EUGENE TAYLOR met with Sylvester and Hartzell at the residence and then rode in Hartzell's car with Hartzell and Sylvester to the area of Hanover Avenue and North Lombardy Street, in the City of Richmond, Virginia, in order to obtain marijuana for Sylvester. Upon arriving at that area, JUSTIN EUGENE TAYLOR asked Sylvester for the money to pay for the marijuana, but Sylvester refused to give the money to JUSTIN EUGENE TAYLOR until he saw the marijuana. JUSTIN EUGENE TAYLOR left Hartzell's vehicle in order to obtain the marijuana, however, he was unable to do so.

4. JUSTIN EUGENE TAYLOR contacted his Coconspirator and the two of them devised a plan to steal the money that Sylvester had to purchase the marijuana. Pursuant to that plan, the Coconspirator, who was armed with a 9mm semiautomatic pistol, would pose as the drug dealer, meet with Sylvester and demand to see the purchase money. Upon Sylvester showing the Coconspirator

**J.A. 49**

the money, the plan was for the Coconspirator to take the money by force and flee the area with JUSTIN EUGENE TAYLOR, in JUSTIN EUGENE TAYLOR's car. JUSTIN EUGENE TAYLOR did not explicitly plan or agree to kill Martin Scott Silvester.

5. Pursuant to this plan, the Coconspirator went to the alleyway located between Hanover and Grove Avenues, and North Lombardy and North Vine Streets. JUSTIN EUGENE TAYLOR called Sylvester and told him to meet the man in the alleyway to obtain the marijuana.   JUSTIN EUGENE TAYLOR then went to his car to wait for the Coconspirator.

6. The Coconspirator met Sylvester in the alleyway, displayed the 9mm semiautomatic pistol and demanded Sylvester's marijuana purchase money. Martin Sylvester resisted, the pistol discharged and Martin Sylvester was fatally shot.   Martin Sylvester died the next day from the gunshot wound.

7. The Coconspirator fled to JUSTIN EUGENE TAYLOR's car and the Coconspirator and JUSTIN EUGENE TAYLOR fled the area.

The actions taken by the defendant as described above, were done willfully and knowingly with the specific intent to violate the law.   The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

**J.A. 50**

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Justin Eugene Taylor, and the United States and the Commonwealth of Virginia, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Justin Eugene Taylor

I am Justin Eugene Taylor's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

James Sumpter, Esquire
Attorney for Justin Eugene Taylor

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY

By:
Olivia N. Hawkins
Assistant United States Attorney

MICHAEL HERRING
COMMONWEALTH'S ATTORNEY

By:
Shannon Y. Dion
Special Assistant Commonwealth's
Attorney

**J.A. 51**

AO 245B (Rev. 12/03)(VAED rev. 2) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Richmond Division

UNITED STATES OF AMERICA

V.

Case Number:    3:08CR00326-001

USM Number:    39504-083

JUSTIN EUGENE TAYLOR
Defendant.

Defendant's Attorney:
    JAMES F. SUMPTER, ESQ.

## JUDGMENT IN A CRIMINAL CASE

The defendant pleaded guilty to Count(s) 5 and 7 of the Second Superseding Indictment.

The defendant is adjudicated guilty of these offenses.

| Title and Section | Nature of Offense | Offense Class | Offense Ended | Count |
|---|---|---|---|---|
| 18 U.S.C. 1951 | CONSPIRACY TO INTERFERE WITH COMMERCE BY THREATS AND VIOLENCE RESULTING IN DEATH | Felony | 8/14/2003 | 5 |
| 18 U.S.C. 924(c) | USE AND CARRY A FIREARM DURING AND IN RELATION TO A FELONY CRIME OF VIOLENCE | Felony | 8/14/2003 | 7 |

On motion of the United States, the Court has dismissed the original Indictment, the First Superseding Indictment and Counts 1, 2, 3, 4, and 6 of the Second Superseding Indictment.

The defendant is sentenced as provided in pages 2 through 6 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

05/14/2009
Date of Imposition of Judgment

/s/
James R. Spencer
Chief United States District Judge

05/14/2009

J.A. 52

J.A. 53

_____
/s/
James R. Spencer
(Chief United States District Judge

Case Number:        3:08CR00326-001
Defendant's Name:   JUSTIN EUGENE TAYLOR

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:  TWO HUNDRED and FORTY (240) MONTHS ON COUNT 5 AND ONE HUNDRED TWENTY (120) MONTHS ON COUNT 7 TO BE SERVED CONSECUTIVE TO CT. 5 AND TO ANY OTHER SENTENCE DEFENDANT IS SERVING.

The Court makes the following recommendations to the Bureau of Prisons:

THAT THE DEFENDANT PARTICIPATE IN THE BOP 500 HOUR INTENSIVE DRUG TREATMENT PROGRAM.

The defendant is remanded to the custody of the United States Marshal.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____, with a certified copy of this Judgment.

_____
UNITED STATES MARSHAL

By        _____
DEPUTY UNITED STATES MARSHAL

**J.A. 54**

Case Number:      3:08CR00326-001
Defendant's Name:    JUSTIN EUGENE TAYLOR

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of THREE (3) YEARS ON COUNT 5 AND THREE (3) YEARS ON COUNT 7 TO BE SERVED CONCURRENT.1

The Probation Office shall provide the defendant with a copy of the standard conditions and any special conditions of supervised release.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and periodic drug tests thereafter, as determined by the court.

The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or restitution obligation , it is a condition of supervised release that the defendant pay any such fine or restitution in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

# STANDARD CONDITIONS OF SUPERVISION

The defendant shall comply with the standard conditions that have been adopted by this court set forth below:

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the officer;
4) the defendant shall support his or her dependants and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or any narcotic or other controlled substance or any paraphernalia related to such substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer for a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make notifications and to confirm the defendant's compliance with such notification requirement.

**J.A. 55**

AO 245B (Rev. 12/03)(VAED rev. 2) Judgment in a Criminal Case
    Sheet 3A - Supervised Release

Page 4 of 6

| Case Number: | 3:08CR00326-001 |
|---|---|
| Defendant's Name: | JUSTIN EUGENE TAYLOR |

# SPECIAL CONDITIONS OF SUPERVISION

While on supervised release, pursuant to this Judgment, the defendant shall also comply with the following additional special conditions:

1) The defendant shall provide the probation officer with access to requested financial information.

2) The defendant shall participate in a program approved by the Probation Office for substance abuse, which program may include residential treatment and testing to determine whether the defendant has reverted to the use of drugs or alcohol, with partial cost to be paid by the defendant, all as directed by the probation officer.

3) The defendant shall pay the balance owed on any court-ordered financial obligations in monthly installments of not less than $100.00, starting 60 days after supervision begins until paid in full.

4) As directed by the probation officer, the defendant shall apply monies received from income tax refunds, lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation.

**J.A. 56**

AO 245B (Rev. 12/03)(VAED rev. 2) Judgment in a Criminal Case                                    Page 5 of 6
    Sheet 5 - Criminal Monetary Penalties

Case Number:     3:08CR00326-001
Defendant's Name:    JUSTIN EUGENE TAYLOR

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments on Sheet 6.

| Count | Assessment | Fine | Restitution |
|---|---|---|---|
| 1 | $100.00 | $0.00 | $6,855.74 |
| **TOTALS:** | **$100.00** | **$0.00** | **$6,855.74** |

No fines have been imposed in this case.

The defendant must make restitution (including community restitution) to the following payees in the amount listed below. If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. Section 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Count | Total Loss | Restitution Ordered | Priority or Percentage |
|---|---|---|---|---|
| Scott O. Silvester  (SEE SEALED ATTACHMENT) | | $0.00 | $6,855.74 | |
| TOTALS: | | $0.00 | $6,855.74 | |

Payments of Restitution are to be made payable to Clerk, U.S. District Court.

## J.A. 57

AO 245B (Rev. 12/03)(VAED rev. 2) Judgment in a Criminal Case
Sheet 6 - Schedule of Payments

| | |
|---|---|
| **Defendant's Name:** | **JUSTIN EUGENE TAYLOR** |
| **Case Number:** | **3:08CR00326-001** |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

Payment to begin immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Payments shall be applied in the following order: (1) assessment (2) restitution principal (3) restitution interest (4) fine principal (5) fine interest (6) community restitution (7) penalties and (8) costs, including cost of prosecution and court costs.

Nothing in the court's order shall prohibit the collection of any judgment, fine, or special assessment by the United States.

**J.A. 58**

FILED: June 24, 2016

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 16-9177**
**(3:08-cr-00326-JRS-1)**

─────────────

In re: JUSTIN EUGENE TAYLOR, a/k/a Mookie, a/k/a Mook,

     Movant.

─────────────

O R D E R

─────────────

Justin Eugene Taylor has filed a motion pursuant to 28 U.S.C. §§ 2244(b), 2255(h) (2012) for authorization to file a second or successive 28 U.S.C. § 2255 (2012) motion.  Taylor has made a prima facie showing that the new rule of constitutional law announced in Johnson v. United States, 135 S. Ct. 2551 (2015), and held to apply retroactively to cases on collateral review by Welch v. United States, 136 S. Ct. 1257 (2016), may apply to his case.  See In re Hubbard, __ F.3d __, No. 15-276, 2016 WL 3181417 (4th Cir. June 8, 2016).  We grant authorization for Taylor to file a second or successive § 2255 motion, thus permitting consideration of the motion by the district court in the first instance.  The one-year limitations period of 28 U.S.C. § 2255(f)(3) for filing a § 2255 motion raising a claim relying on the Supreme Court's decision in Johnson expires on June 26, 2016.

**J.A. 59**

Entered at the direction of the panel:  Judge Gregory, Judge Keenan, and Judge Harris.

For the Court

/s/ Patricia S. Connor, Clerk

**J.A. 60**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **JUSTIN EUGENE TAYLOR,** | ) | **Crim. No. 3:08CR326** |
| *Movant,* | ) | |
| **v.** | ) | **Civil No.** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| *Respondent.* | ) | |

**SECOND OR SUCCESSIVE MOTION TO**
**VACATE JUDGMENT UNDER 28 U.S.C. § 2255**

Petitioner, Justin Eugene Taylor, through undersigned counsel, hereby files this motion to set aside the judgment in this case on Count Seven, pursuant to 28 U.S.C. § 2255.[1] As explained below, Mr. Taylor's conviction under 18 U.S.C. § 924(c) on Count Seven must be vacated in light of the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

Mr. Taylor also respectfully requests that this motion be held in abeyance pending a decision from the United States Court of Appeals for the Fourth Circuit regarding whether Hobbs Act robbery is a "crime of violence" under § 924(c). That court has tentatively set the issue for

---

[1] Pursuant to the rules governing § 2255 proceedings, all § 2255 petitions must "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." Rule 2(b)(5) of Rules Governing § 2255 Proceedings. According to the Advisory Committee Notes to this rule, "[t]he Committee envisions that the courts will apply third-party, or 'next friend,' standing analysis in deciding whether the signer was actually authorized to sign the petition on behalf of the petitioner." *Id.* Advisory Committee Notes, 2004 Amend.

The 2004 amendments to Rule 2(b)(5), however, also explicitly provide that attorneys be given "next friend" standing. More specifically, "Rule 2(b)(5) has been amended by removing the requirement that the motion be signed personally by the moving party. Thus, under the amended rule the motion may be signed by movant personally or by someone acting on behalf of the movant, assuming that the person is authorized to do so, **for example, an attorney for the movant**." *Id.* (emphasis added). An attorney, therefore, need not establish next friend standing to sign a § 2255 motion on behalf of a movant.

Nevertheless, counsel will obtain a signed statement from Mr. Taylor declaring under penalty of perjury that he has reviewed this motion and has requested that undersigned counsel file it on his behalf. When this signed statement is received, it will be forwarded to the Court.

**J.A. 61**

argument in September in *United States v. Ali*, 15-4433. Several other cases before the Fourth Circuit have also raised the issue. *See, e.g.*, *United States v. El Shamy*, 16-4054; *United States v. Wilson*, 16-4002; *United States v. Terry*, 15-4564; *United States v. Bailey*, 14-487.

## INTRODUCTION

On February 13, 2009, Mr. Taylor pleaded guilty to Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Count Five), and Using and Carrying a Firearm during and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count Seven). Specifically, the second superseding indictment alleged that the underlying "crime of violence" for the § 924(c) charge was conspiracy to interfere with commerce by armed robbery as charged in Count Five, and interference with commerce by threats and force, as charged in Count Six. *See* Doc. 17. However, post-*Johnson*, both conspiracy convictions and Hobbs Act Robbery fail to qualify as a "crime of violence." Therefore, Mr. Taylor is actually innocent of the § 924(c) offense, and his conviction is void.

The relevant portion of § 924(c) defining a "crime of violence" has two clauses. The first, § 924(c)(3)(A), is commonly referred to as the "force clause." The second, § 924(c)(3)(B), is commonly referred to as the "residual clause." The § 924(c) residual clause is materially indistinguishable from the Armed Career Criminal Act (ACCA) residual clause (18 U.S.C. §924(e)(2)(B)(ii)) that the Supreme Court in *Johnson* struck down as unconstitutionally vague. It follows that the § 924(c) residual clause is likewise unconstitutionally vague. Hence, no offenses–including Hobbs Act Robbery or conspiracies–can qualify as a "crime of violence" under the § 924(c) residual clause. Likewise, neither Hobbs Act Robbery nor a conspiracy offense qualify as a "crime of violence" under the § 924(c) force clause. Therefore, the "crime

**J.A. 62**

of violence" element of § 924(c) cannot be satisfied here, and a conviction cannot be constitutionally sustained under the statute.

As a result, Mr. Taylor's  § 924(c) conviction violates 1) due process, 2) violates the laws of the United States  and results in a fundamental miscarriage of justice, and 3) was entered in excess of this Court's jurisdiction.   Therefore, he is entitled to relief under 28 U.S.C. §2255(a).   Mr. Taylor's petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Johnson*, a ruling which established a "newly recognized" right that is "retroactively applicable to cases on collateral review."[2]   The Fourth Circuit authorized him to file a successive § 2255 motion on June 24, 2016.   *See* Doc. 74. Therefore, Mr. Taylor respectfully requests that this Court grant his § 2255 motion and vacate his conviction.

As grounds for this motion, Mr. Taylor states as follows:

## STATEMENT OF FACTS

### A.      Guilty Plea and Sentencing

On February 13, 2009, Mr. Taylor pleaded guilty to Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Count Five), and Using and Carrying a Firearm during and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count

---

[2]  The rules governing the time for filing a § 2255 motion are governed by § 2255(f).  *See* Rule 3(c) of Rules Governing § 2255 Proceedings.   Section 2255(f)(3) provides that any claim for relief must be filed within one year of "the date on which the right asserted was initial recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."   The rules governing § 2255 proceedings state that the Federal Rules of Civil and Criminal Procedure apply to the extent they are not inconsistent with the § 2255 rules.   Both provide that when the last day of a filing period falls on a Sunday, the period continues to run until the end of the next day.  *See* Fed. R. Civ. Proc. 6(a)(1)(C); Fed. R. Crim. Proc. 45(a)(1)(C).   Thus, because the one-year anniversary of the Supreme Court's decision in *Johnson* was June 26, 2016, which was a Sunday, the

Seven). On May 14, 2009, Mr. Taylor was sentenced to 240 months imprisonment on Count Five and 120 months on Count Seven, to run consecutive, for a total term of 360 months.

### B. Direct Appeal

On May 19, 2009, Mr. Taylor filed a notice of appeal. *See* Doc. 42. Mr. Taylor argued on appeal that the district court unlawfully denied his request for a downward departure, unlawfully treated two of his prior offenses as separate sentences, and that he did not waive his right to appeal. *See* Opening Brief of Appellant, *United States v. Taylor*, 2010 WL 943519 (4th Cir. Mar. 16, 2010). The Fourth Circuit dismissed his appeal on January 7, 2011, finding he had knowingly and voluntarily waived his right to appeal. *See United States v. Taylor*, No. 09-4468 Doc. 54 (4th Cir. Jan. 7, 2011).

### C. Previous § 2255 Petition

On June 26, 2012, Mr. Taylor filed his first 28 U.S.C. § 2255 motion. *See* Doc. 58. In this motion, Mr. Taylor claimed that he did not waive his right to appeal, that the court erred in calculating his guideline range, and that he received ineffective assistance of counsel. On July 7, 2015, the district court denied Mr. Taylor's § 2255 motion. *See* Docs. 69-70.

### D. *Johnson v. United States*

On June 26, 2015, the Supreme Court issued its decision in *Johnson*, 135 S. Ct. 2551. In that case, the Court overruled *Sykes v. United States*, 131 S. Ct. 2267 (2011) and *James v. United States*, 550 U.S. 192 (2007), and invalidated the ACCA's residual clause as too vague to provide adequate notice under the Due Process Clause. In *Johnson*, 135 S. Ct. 2251, the Supreme Court held that imposing an increased sentence under the residual clause of the ACCA violates the

deadline for filing a § 2255 motion raising a claim under *Johnson* is Monday, June 27, 2016.

**J.A. 64**

Constitution's guarantee of due process.   Specifically, the Court concluded that "the indeterminancy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," and "[i]ncreasing a defendant's sentence under the clause denies due process of law."   *Id.* at 2257.   Finding the residual clause "vague in all its applications[,]" the Court overruled its contrary decisions in *Sykes* and *James.   Id.* at 2562-63. After *Johnson,* both Mr. Taylor's § 924(c) conviction cannot be sustained for the reasons noted below.

### ARGUMENT

**I.**     **After *Johnson*, Mr. Taylor's conviction under 18 U.S.C. § 924(c) cannot be sustained because Hobbs Act Robbery and Conspiracy fail to qualify as "crimes of violence."**

Mr. Taylor's § 924(c) conviction for using a firearm in relation to a "crime of violence" is void because the "crime of violence" element cannot be satisfied here.   The predicate offenses of Hobbs Act Robbery and Conspiracy to commit the same do not qualify as "crimes of violence" as a matter of law.

Under § 924(c)(3), "crime of violence" is defined as follows:

(3)     For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

   (A)     has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

   (B)     that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause – § 924(c)(3)(A) – is the force clause.   The second – § 924(c)(3)(B) – is the residual clause.   As discussed in the next sections, Hobbs Act Robbery and Conspiracy to

Commit Hobbs Act Robbery both fail to qualify as a "crime of violence" under the residual clause because it is void for vagueness under *Johnson*. In *Johnson*, the Supreme Court struck down the Armed Career Criminal Act's (ACCA) residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) as unconstitutionally vague. 135 S. Ct. 2551, 2557 (2015). Under *Johnson*, § 924(c)'s materially indistinguishable residual clause (§ 924(c)(3)(B)) must similarly be stricken as unconstitutional. Hobbs Act Robbery and Conspiracy to commit the same also both fail to qualify as a "crime of violence" under the remaining force clause (§ 924(c)(3)(A)) because it can be accomplished without the intentional use, attempted use, or threatened use of force. Therefore, a conviction cannot be constitutionally sustained under § 924(c) for Count Seven.

> **A.     Section 924(c)'s residual clause is unconstitutionally vague.**

Hobbs Act Robbery and Conspiracy offenses cannot qualify as "crimes of violence" under § 924(c)(3)'s residual clause because the clause is void for vagueness under *Johnson*. In *Johnson*, the Supreme Court decided that the ACCA's residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another") is unconstitutionally vague, but the decision equally applies to the parallel "crime of violence" definition set forth under § 924(c)(3)'s residual clause. Section 924(c)(3)(B) suffers from the same two flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Thus, using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" violates due process.

Indeed, the Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) and the Seventh Circuit in *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015) recently struck down an identical residual clause – 18 U.S.C. § 16(b) – as unconstitutionally vague in light of

**J.A. 66**

*Johnson*. The rationale of *Dimaya* and *Vivas-Ceja* applies equally to the determination of whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c). Relying on the same reasoning of *Dimaya* and *Vivas-Ceja,* several district courts have recently concluded that the § 924(c) residual clause was void for vagueness. *See United States v. Smith*, No. 2:11CR058, 2016 WL 2901661 (D. Nev. May 18, 2016) (concluding that § 924(c)'s residual clause is void after *Johnson*); *United States v. Lattanaphom*, No. 2:99-00433, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016) (same); *United States v. Bell*, No. 15-cr-258, 2016 WL 344749 (N.D. Cal. Jan, 28, 2016) (same); *United States v. Edmundson*, No. PWG-13-15, 2015 WL 9311983 (D. Md. Dec. 23, 2015) (same). This Court should do the same.

**1.** *Johnson* **expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

In *Johnson*, the Supreme Court "began its analysis of the vagueness question by noting that the [ACCA] residual clause mandates the use of a two-step framework [under the categorical approach], to determine whether a crime is a violent felony." *Vivas-Ceja*, 808 F.3d at 721 (citing *Johnson,* 135 S. Ct. at 2557, 2562). "In the first step, the court must determine 'the kind of conduct that the crime involves in the ordinary case' as opposed to the facts on the ground in the defendant's prior case." *Id.* (quoting *Johnson*, 135 S. Ct. at 2557). The second step is also dependent on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime presents a serious potential risk of physical injury." *Id.*

The Supreme Court held that these "two features of the residual clause conspire to make it unconstitutionally vague." *Johnson*, 135 S. Ct. at 2557. To begin with, the Court held that it is impossible for a sentencing court to even get past the first step because there is too much

**J.A. 67**

uncertainty about what constitutes the ordinary case of a crime.   *Id.*   The Court concluded that the "the residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves."   *Id.* at 2558.   Specifically, the Court explained that a statistical analysis of reported cases, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case."   *Id.* at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc).

The Court then held that the second step of the residual clause is equally flawed because there is too much "'uncertainty about how much risk it takes' [i.e., the quantum of risk] before a court can conclude that the 'ordinary case' of a crime is serious enough to be a violent felony." *Vivas-Ceja*, 808 F.3d at 722 (citing *Johnson,* 135 S. Ct. at 2558).   To be clear, the Court's reasoning on the second step did not turn on the type of risk, i.e. "serious potential risk of physical injury."   Rather, like the first step, it also turned on the doomed "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-word facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction."   *Johnson*, 135 S. Ct. at 2558.   With these words, the Court conveyed that the constitutionality of the ACCA residual clause would not have been in question if the statute had required the jury to determine the risk based on the individual facts in the case.   *Id.*   The Court explained that it was not doubting the constitutionality of any statute which "require[s] gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*."   *Johnson* at 2561 (emphasis added). However, because under the ACCA residual clause, the quantum of risk had to be assessed based on the ordinary case, the clause was constitutionally doomed.   The Court held that such

indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary" case analysis is more than the "Due Process Clause tolerates." *Id.* at 2558.

Thus, *Johnson* not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

### 2. *Johnson* Means That § 924(c)(3)(B) Is Unconstitutionally Vague.

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.[4] To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not verbatim identical.[5] But the differences have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in § 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the *Johnson*

---

[4] Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here. Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B). *See, e.g., Chambers v. United States*, 555 U.S. at 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring). *See also United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same);*United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA otherwise clause and § 16(b) as "analogous"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[5] In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

decision.[6]   The Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk.[7]

The two-step process is the same under both the ACCA and § 924(c).  Both statutes require courts first to picture the "ordinary case" embodied by a felony,[8] and then decide if it qualifies as a crime of violence by assessing the quantum of risk posed by the "ordinary case."

---

[6] *See Vivas-Ceja*, 808 F.3d at 722 ("§ 16(b) substitutes 'substantial risk' for the residual clause's 'serious potential risk.'  Any difference between the two phrases is superficial.  Just like the residual clause, § 16(b) offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'"); *Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other). *See also United States v. Gomez-Leon,* 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and holding that U.S.S.G. § 4B1.2, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

[7] Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in *Johnson* said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, and § 924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability."  *Johnson*, 135 S. Ct. at 2558.

[8] Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by using the categorical approach. *See, e.g., United States v. Fuertes*, 805 F.3d 485,498 (4th Cir. 2015);   *United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006); *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

The Fourth Circuit held exactly as such in *United States v. Avila*, 770 F.3d 1100, 1107 (4th Cir. 2014), in construing § 16(b):

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James*, 550 U.S. at 208, 127 S. Ct. 1586. As long as an offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*Id.*

*Avila* controls here because § 16(b) and § 924(c)(3)(B) are identical.[9] Even more, consistent with *Avila*, in *United States v. Fuerte*s, 805 F.3d 485, 498 (4th Cir. 2015), the Fourth Circuit directly applied the "ordinary case" inquiry to the § 924(c) residual clause. 805 F.3d at 500 n.6. *See also United States v. Naughton*, 621 Fed. Appx. 170, 178 (4th Cir. Sept. 2, 2015) (applying the ordinary case inquiry to § 924(c)(3)(B)). Thus, as Judge Grimm explained in *Edmundson*, the "§ 924(c) residual clause suffers from exactly the same double indeterminancy as the ACCA residual clause." *Edmundson*, 2015 WL 9311983, at *4. Moreover, the Seventh and Ninth Circuits recognized the same in invalidating § 16(b), the identical twin to §924(c)(3)(B), as void for vagueness under *Johnson*. *See Vivas-Ceja,* 808 F.3d at 723; *Dimaya*, 803 F.3d at 1117.

---

[9] Other courts likewise require the ordinary case analysis when the statutory language of § 16(b) (and thus § 924(c)(3)(B)) is at issue. *See*, *e.g., Keelan*, 786 F.3d at 871 (adopting "ordinary case" analysis for § 16(b)); *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2012) (citing *James* as the source of the "ordinary case" analysis required by § 16(b)); *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007) (same).

It is also noteworthy that in litigating *Johnson*, the Government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem.  Upon recognizing that the definitions of a "crime of violence" in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23) (March 20, 2015).   The Solicitor General was right.   Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This Court should hold the Government to that concession.

Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is. *Fuertes*, 805 F.3d at 500 n.6; *Avila*, 770 F.3d at 1107; *Ayala*, 601 F.3d at 267; *Van Don Nguyen*, 571 F.3d at 530; *Sanchez-Garcia*, 501 F.3d at 1213.   Since these are the identical analytical steps that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*.   As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

B.      **A Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery fail to qualify as "crimes of violence" under the § 924(c) force clause.**

        1.      **The categorical approach applies in determining whether an offense qualifies as a "crime of violence" under the "force" clause.**

In determining whether an offense qualifies as a "crime of violence" under the "force" clause, sentencing courts must employ the categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Royal*, 731 F.3d 333, 341-41 (4th Cir. 2013).[10] This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Royal*, 731 F.3d at 341-42. In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute – "including the most innocent conduct" – matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

As a result, post-*Descamps*, for an offense to qualify as a "crime of violence" under the § 924(c) "force" clause, the offense must have an element the use, attempted use, or threatened use of "physical force" against another person or property. 18 U.S.C. § 924(c)(3)(A). In this context, "physical force" means *violent* force – that is "strong physical force," which is "capable

---

[10] Although *Descamps* involved the categorical approach as applied to the ACCA, this same categorical approach applies in determining whether an offense qualifies as a "crime of violence" under the § 924(c) force clause. *See Fuertes*, 805 F.3d at 498.

of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).[11]

As further detailed below, under these terms, Hobbs Act Robbery and Conspiracy to commit the same both fail to qualify as § 924(c) "crimes of violence."

### 2. Conspiracy to Commit Hobbs Act Robbery is not a violent crime.

Conspiracy offenses fail to qualify as crimes of violence because they have no force element. Before *Johnson*, the Fourth Circuit had concluded that conspiracy offenses qualified solely as violent felonies under the ACCA's residual clause. This was because conspiracies only require an agreement, or at most an overt act, neither of which mandate an element of force. After *Johnson*, conspiracies no longer qualify as violent felonies or crimes of violence under the ACCA or § 924(c) because they do not have a necessary element of force.

In *United States v. White*, the Fourth Circuit originally concluded that for a conspiracy to be a "violent felony" under the ACCA, the object of the conspiracy must qualify as a "violent felony." 571 F.3d 365, 370 (4th Cir. 2009) ("When conspirators have formed a partnership in crime to achieve a violent objective, and when they intend to achieve that object, they have substantially increased the risk that their actions will result in serious physical harm to others.").

---

[11] Courts of Appeals have consistently held that 18 U.S.C. § 16(a) (which is almost the same as §924(c)(3)(A)) contemplates "destructive," "violent force" – not *de minimis* force. *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); *see also Flores-Lopez v. Holder*, 685 F.3d 857, 864 (9th Cir. 201) (requiring "use of violent, physical force"); *United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003); *Bazan-Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001) ("[T]erm 'physical force' in 18 U.S.C. § 16(b) refers to actual violent force."). Indeed, the Supreme Court in *Johnson* cited lower court opinions defining "physical force" under § 16 when defining "physical force" in the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). 559 U.S. at 140 (citing *Flores*, 350 F.3d at 672).

This conclusion, however, was abrogated by the Supreme Court's decision in *Johnson*.  The Fourth Circuit has now concluded that conspiracy convictions no longer qualify as ACCA predicates.  *See United States v. Melvin*, 621 F. App'x 226 (4th Cir. 2015) (mem.) (concluding that conspiracy conviction no longer qualified as ACCA predicate after *Johnson*).

No matter the object of the conspiracy, conspiracy convictions no longer qualify as crimes of violence because, under *White*, conspiracy only qualified under the ACCA's residual clause.  Put another way, conspiracy is nothing more than an agreement and possibly an overt act, neither of which require force or threat of violent force.  Therefore, conspiracy offenses cannot qualify as either a crime of violence or a violent felony because they do not have a necessary element of force.  *See White*, 571 F.3d at 370 (explaining that conspiracy qualified as violent felony based on objective); *see also Edmundson*, 2015 WL 9311983 at *4 (finding that conspiracy to commit Hobbs Act Robbery does not qualify as a crime of violence under the force clause of § 924(c) and that the residual clause in § 924(c) is void for vagueness after *Johnson*).

Simply put, after *Johnson*, conspiracies can no longer be § 924(c) predicates because they do not have a necessary force element.  Therefore, Mr. Taylor's conspiracy conviction on Count Five does not qualify as a "crime of violence" to support his conviction under § 924(c) on Count Seven.

> **3.  Hobbs Act Robbery under § 1951(b) fails to qualify as a "crime of violence" under the "force" clause of § 924(c)(3) because it can be violated without 1) the use of attempted use, or threatened use of violent physical force, or 2) an intentional threat of the same.**

To qualify as a crime of violence under § 924(c)'s force clause, the elements of the offense must include an element of "the use, attempted use, or threatened use of physical force

against the person or property of another."   18 U.S.C. § 924(c)(3)(A).   "Physical force" in this context means "violent force" or "strong physical force" that is "capable of causing physical pain or injury to another person."   *United States v. Johnson*, 559 U.S. 133, 140 (2010).[12]   Thus, for Hobbs Act Robbery to constitute a crime of violence under the § 924(c) force clause, it must include an element of the use, attempted use, or threatened use of violent force.   If any available means of committing Hobbs Act Robbery is nonviolent, the categorical approach dictates that it is not a crime of violence under the force clause.   *See United States v. Naughton*, 621 F. App'x 170, 178 (4th Cir. 2015) (citing *Descamps*, 133 S Ct. at 2285-86).

The plain language of the Hobbs Act robbery statute under 18 U.S.C. § 1951 provides that the offense can be accomplished by the act of placing another in fear of injury.   This action, at best, constitutes a threat of *injury* to another, which squarely does not require the use or threatened use of "violent force."   The Fourth Circuit's decision in *Torres-Miguel,* 701 F.3d 165, is directly on point.   Indeed, in that case, the Fourth Circuit unequivocally held that the threat of *any physical injury,* even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force."   *Torres-Miguel*, 701 F.3d at 168.

---

[12]   Courts of Appeals have consistently held that 18 U.S.C. § 16(a) (which is almost the same as § 924(c)(3)(A)) contemplates "destructive," "violent force" – not *de minimis* force. *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); *see also Flores-Lopez v. Holder*, 685 F.3d 857, 864 (9th Cir. 201) (requiring "use of violent, physical force"); *United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003); *Bazan-Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001) ("[T]erm 'physical force' in 18 U.S.C. § 16(b) refers to actual violent force.").   Indeed, the Supreme Court in *Johnson* cited lower court opinions defining "physical force" under § 16 when defining "physical force" in the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA).   559 U.S. at 140 (citing *Flores*, 350 F.3d at 672).

**J.A. 76**

Accordingly, *Torres-Miguel* and similar case holdings in other circuit courts command that Hobbs Act robbery, which can be accomplished by putting another in fear of physical injury, does not require "violent force." If threat of serious bodily injury or death did not equal violent force in *Torres-Miguel*, then certainly, threat of "physical injury" does not. Indeed, a defendant can place another in fear of injury by threatening to *poison* that person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, to lock the person up in the car on a hot day, to lock that person at an abandoned site without food or shelter – some of the very examples that the Fourth Circuit in *Torres-Miguel* as well as the other Courts mentioned above held do not constitute "violent force."

Even more, Hobbs Act robbery can also be accomplished by placing someone in fear of injury to his *property*. This also does not require "violent force" against property because it can be accomplished by many means short of strong physical force. "The concept of 'property' under the Hobbs Act is an expansive one" that includes "*intangible assets*, such as rights to solicit customers and to conduct a lawful business." *United States v. Arena*, 180 F.3d 380, 392 (2d. Cir. 1999) (citing 18 U.S.C. § 1951(a) and interpreting robbery definition that includes threats against physical violence against "persons 'or property'") *abrogated in part on other grounds by Scheidler v. Nat'l Org. for Women, Inc.* 537 U.S. 393, 401 n.8 (2003) (emphasis added); *see also United States v. Iozzi*, 420 F.2d 512, 514 (4th Cir. 1970) (sustaining conviction under Hobbs Act when boss threatened "to slow down or stop construction projects unless his demands were met."); *United States v. Local 560 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 780 F.2d 267, 281 (3d Cir. 1986) (the Circuits "are unanimous in extending Hobbs Act to protect intangible, as well as tangible

**J.A. 77**

property.").  Thus, Hobbs Act robbery can be committed via threats to cause a devaluation of some economic interest like a stock holding.  Such threats to economic interests are certainly not threats of "violent force."  Even injury to tangible property does not require the threat of violent force.  One can threaten to injure another's property by throwing paint on someone's house, pouring chocolate syrup on one's passport, or spray painting someone's car.  It goes without saying that these actions do not require violent force.

Because "the full range of conduct" covered by the Hobbs Act robbery statute does not require "violent force" against persons or property, it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause.  *Torres-Miguel*, 701 F.3d at 171.  It makes no difference, even if the possibility of violating the Hobbs Act robbery statute without violent physical force is slim.  Because the possibility exists, this Court cannot legally find that Hobbs Act robbery is a "crime of violence."

Likewise, the act of putting someone in fear of injury, as defined under the Hobbs Act robbery statute, does not constitute a "crime of violence" under the force clause because it does not require an *intentional* threat of physical force.  In *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006), the Fourth Circuit firmly held that an offense can only constitute a "crime of violence" under the force clause if it has an element that requires an "*intentional* employment of physical force [or threat of physical force]."  *Id.* (emphasis added).  The "fear of injury" element under the Hobbs Act robbery statute does not require a defendant to intentionally place another in fear of injury.  Therefore, it is missing the intentional mens rea necessary under *Garcia*.

Mr. Taylor acknowledges the Fourth Circuit's recent decision in *United States v. McNeal*, – F.3d –, 2016 WL 1178823 (4th Cir. Mar. 28, 2016) (concluding that armed bank robbery

**J.A. 78**

qualifies as crime of violence).   He further acknowledges that *McNeal* relied on *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995), which addressed Virginia's robbery offense.   For purposes of preservation, however, Mr. Taylor contends that *McNeal* was wrongly decided, and that because 18 U.S.C. § 1951(b) (Hobbs Act robbery), like Va. Code § 18.2-58 (Virginia robbery), can be violated solely through intimidation, it does not have the element of violent force necessary to qualify as a crime of violence under the career offender provision.   "Threats of violence or bodily harm are not an indispensable ingredient of intimidation.   It is only necessary that the victim actually be put in fear of bodily harm by the willful conduct or words of the accused."   *Harris v. Commonwealth*, 3 Va. App. 519, 521 (1986).   In other words, "[i]ntimidation differs from threat in that it occurs without an express threat by the accused to do bodily harm."   *Bivins v. Commonwealth*, 19 Va. App. 750, 743 (1995).

This conclusion becomes more apparent when Hobbs Act Robbery is compared to other federal criminal statutes.   The armed bank robbery statute, for example, criminalizes taking property or money from a person "by force *and* violence."   18 U.S.C. § 2113 (emphasis added).   Similarly, carjacking is defined as taking a motor vehicle "by force *and* violence."   18 U.S.C. § 2119 (emphasis added).   In contrast to these statutes, Hobbs Act Robbery criminalizes taking property from another by "force, *or* violence."   18 U.S.C. § 1951(b)(1).   To find that Hobbs Act Robbery necessarily involves an act of violent force would narrow the statute's scope, effectively nullifying the independent means of "actual or threatened force" and "fear of injury."   Therefore, the Court must find that Hobbs Act Robbery does not require an act of violent force, and is not a "crime of violence" within the meaning of § 924(c)(3)(A)'s force clause.

**J.A. 79**

**II.    Mr. Taylor is entitled to relief under 28 U.S.C. § 2255 relief because (1) his claims under *Johnson* are cognizable, (2) *Johnson* is retroactive, and (3) his claims are timely.**

**A.    Mr. Taylor's claims are cognizable under § 2255(a).**

First, based on all the reasons noted above, Mr. Taylor's § 924(c) conviction violates due process because it was dependent upon an unconstitutionally vague residual clause.   The Court in *Johnson* expressly held that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process."   *Johnson*, 135 S. Ct. at 2563; *see also Watkins*, 810 F.3d at 380; *Price*, 795 F.3d at 732-33.   It declared that the residual clause is unconstitutionally vague and that the Due Process Clause forbids any use of it in increasing a defendant's sentence.   *Johnson*, 135 S. Ct. at 2563; *see also Welch v United States*, 136 S. Ct. 1257, 1261-62 ("The *Johnson* Court held the residual clause unconstitutional under the void-for-vagueness doctrine, a doctrine that is mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to the States).").

Second, because both Hobbs Act Robbery and conspiracy offenses categorically fail to satisfy the "crime of violence" element under § 924(c) , the superseding indictment failed to state an offense under § 924(c), and Mr. Taylor has now been convicted of an offense that is no longer criminal.   This means his conviction violates the United States laws and results in a miscarriage of justice.   The Supreme Court has held that this is exactly the type of error that is cognizable under 28 U.S.C. §2255(a).   *See Davis v. United States*, 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law

**J.A. 80**

[no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255").

Third, Mr. Taylor's conviction has been entered in excess of this Court's jurisdiction because not only did the indictment fail to state a § 924(c) offense, but it affirmatively alleged conduct that is outside of the sweep of § 924(c). Specifically, Count Seven charged Mr. Taylor with possessing and brandishing a firearm in furtherance of a crime of violence, to wit: Conspiracy to Interfere with Commerce by Robbery (as charged in Count Five) and Hobbs Act Robbery (as charged in Count Six). However, as discussed herein, neither of these offenses qualify as a crime of violence under § 924(c)(3). In turn, a § 924(c) conviction can never be sustained based on these underlying offenses, no matter what the facts are. Simply put, Count Seven altogether fails to state a valid offense. Thus, Mr. Taylor's conviction is a legal nullity that was entered in excess of this Court's jurisdiction and must be vacated. *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute."); *United States v. Barboa*, 777 F.3d 1420, 1423 n. 3 (10th Cir. 1985) ("If Barboa pled guilty to something which was not a crime, he is not now precluded from raising this jurisdictional defect, which goes 'to the very power of the States to bring the defendant into court to answer the charge brought against him.'") (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).

### B. *Johnson* is retroactive.

As the Supreme Court recently made clear in *Welch v. United States*, *Johnson* announced a new substantive rule that has retroactive effect on collateral review. That means that because

**J.A. 81**

Mr. Taylor is entitled to relief under *Johnson*, this Court should grant his motion and re-sentence him accordingly.   *See Welch v. United States*, 136 S. Ct. 1257, 1263 (2016) ("Johnson announced a substantive rule that has retroactive effect in cases on collateral review.").

### C.      This motion is timely under 28 U.S.C. § 2255(f)(3).

This motion is timely under 28 U.S.C. § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."   The Supreme Court decided *Johnson* on June 26, 2015, and made it retroactive in *Welch*.   Mr. Taylor filed his claim within a year of that date.[3]

### CONCLUSION

For the reasons set forth above, Mr. Taylor respectfully asks this Court to grant his Motion, vacate his § 924(c) conviction.

Respectfully submitted,

**JUSTIN EUGENE TAYLOR**

By:      _____/s/_____

          Counsel

Paul E. Shelton, Jr.
Virginia State Bar Number: 88550
Office of the Federal Public Defender
701 East Broad Street, Suite 3600
Richmond, VA 23219
Telephone: (804) 565-0890
Fax: (804) 648-5033
paul_shelton@fd.org

---

[3]  *See supra* p. 3 n. 2.

**J.A. 82**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2016, I electronically filed the foregoing with the Clerk

of the Court using CM/ECF system, which will send a notification of such filing (NEF) to:

> Olivia L. Norman
> Office of the United States Attorney
> 919 E. Main Street, Suite 1900
> Richmond, VA 23219
> olivia.l.norman@usdoj.gov

By: _____/s/_____

Counsel

Paul E. Shelton, Jr.
Virginia State Bar Number: 88550
Office of the Federal Public Defender
701 East Broad Street, Suite 3600
Richmond, VA 23219
Telephone: (804) 565-0890
Fax: (804) 648-5033
paul_shelton@fd.org

**J.A. 83**

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:08-cr-00326 |
| | 3:16-cv-508 |
| JUSTIN EUGENE TAYLOR, | |
| Defendant. | |

**UNITED STATES' MOTION TO DISMISS § 2255**

The United States respectfully moves to dismiss defendant's petition filed under 28

U.S.C. § 2255 that seeks to challenge his conviction under 18 U.S.C. § 924(c).  Although

defendant contends that he is entitled to relief on collateral review under *Johnson v. United

States*, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016), he is not

challenging a sentence imposed under the Armed Career Criminal Act—the topic of those

decisions—and instead is seeking to extend *Johnson* and *Welch* to § 924(c)(3)(B) on collateral

review.  But because his conviction has been final for more than one year, defendant fails to

satisfy 28 U.S.C. § 2255(f)(3), which provides the only available exception to the collateral-

review statute's one-year statute of limitations.

For a defendant to satisfy § 2255(f)(3), the Supreme Court itself must be the judicial body

to establish the right that a defendant is asserting, *Dodd v. United States*, 545 U.S. 353, 357

(2005), and the Supreme Court itself has not recognized that § 924(c)(3)(B) is unconstitutionally

vague.  *See United States v. Taylor*, 2016 WL 4059359 (E.D. Va. July 28, 2016) (Ellis, J.)

(dismissing *Johnson* challenge to § 924(c) conviction as untimely and failing to satisfy

§ 2255(f)(3)); *cf. Gray v. United States*, No. 4:08-cr-25-RBS-FBS, at 6 (E.D. Va. July 25, 2016)

**J.A. 84**

(Smith, C.J.) (noting that defendant's *Johnson* challenge to § 924(c) conviction "is not timely pursuant to § 2255(f)(3)" and ordering defendant to respond because "his Motion will be dismissed as untimely, unless he can otherwise demonstrate that it was filed within the proper time period under 28 U.S.C. § 2255").

As explained below, a motion to dismiss is procedurally proper at this stage and does not require the government or the Court to address all defenses and the merits of defendants' claims. Because this motion addresses a widely applicable question of law—one that requires few details about a case and relies on information readily ascertainable from the docket—a motion like this one conserves the resources of the Court and the United States and presents no unfairness to defendants. Other defenses and merits arguments, such as whether defendants' federal offenses satisfy § 924(c)(3)(A), whether procedural default applies and can be overcome, whether defendants' claims satisfy § 2255(h)(2), and so on, are deferred for later briefing, if that becomes necessary.

## I.     *Johnson*'s holding

In *Johnson*, the Supreme Court "h[e]ld that imposing an increased sentence under the residual clause of the Armed Career Criminal Act," in 18 U.S.C. § 924(e)(2)(b)(ii), "violates the Constitution's guarantee of due process" because the ACCA's residual clause is unconstitutionally vague. 135 S. Ct. at 2563. In *Welch*, the Supreme Court held that *Johnson*'s invalidation of the residual clause—a provision that results in a mandatory minimum that is higher than the statutory maximum without the ACCA—is "a substantive decision and so has retroactive effect . . . in cases on collateral review." 136 S. Ct. at 1265. But, crucially, defendant is not challenging an ACCA sentence. Instead, he is seeking, in a § 2255 filed more than a year after his conviction became final, to extend both *Johnson* and *Welch* to a new, readily distinguishable context—§ 924(c)(3)(B). As explained next, however, a *Johnson* challenge to a

**J.A. 85**

§ 924(c) conviction cannot satisfy § 2255(f)(3), the only available provision to extend the statute of limitations.

**II.      *Johnson* challenges to § 924(c) convictions cannot satisfy the statute of limitations in § 2255(f)(3).**

Because defendant's conviction became final more than a year ago, he fails to satisfy the statute of limitations in 28 U.S.C. § 2255(f)(3)—the only available means for him to resurrect a timely challenge under § 2255 to his otherwise long-final conviction. Although defendants seeking to challenge ACCA sentences under *Johnson* had one year from the date that *Johnson* was decided to file habeas petitions raising *Johnson*, that one-year deadline does not govern all possible extensions of *Johnson.* Critically, the problem under § 2255(f)(3) is not that defendant is too *late* to obtain relief under *Johnson*; rather, defendant's problem is that he is—at best for him—*premature* in asserting rights that the Supreme Court has not yet recognized in extending *Johnson*. At present, the Supreme Court itself simply has not extended *Johnson* to invalidate 18 U.S.C. § 924(c)(3)(B) as unconstitutionally vague, and the Supreme Court *itself* must be the judicial body that makes that extension of the substantive right for defendant to satisfy § 2255(f)(3). This threshold legal issue bars relief at present.

Under § 2255(f)(3), a one-year statute of limitations runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 18 U.S.C. § 2255(f)(3). Thus, § 2255(f)(3) provides that when the Supreme Court "decides a case recognizing a new right, a federal prisoner seeking to assert *that right* will have one year from [the Supreme Court's] decision within which to file his § 2255 motion." *Dodd*, 545 U.S. at 358–59 (emphasis added). Critically, § 2255(f)(3) requires that the Supreme Court *itself* recognize the specific substantive right at issue. A defendant "has one year from the date

**J.A. 86**

on which the right he asserts was initially recognized *by this Court*." *Dodd*, 545 U.S. at 357 (emphasis added). Although the Fourth Circuit has held in line with other circuits "that § 2255(f)(3) does not require that the initial *retroactivity* question be decided in the affirmative *only* by the Supreme Court," *United States v. Thomas*, 627 F.3d 534, 536 (4th Cir. 2010) (emphasis added), by necessary implication—and as the plain language of § 2255(f)(3) requires—the Supreme Court itself must establish the particular *substantive right* at issue. This is significant. Because § 2255(f)(3) twice refers to rights that the "Supreme Court" has recognized, the references to the "Supreme Court" in § 2255(f)(3) necessarily must refer to a requirement that the Supreme Court be the court to recognize the particular substantive right being asserted.

Section 2255(f)(3) does refer to when a right was "initially" recognized, but that provision has a readily understandable role to play—namely, when the Supreme Court merely repeats in a later opinion its approval of a specific right that the Court has already recognized, that does not reopen the statute of limitations. *See, e.g.*, *In re Vassell*, 751 F.3d 267, 269 (4th Cir. 2014). For example, when the Supreme Court repeated its ruling in *Johnson* invalidating the ACCA's residual clause in *Welch* (or repeats that ruling about the ACCA in another future case), that new, later opinion does not restart the one-year limitation under § 2255(f)(3) in ACCA cases. If § 2255(f)(3) were read otherwise, the one-year limit would be meaningless and endless as the Supreme Court reaffirms or relies on its precedent over decades and beyond. *See, e.g.*, *United States v. McDonnell*, --- U.S. ---, 2016 WL 3461561, *18 (June 27, 2016) (citing *Johnson*). But at the same time, and equally important, the word "initially" in § 2255(f)(3) does not sow chaos and force district courts (and defendants) to forecast in the year following any new Supreme Court ruling every possible new application and extension that the just-announced opinion might

have in other legal contexts, where the new extension would possibly be retroactive.  Under § 2255(f)(3), district courts are not placed in the position of making determinations about uncertain extensions of new Supreme Court precedent across an enormous range of long-final cases.  Such an approach would tear the legal system apart.

In keeping with these points, § 2255(f)(3) divides rights finely, requires each to be itself recognized by the Supreme Court, and then requires each to be retroactive.  "Section 2255(f)(3) does not authorize [a lower court] to read between the lines of a prior opinion [by the Supreme Court] to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review."  *United States v. Mathur*, 685 F.3d 396, 401 (4th Cir. 2012).  The standards in § 2255(f)(3) create an orderly, rational process.  Courts reopen the statute of limitations for specific rights that the Supreme Court itself has newly recognized and do so for one year, but the Supreme Court must be the one to recognize the specific right at issue.

This system is both a restriction and a significant benefit for defendants.  Section 2255(f)(3) is a restriction because defendants whose convictions have been long final must wait for new, specific rulings to be accepted by the Supreme Court for their cases, but under § 2255(f)(3), defendants also need not—and may not—jump the gun.  Once a rule is extended, creating a "new rule," the statute of limitations in § 2255(f)(3) will begin to run upon the announcement of that new rule (assuming that new rule is retroactive).  This system confers significant benefits on the legal system.  A district court need not parse new Supreme Court opinions for other possible applications; district courts simply apply controlling holdings and wait to see if new extensions are later made.  And by requiring controlling Supreme Court precedent, Congress sought to ensure nationwide uniformity in the treatment of long-final convictions

**J.A. 88**

To determine whether the Supreme Court has issued a "new" constitutional ruling satisfying § 2255(f)(3), courts should use the new rule framework of *Teague v. Lane*, 489 U.S. 288, 301 (1989).  *See, e.g.*, *Dodd*, 545 U.S. at 359 (tying together § 2255(f)(3) and *Teague* retroactivity).  Under the *Teague* framework, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final," and "a holding is not so dictated . . . unless it would have been apparent to all reasonable jurists." *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (quoting *Teague*, 489 U.S. at 301; *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997)).  As *Teague* noted, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal government."  489 U.S. at 301.  Invalidating a new, distinguishable federal statute as unconstitutional "breaks new ground" and "imposes a new obligation" on the federal government, and it is not "apparent to all reasonable jurists" that the Supreme Court has already invalidated § 924(c)(3)(B).

For example, the Supreme Court's ruling invalidating the sentencing guidelines in *United States v. Booker*, 543 U.S. 220 (2005), was properly deemed a "new" rule for purposes of analyzing rights on collateral review—even though *Booker* followed from earlier cases such as *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). *Booker* was a "new rule" because the extension of *Apprendi* to the guidelines was not "apparent to all reasonable jurists."  *United States v. Morris*, 429 F.3d 65, 70 (4th Cir. 2005) (*Booker* was new rule) (quoting *Beard v. Banks*, 542 U.S. 406, 413 (2004)).  And *Booker* was universally deemed a new rule even though lower courts were predicting the invalidation of the guidelines in advance of the Supreme Court's ruling in *Booker*, and in some cases, courts were even imposing alternative sentences.  A lower court's prediction about a ruling the Supreme Court might later

**J.A. 89**

make, including even a reasonable prediction, fails to establish that the later ruling is not a new rule.

Under the *Teague* framework, courts cannot say that all reasonable jurists would recognize that *Johnson* should be extended to § 924(c)(3)(B). The Fourth Circuit sitting en banc has already very recently stated, in assessing a *Johnson* challenge to § 924(c) under the plain-error standard, that it is unclear whether *Johnson* should be extended from the ACCA's residual clause to § 924(c)(3)(B). *United States v. Graham*, --- F.3d ---, 2016 WL 3068018, *1 n.1 (4th Cir. May 31, 2016) (en banc). No judge of the Fourth Circuit disagreed on that point. *Cf. United States v. Fuertes*, 805 F.3d 485, 499 n.5 (4th Cir. 2015) (Although "the Supreme Court held unconstitutionally vague the [ACCA residual clause], . . . the [Supreme] Court had no occasion to review the . . . residual clause" of § 924(c)(3)(B).). Manifestly, the Supreme Court itself has not already decided the invalidity of § 924(c)(3)(B). Indeed, the only two courts of appeals to rule squarely on § 924(c)(3)(B)'s validity have held that *Johnson* does not invalidate § 924(c)(3)(B). *See United States v. Prickett*, --- F.3d ---, 2016 WL 4010515 (8th Cir. July 27, 2016); *United States v. Taylor*, 814 F.3d 340, 375–76 (6th Cir. 2016).

To establish that he satisfies § 2255(f)(3), a defendant must contend that no reasonable jurist could have reached the result that the Sixth Circuit did in *Taylor* or the Eighth Circuit did in *Prickett*. A defendant would likewise have to maintain that the en banc Fourth Circuit was unreasonable when the judges failed to recognize that *Johnson* already invalidates § 924(c)(3)(B). *Graham*, 2016 WL 3068018 at *1 n.1 (citing *Taylor*). A defendant would also have to maintain that no reasonable jurist could conclude that § 16(b) is valid, even though the Fifth Circuit agreed to rehear that issue en banc after a panel held by a divided vote that *Johnson* invalidates § 16(b). *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir.), *reh'g en banc*

**J.A. 90**

*granted*, 815 F.3d 189 (2016).  True, two circuits held § 16(b) to be invalid earlier this year, *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (same), *gov. cert. petition filed*, No. 15-1498 (June 10, 2016), but a third found § 16(b) invalid only after expressly distinguishing § 924(c)(3)(B), *Shuti v. Lynch*, --- F.3d ---, 2016 WL 3632539 (6th Cir. July 7, 2016).  As the Fifth Circuit recently observed, "[t]his disagreement among lower court judges demonstrates that the Supreme Court has not taken a position on whether *Johnson* applies to section 924(c)(3)(B)."  *In re Fields*, --- F.3d ---, 2016 WL 3383460, *1 (5th Cir. June 17, 2016).

Moreover, under the defendant's position, even though § 16(b) is purportedly so obviously unconstitutional after *Johnson* that no reasonable jurist could conclude otherwise, the Supreme Court in a post-*Johnson* opinion nevertheless did not treat half of § 16 as unconstitutional.  *Torres v. Lynch*, 136 S. Ct. 1619, 1629–30, 1637 & n.1 (2016).  And on defendant's view, the Supreme Court must have been unreasonable when it denied certiorari post-*Johnson* for challenges to § 924(c)(3)(B), rather than at least granting, vacating, and remanding in light of *Johnson*.  *Santana v. United States*, 136 S. Ct. 2007 (2016).  Although the Supreme Court's rulings granting, vacating, and remanding in light of a new Supreme Court opinion are not determinations on the merits and merely reflect a possible effect from a new Supreme Court ruling, *see, e.g.*, *Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001), the Supreme Court has not granted, vacated, and remanded in § 924(c) cases in light of *Johnson*.

Indeed, the Supreme Court must have been unreasonable in *Johnson* and *Welch* in repeatedly emphasizing that the ruling in *Johnson* should not be understood to raise doubts about (much less *invalidate*) other laws using similar risk-based language.  *See Johnson*, 135 S. Ct. at 2561 ("The government and the dissent next point out that dozens of federal and state criminal

**J.A. 91**

laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' suggesting that to hold the [ACCA] residual clause unconstitutional is to place these provisions in constitutional doubt. . . . Not at all."); *Welch*, 136 S. Ct. at 1262 ("The Court's analysis in *Johnson* thus cast no doubt on the many laws that "require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*." (quoting *Johnson*, 135 S. Ct. at 2561)). In short, to return to the overarching requirement of § 2255(f)(3), the Supreme Court has not already invalidated § 16(b)—much less § 924(c)(3)(B), which itself can be distinguished from both the residual clause of the ACCA and § 16(b).

Defendants have requested that district courts hold *Johnson* § 2255 motions challenging § 924(c) convictions until the Fourth Circuit addresses whether *Johnson* should be extended to invalidate § 924(c)(3)(B). But that request reveals two flaws. First, by suggesting that it is necessary to wait for a Fourth Circuit ruling, defendants have undercut their argument that the Supreme Court has already decided that § 924(c)(3)(B) is unconstitutionally vague. Second, such a stay would not aid defendants, for even a Fourth Circuit ruling invalidating § 924(c)(3)(B) would not suffice to satisfy § 2255(f)(3), which requires a Supreme Court ruling. *Cf. In re Embry*, --- F.3d ---, 2016 WL 4056056 (6th Cir. July 19, 2016) (concluding that the "Supreme Court has not yet decided whether" the Sixth Circuit's existing opinion invalidating the residual clause of the career-offender guideline under *Johnson* "is correct" and indicating, without deciding, that if the Supreme Court extends *Johnson* to the guidelines, that would be a "new" rule under § 2255(f)(3)).

Again, in analyzing the framework under § 2255(f)(3), *Booker* provides a useful analogy. Although *Booker*'s holding invalidating the mandatory guidelines was not later deemed retroactive, as *Morris* and countless cases held, the Supreme Court's opinion in *Apprendi* did not

and should not have touched off a stampede by all federal inmates to anticipate the possible extension of *Apprendi* to the guidelines and a possible determination that *Booker* would be deemed retroactive. The statutory scheme for collateral review should be—and is—more orderly than that, and requires precisely targeted "new" rights to fit within § 2255(f)(3) and then be made retroactive. Section 2255(f)(3) fits within "the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). And again, lower-court precedent does not suffice to meet § 2255(f)(3) for establishing extensions of substantive rights. *Cf. United States v. Whiteside*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) ("Whiteside's view would render the statute of limitations virtually without limits. Notably, Whiteside does not even attempt to argue that his claim [based on a new court of appeals opinion] satisfies the requirements specified in [2255](f)(3).").

The above authority shows that defendants seeking to challenge § 924(c) convictions under *Johnson* are premature. If the Supreme Court later invalidates § 924(c)(3)(B) and that ruling is retroactive, at that point, defendants will have one year in which to file a § 2255 petition. But at present, district courts should not attempt to make predictions about questions that the Supreme Court itself has not resolved.[1]

---

[1] In a recent case, *In re Hubbard*, --- F.3d ----, 2016 WL 3181417 (4th Cir. June 8, 2016), the Fourth Circuit, interpreting 28 U.S.C. § 2255(h)(2), authorized a petitioner to file a successive *Johnson* petition challenging the guidelines. *Hubbard* did not address § 2255(f)(3), an affirmative defense, but rather simply made a *prima facie* determination that the defendant had made "a sufficient showing of possible merit to warrant a fuller exploration by the district court" under § 2255(h)(2). *Hubbard*, 2016 WL 3181417, at *3 (quoting *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003)). In authorizing a successive petition, the Fourth Circuit merely takes "a cursory glance at the merits" of whether a defendant is entitled to relief, satisfying § 2255(h)(2). *Id.* at *4 (quoting *Williams*, 330 F.3d at 282). But the ultimate determination "is for the district court to determine," including an evaluation of the government's defenses. *Id.* It follows *a fortiori* that the Fourth Circuit did not decide anything about § 2255(f)(3), a topic *Hubbard* did

**J.A. 93**

Further reinforcing the above points is the Supreme Court's recent decision to grant certiorari to consider whether *Johnson* extends to the sentencing guidelines and is retroactive in that context.  Notably, the Supreme Court declined to adopt the defendant's request in that case to rule summarily in his favor in light of *Johnson* and *Welch*.  *Beckles v. United States*, --- S. Ct. ---, 2016 WL 1029080 (June 27, 2016).  More specifically, the Court granted certiorari in *Beckles* to address whether *Johnson* invalidates the residual clause of the career-offender guidelines, whether *Johnson* is retroactive in a guidelines case on collateral review, and whether possession of a sawed-off shotgun, an offense identified in then-applicable guidelines commentary, counts as a crime of violence.  The Supreme Court's granting of certiorari in *Beckles*, rather than summarily reversing, undercuts that the Supreme Court itself has already decided both the extension of *Johnson* into new areas of law and the retroactivity of that extension.

**III.     The government may file a motion to dismiss a § 2255 without asserting all defenses and without waiving other defenses and arguments on the merits.**

Motions to dismiss are an accepted part of habeas litigation.  The Supreme Court has noted the practice in an appeal from the Fourth Circuit and the Eastern District of Virginia, and judges in this district have continued to permit the motions.  *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 483 (1986) (noting that case came to the Supreme Court from the Eastern District of Virginia after motion to dismiss habeas petition, asserting procedural default and other defenses).  Rule 5 of the Rules Governing Section 2255 Proceedings for the United States District Courts addresses the government's answer to a § 2255 motion.  The 2004 Amendments to Rule 5 note that the rule does not expressly address motions to dismiss but was not intended to preclude that

not even mention and a defense that the government has not had an opportunity to raise and litigate before the Fourth Circuit.  And the substantive question whether *Johnson* invalidated the guidelines is presently before the Supreme Court.

well-established practice. "The revised rule does not address the practice in some districts, where the respondent files a pre-answer motion to dismiss the motion. But revised Rule 4(b) contemplates that practice and has been changed to reflect the view that if the court does not dismiss the motion, it may require (or permit) the respondent to file a motion." This practice applies generally in habeas litigation, and motions to dismiss are permitted both for habeas petitions under 28 U.S.C. § 2254 and § 2255. "[R]esponding to a habeas petition with a motion to dismiss is common practice." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989).

Moreover, the government may choose to raise a few threshold defenses in a motion to dismiss that are readily adjudicated by a district court, without waiving other defenses that might be asserted in a later answer to the § 2255 motion. *See, e.g.*, *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005); *United States v. Valdez*, 195 F.3d 544, 548 (9th Cir. 1999), abrogated on other grounds by*, Dodd v. United States*, 545 U.S. 353 (2005)); Brian R. Means, Federal Habeas Manual, § 8:24 (2016). Such an approach can preserve the resources of the Court and the government—and does so here. The practice of permitting some defenses to be raised in a motion to dismiss without waiving others is also consistent with civil rules of procedure and Rule 12 of the Rules Governing Section 2255 Proceedings because a motion to dismiss does not constitute the government's response to the habeas petition. *Cf. Domino Sugar Corp. v. Sugar Workers*, 10 F.3d 1064, 1068 n.1 (4th Cir. 1993) ("A motion to dismiss is not a responsive pleading for purposes of Rule 15(a)."); *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) (same). Hence, the government does not waive procedural default, *Teague* defenses, the merits of the limitations in § 2255(h)(2), other defenses, or merits arguments through this more limited motion to dismiss.

## ROSEBORO NOTICE

Pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K), defendant is notified and warned of the following:

1.      The government has filed a motion to dismiss.  The Court possesses the authority to dismiss this action on the basis of the government's motion to dismiss if defendant does not file a response.

2.      Defendant is entitled to file a response opposing the government's motion.  Any such response must be filed within 30 days of the date on which the government's motion to dismiss was filed.

3.      The government's motion to dismiss alleges that defendant's § 2255 is legally deficient; the government's motion does not challenge any allegations of fact offered by defendant nor is it based on any affidavits or other counter-allegations of fact.  Nonetheless, if defendant disagrees with any facts stated by the government, defendant must identify all facts with which defendant disagrees and must set forth defendant's version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that is signed under penalty of perjury).

4.      Defendant is entitled to file a legal brief in opposition to the one filed by the government.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY


By: _____//s//_____
Olivia L. Norman
V.S.B. No. 31418
Assistant United States Attorney
Office of the United States Attorney

**J.A. 96**

919 E. Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819 5475
(804) 771 2316 (facsimile)
Olivia.L.Norman@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of December, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to Counsel of Record.

_____//s//_____
Olivia L. Norman
Assistant United States Attorney
Office of the United States Attorney
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819 5475
(804) 771 2316 (facsimile)
Olivia.L.Norman@usdoj.gov

**J.A. 97**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JUSTIN EUGENE TAYLOR,
  *Movant,*

            Civil No. 3:16CV508
  v.            Crim. No. 3:08CR326

UNITED STATES OF AMERICA,
  *Respondent.*

### PETITIONER'S RESPONSE TO GOVERNMENT'S MOTION TO DISMISS

COMES NOW the petitioner, Justin Eugene Taylor, by counsel, and responds to the government's motion to dismiss (Doc. 81). As explained herein, Mr. Taylor opposes the government's motion to dismiss his claim challenging his § 924(c) conviction and respectfully requests that the Court deny the government's motion to dismiss. Mr. Taylor renews his request that his § 924(c) challenge be held in abeyance pending a decision from the United States Court of Appeals for the Fourth Circuit about whether *Johnson* applies to § 924(c).

Moreover, Mr. Taylor respectfully contends that his § 924(c) challenge should be held in abeyance pending a decision from the Supreme Court in *Lynch v. Dimaya*, No. 15-1498. The question presented in *Dimaya* is whether the Court's holding in *Johnson* invalidates the residual clause of 18 U.S.C. § 16(b), which is identical to the residual clause in 18 U.S.C. § 924(c)(3)(B). The same arguments offered by the government in response to § 2255 motions raising guidelines challenges based on *Johnson* pending a ruling in *Beckles* would justify a stay to the § 924(c) challenge pending a ruling in *Dimaya*. In fact, this Court has already begun staying cases such as Mr. Taylor's pending a ruling in *Dimaya*. *See United States v. Dickerson*, No. 3:09cr283-3, 3:16cv443, Doc. 78 (E.D. Va. Oct. 31, 2016) (holding in abeyance petitioner's § 2255 motion challenging his § 924(c) conviction pending a ruling in *Dimaya*); *United States v. Edwards*, No.

**J.A. 98**

3:03cr204-3, 3:16cv495, Doc. 127 (E.D. Va. Nov. 8, 2016) (same); *United States v. Brewer*, No. 3:14cr82-1, 3:16cv478, Doc. 43 (E.D. Va. Nov. 8, 2016) (same); *United States v. Lyons*, No. 3:11cr274, 3:16cv385, Doc. 47 (E.D. Va. Nov. 8, 2016) (holding in abeyance petitioner's § 2255 motion challenging his § 924(c) conviction and career offender designation pending rulings in *Dimaya* and *Beckles*); *United States v. Kanard*, No. 3:04cr147, 3:16cv459, Doc. 51 (E.D. Va. Oct. 31, 2016) (same). Therefore, a stay is warranted in Mr. Taylor's case as well.

## ARGUMENT

### I.     The Court should deny the government's motion to dismiss Mr. Taylor's challenge to his § 924(c) conviction.

In moving to dismiss Mr. Taylor's challenge to his § 924(c) conviction, the government contends that Mr. Taylor's "problem is that he is . . . *premature* in asserting rights that the Supreme Court has not yet recognized in extending *Johnson*."  (Doc. 81 at 3) (emphasis in original).   Under the government's theory, to bring a successful challenge under 28 U.S.C. §2255, the Supreme Court must specifically hold that § 924(c)(3)(B) is unconstitutional under *Johnson*.  This is because *Johnson*'s application to § 924(c) is not "'apparent to all reasonable jurists.'"  (Doc. 81 at 6 (quoting *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013))).  The government misconstrues basic tenets of law.

### A.     Mr. Taylor's motion is timely.

Mr. Taylor's motion is timely under 28 U.S.C. § 2255(f)(3) (providing limitation period of one-year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review") because the invalidation of § 924(c)(3)(B) as

**J.A. 99**

unconstitutionally vague would not be a "new rule," but rather the application of *Johnson* to a particular factual setting.

"[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction becomes final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (emphasis in original). "[I]t is axiomatic that a new right cannot be 'initially recognized' when the Court has merely applied its precedent to a particular factual setting." *United States v. Hopkins*, 268 F.3d 222, 225 (4th Cir. 2001) (quoting *Haugh v. Booker*, 210 F.3d 1147, 1149 (10th Cir. 2000)). *See also Graham v. Collins*, 506 U.S. 461, 506 (1993) (Souter, J., dissenting) ("One general rule that has emerged under *Teague* is that application of existing precedent in a new factual setting will not amount to announcing a new rule.").

For example, in *Penry v. Lynaugh*, 492 U.S. 302, 315 (1989) (overruled on other grounds by *Atkins v. Virginia*, 536 U.S. 304 (2002)), the petitioner sought "a rule that when such mitigating evidence is presented, Texas juries must, upon request, be given jury instructions that make it possible for them to give effect to that mitigating evidence in determining whether a defendant should be sentenced to death." "One would think this was an easy case; granting Penry the relief he sought seemingly would have required the creation of a new rule insofar as it would have repudiated prior Fifth Circuit decisions." *Turner v. Williams*, 35 F.3d 872, 884 (4th Cir. 1994) (overruled by *O'Dell v. Netherland*, 95 F.3d 1214, 1223-24 (4th Cir. 1996) (en banc)). The Supreme Court, however, held that the rule was not a "new rule" under *Teague*. The court had previously addressed the constitutionality of Texas's death penalty statute in *Jurek v. Texas*, 428 U.S. 262, 316 (1976) (holding that Texas's "sentencing scheme satisfied the Eighth Amendment on the assurance that the Texas Court of Criminal Appeals would interpret the

question concerning future dangerousness so as to allow the jury to consider whatever mitigating circumstances a defendant may be able to show, including a defendant's prior criminal record, age, and mental or emotional state"), and "[t]he *Jurek* rule created a standard which the Court simply applied to the facts of Penry's case, *i.e.*, to his mitigating evidence." *Turner*, 35 F.3d at 884. In the same way, *Johnson*'s application to § 924(c) would not be a new rule.

*Johnson*'s rule is that provisions like the Armed Career Criminal Act's (ACCA's) residual clause fail because applying a risk standard "under the categorical approach require[s] courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016). As a result, the "'indeterminacy of the wide-ranging inquiry' . . . [is] more unpredictable and arbitrary in its application than the Constitution allows." *Id.* (quoting *Johnson*, 135 S. Ct. at 2557).

Mr. Taylor contends that *Johnson* invalidates § 924(c)(3)(B) for the same reason that the ACCA's residual clause is unconstitutional. Put simply, the application of *Johnson* to § 924(c) would extend the rule from applying to the language, "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), to the almost identical language of, "involves a substantial risk that physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(b). There is no way that such a decision could be reached without concluding that the result was dictated by *Johnson*.

The Supreme Court case that the government insists petitioners must rely on would simply be the application of *Johnson* to the new factual setting of § 924(c)(3)(B), and therefore would not be a "new rule."

**J.A. 101**

**B.      It is objectively unreasonable not to apply *Johnson* to 18 U.S.C. § 924(c).**

*Johnson*'s application to § 924(c) also would not create a "new rule" because concluding otherwise would be objectively unreasonable.

A rule is new unless it would be "objectively unreasonable" under existing law "for a judge to reach a contrary result." *O'Dell*, 95 F.3d at 1223-24. Disagreement amongst courts, however, does not mean that the correct result is not apparent to a reasonable jurist. "As the Supreme Court's repeated analogy to the qualified immunity analysis confirms, the new rule analysis fundamentally asks the same question as does the qualified immunity analysis – whether a contrary conclusion would have been *objectively unreasonable*." *Id.* at 1223 (emphasis in original). "[T]he mere existence of conflicting authority does not necessarily mean a rule is new." *Wright v. West*, 505 U.S. 277, 304 (1992) (O'Connor, J., concurring in judgment) (citing *Stringer v. Black*, 503 U.S. 222, 237 (1992)); *see also Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 399 (4th Cir. 2014) ("[A]lthough judicial disagreement about the existence of a right is certainly a factor we consider in whether a right has been clearly established, disagreement alone does not defeat a plaintiff's claim in every instance. The Supreme Court has never sanctioned such a rule, and neither have we.") (citations omitted); *Henry v. Purnell*, 652 F.3d 524, 536-37 (4th Cir. 2011) (en banc) (rejecting qualified-immunity defense over three-judge dissent).

Panels of the Fifth, Seventh, and Ninth Circuits have all concluded that the language in 18 U.S.C. § 16(b) is unconstitutional under *Johnson*. *See United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016), *reh'g en banc granted*, 2016 WL 766980 (Feb. 26, 2016); *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120

**J.A. 102**

(9th Cir. 2015). *But see United States v. Taylor*, 824 F.3d 340, 375 (6th Cir. 2016) (declining to apply *Johnson* to § 924(c)); *United States v. Le*, No. 1:03cr48, Dkt. 688 (E.D. Va. Jul. 25, 2016) (Ellis, J.) (same). The language in § 16(b) is identical to § 924(c)(3)(B). *See In Re: Hubbard*, 825 F.3d 225, 230 n. 3 (4th Cir. 2016) (analyzing *Johnson*'s application and noting "that the language of § 16(b) is identical to that in § 924(c)(3)(B), and we have previously treated precedent respecting one as controlling analysis of other"). Simply because the Solicitor General is defending the constitutionality of § 16(b) and the Supreme Court has not yet taken a position on whether *Johnson* invalidates §924(c)(3)(B) does not mean that the correct result is not apparent to a reasonable jurist.

The government's example of *United States v. Booker*, 543 U.S. 220 (2005) is also telling. In *United States v. Morris*, the Fourth Circuit concluded that *Booker* announced a new rule because the result was not apparent to all jurists, as shown by the dissenters rejecting that *Apprendi v. New Jersey*, 530 U.S. 466 (2000)*,* and *Blakely v. Washington*, 542 U.S. 296 (2004), applied to the guidelines. 429 F.3d 65, 70-71 (4th Cir. 2005). The dissenters in *Booker*, however, contended that it was unclear that *Apprendi* and *Blakely* applied to the guidelines because, "the Federal Guidelines are not statutes." *Booker*, 543 U.S. at 331 (2005) (Breyer, J., dissenting). "The rules [the guidelines] set forth are *administrative*, not statutory, in nature." *Id.* (emphasis in original). And, "the sentencing statutes at issue in *Blakely* imposed absolute constraints on a judge's sentencing discretion, while the federal [guidelines] do not." *Id.* at 333. In contrast, *Johnson* invalidated a statute, § 924(e)(2)(B), and its application to § 924(c)(3)(B) would also invalidate a statute.

**J.A. 103**

Because concluding that *Johnson* does not invalidate § 924(c)(3)(B) is objectively unreasonable, such an application would not be a new rule.

## CONCLUSION

For the reasons stated above, Mr. Taylor respectfully requests that the Court deny the government's motion to dismiss his challenge to his § 924(c) conviction. Mr. Taylor further requests that the Court hold Mr. Taylor's challenge to his § 924(c) conviction in abeyance pending a ruling from the Supreme Court in *Dimaya*.

Respectfully submitted,

**JUSTIN EUGENE TAYLOR**

By: _____/s/_____
                    Counsel
Paul E. Shelton, Jr.
Virginia State Bar Number: 88550
Office of the Federal Public Defender
701 East Broad Street, Suite 3600
Richmond, VA 23219
Telephone: (804) 565-0890
Fax: (804) 648-5033
paul_shelton@fd.org

**J.A. 104**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2016, I electronically filed the foregoing with the

Clerk of the Court using CM/ECF system, which will send a notification of such filing (NEF) to:

> Olivia L. Norman
> Office of the United States Attorney
> 919 E. Main Street, Suite 1900
> Richmond, VA 23219
> olivia.l.norman@usdoj.gov

By:        /s/

Counsel

Paul E. Shelton, Jr.
Virginia State Bar Number: 88550
Office of the Federal Public Defender
701 East Broad Street, Suite 3600
Richmond, VA 23219
Telephone: (804) 565-0890
Fax: (804) 648-5033
paul_shelton@fd.org

**J.A. 105**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                     Criminal No. **3:08CR326**

**JUSTIN EUGENE TAYLOR,**

Petitioner.

## MEMORANDUM ORDER

Justin Eugene Taylor, a federal inmate proceeding with counsel, brings this successive motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("Successive § 2255 Motion," ECF No. 76). Taylor contends that his convictions and sentences are invalid under *Johnson v. United States*, 135 S. Ct. 2551 (2015). The Government filed a Motion to Dismiss the Successive § 2255 Motion contending that the relevant statute of limitations bars relief. (ECF No. 81.) As discussed below, the Court orders further briefing following the recent decision in *United States v Simms*, 914 F.3d 229 (4th Cir. 2019).

### I. Procedural History

On February 4, 2009, a grand jury charged Taylor with: conspiracy to possess with intent to distribute marijuana (Count One); attempted distribution of marijuana (Count Two); possession of a firearm in furtherance of a drug trafficking crime (Count Three); use and carry of a firearm during and in relation to a drug trafficking crime, to wit, attempting to distribute marijuana as charged in Count Two (Count Four); conspiracy to interfere with commerce by threats and violence ("Hobbs Act robbery") (Count Five); one additional counts of Hobbs Act robbery (Count Six); and, use and carry of a firearm in furtherance of a felony crime of violence, to wit, "conspiracy to interfere with commerce by armed robbery as charged in Count Five and Interference with Commerce by Threats and Force as charged in Count Six," in violation of 18

**J.A. 106**

U.S.C. § 924(c) (Count Seven). (Sec. Super. Indictment 1–4, ECF No. 17.) On February 13, 2009, Taylor pled guilty to Counts Five and Seven of the Second Superseding Indictment. (Plea Agreement ¶ 1, ECF No. 31.) The Government agreed to dismiss the other five counts. (*Id.* ¶ 12.) On May 14, 2009, the Court entered judgment against Taylor and sentenced him to 240 months of imprisonment on Count Five, and 120 months of imprisonment on Count Seven to be served consecutively. (J. 3, ECF No. 44 (as paginated by CM/ECF).)

Taylor, through counsel, filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit. (ECF No. 42.) The Fourth Circuit dismissed the appeal. (ECF Nos. 53, 54.)

By Memorandum Opinion and Order entered on July 7, 2015, the Court denied Taylor's first § 2255 motion. (ECF Nos. 69, 70.) On June 24, 2016, the Fourth Circuit granted Taylor permission to file a successive § 2255 motion based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). (ECF No. 74.) On June 27, 2016, Taylor filed the instant Successive § 2255 Motion. (ECF No. 76.) Thereafter, the Government moved to dismiss, arguing that the Successive § 2255 Motion is barred by the relevant statute of limitations. (ECF No. 81.)

## II. Impact of *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019)

Taylor asserts that the right recognized in *Johnson* affords him relief. In *Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act [("ACCA")] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. The *Johnson* Court declared unconstitutionally vague the residual clause in the ACCA's definition of prior "violent felony," 18 U.S.C. § 924(e)(2)(B)(ii), because the clause encompassed "conduct that presents a serious potential risk of physical injury to another," which had defied clear definition. *Id.* at 2557–58 (citation omitted). Subsequently, in *Welch v. United*

2

**J.A. 107**

*States*, 136 S. Ct. 1257 (2016), the Supreme Court held that "*Johnson* announced a substantive rule [of law] that has retroactive effect in cases on collateral review." *Id.* at 1268.

After *Johnson*, the United States can demonstrate that an underlying offense constitutes a crime of violence if it establishes that the offense is a felony and satisfies either the force clause or the residual clause contained in § 924(c)(3):

**(A)** [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "Force Clause")], or

**(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "Residual Clause")].

*Id.* § 924(c)(3).

The United States Court of Appeals for the Fourth Circuit's recent decision in *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc), may undermine the Government's contention that *Johnson* does not entitle Taylor to relief. In *Simms*, the defendant pled guilty to conspiracy to commit Hobbs Act robbery and to brandishing a firearm during and in relation to a "crime of violence," but later challenged his brandishing conviction on the theory that Hobbs Act *conspiracy* could not be considered a "crime of violence" under 18 U.S.C. § 924(c)(3). *Id.* at 232–33. Initially, the parties and the Fourth Circuit agreed that,

conspiracy to commit Hobbs Act robbery—does not categorically qualify as a crime of violence under the [Force Clause], as the United States now concedes. This is so because to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force.

*Id.* at 233–34 (citations to the parties' material omitted). Thereafter, the Fourth Circuit held the Residual Clause of § 924(c) void for vagueness. *Id.* at 236.

Because Taylor's § 924(c) conviction is predicated on *both* "conspiracy to interfere with commerce by armed robbery as charged in Count Five and Interference with Commerce by

3

**J.A. 108**

Threats and Force as charged in Count Six," in violation of 18 U.S.C. § 924(c), (Sec. Super. Indictment 1–4), the Court requests further briefing on *Simms*'s application to Taylor's § 924(c) conviction. *See, e.g., United States v. Vann*, 660 F.3d 771, 771–777 (4th Cir. 2011).

Accordingly, it is ORDERED that:

1.      Within fourteen (14) days of the date of entry hereof, the Government shall file a further response to the § 2255 Motion and address the impact of the *Simms* case.

2.      Taylor shall have eleven (11) days thereafter to file any further reply.

The Clerk is DIRECTED to send a copy of this Memorandum Order to counsel of record.

It is so ORDERED.

M. Hannah Lauck
United States District Judge

Date:      MAY - 6 2019
Richmond, Virginia

4

**J.A. 109**

Case 3:08-cr-00326-MHL-RCY Document 88 Filed 05/28/19 Page 1 of 2 PageID# 783

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

**UNITED STATES OF AMERICA**

v.                                                                      Criminal No. **3:08CR326**

**JUSTIN EUGENE TAYLOR,**

   Petitioner.

## <u>MEMORANDUM ORDER</u>

Justin Eugene Taylor, a federal inmate proceeding with counsel brings this successive motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("Successive § 2255 Motion," ECF No. 76). Taylor contends that, his convictions and sentences are invalid under *Johnson v. United States*, 135 S. Ct. 2551 (2015). By Memorandum Order entered on May 6, 2019, the Court directed the Government to file further briefing on whether the United States Court of Appeals for the Fourth Circuit's recent decision in *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc), undermines the Government's contention that Taylor is not entitled to relief. The Government has responded and has filed a Motion to Stay (ECF No. 87) pending the outcome of *United States v. Davis*, 139 S. Ct. 782 (2019), a potentially dispositive case currently before the United States Supreme Court.

In light of the foregoing circumstances, the Motion to Stay the Case (ECF No. 87) is GRANTED. Within fifteen (15) days after the Supreme Court decides *Davis*, the Government

**J.A. 110**

must file further briefing on the impact of both *Davis* and *Simms*. Any response by Taylor is due fifteen (15) days thereafter.

The Clerk is DIRECTED to send a copy of this Memorandum Order to counsel of record.

It is so ORDERED.

/s/

M. Hannah Lauck
United States District Judge

Date: **MAY 2 8 2019**
Richmond, Virginia

2

**J.A. 111**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 3:08-cr-326 |
| JUSTIN EUGENE TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM
ON *DAVIS v. UNITED STATES***

This Court ordered the United States to file a memorandum expressing its views on the

merits of this case after the U.S. Supreme Court's decision in *United States v. Davis*, No. 18-431,

— S. Ct. —, 2019 WL 2570626 (June 24, 2019), which held that the residual clause in 18 U.S.C.

§ 924(c)(3)(B) was unconstitutionally vague.

On February 13, 2009, defendant pleaded guilty conspiracy to commit a Hobbs Act rob-

bery in violation of 18 U.S.C. § 1951 (Count Five of the Second Superseding Indictment) and

use and carry a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §

924(c) (Count Seven of the Second Superseding Indictment).  Defendant filed his motion under

28 U.S.C. § 2255 on June 27, 2016, arguing that his § 924(c) was no longer constitutionally valid

and asking the Court to hold the motion in abeyance. The Court subsequently ordered the gov-

ernment to respond and on December 2, 2016, the government filed a motion to dismiss the 2255

motion.  The Court subsequently stayed these proceedings pending the Supreme Court's decision

in *Davis*.

**J.A. 112**

**FACTUAL BACKGROUND**

On February 4, 2009, the Grand Jury sitting in the Eastern District of Virginia returned a second superseding indictment against the defendant, who was the sole defendant in this case. Relevant to this motion, Count Five of the Second Superseding Indictment charged:

> On or about August 14, 2003, in the Eastern district of Virginia and within the jurisdiction of this Court, JUSTIN EUGENE TAY-LOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly and unlaw-fully conspire with another to obstruct, delay, and affect commerce by robbery, to wit: by robbery at gun-point of an individual of United States Currency, which was intended to be used for, and during the course of the individual's attempted purchase of mariju-ana, which resulted in the killing of Martin Silvester.
>
> (In violation of Title 18, United States Code, Section 1951).

Count Six of the Second Superseding Indictment charged:

> On or about August 14, 2003, in the Eastern district of Virginia and within the jurisdiction of this Court, JUSTIN EUGENE TAY-LOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly and unlaw-fully obstruct, delay, and affect commerce by attempting robbery, and did aid and abet the same, to wit: by attempting and aiding and abetting another to attempt to rob at gun-point of an individual of United States Currency, which was intended to be used for, and

**J.A. 113**

during the course of the individual's attempted purchase of mariju-

ana, which resulted in the killing of Martin Silvester.

(In violation of Title 18, United States Code, Sections 2 and 1951).

Count Seven of the Second Superseding Indictment charged:

On or about August 14, 2003, in the Eastern district of Virginia

and within the jurisdiction of this Court, JUSTIN EUGENE TAY-

LOR, a.k.a. "Mookie," a.k.a. "Mook," did knowingly and unlaw-

fully use and carry a firearm during and in relation to a felony

crime of violence, to wit:  conspiracy to interfere with commerce

by armed robbery as charged in Count Five and Interference with

Commerce by Threats and Force as charged in Count Six.

(In violation of Title 18, United States Code, Section 924(c)).

On February 13, 2009, defendant pleaded guilty to Counts Five and Seven, pursuant to a written plea agreement.   In addition to the standard plea agreement terms, the parties agreed in the plea agreement that the cross-reference in U.S.S.G. § 2B3.1(c) applied in this case.[1]  Plea Agreement, ECF No. 31, ¶ 5. Defendant also agreed that he was pleading guilty because he was in fact guilty of the charged offenses and that the facts set forth in the statement of facts estab-lished his guilt of the offenses charged beyond a reasonable doubt.  Plea Agreement, ECF No. 31, ¶ 3.

---

[1] Section 2B3.1(c) provided that if a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime ju-risdiction of the United States, apply §2A1.1 (First Degree Murder).

The undisputed facts of this case are contained in the Statement of Facts (ECF No. 32) signed by the defendant under oath and offered in support of defendant's guilty plea.  The statement of facts reads as follows:

The parties stipulate that the allegations in Counts Five and Seven of the pending Second Superseding Indictment ***and*** the following facts are true and correct and that ***had the matter gone to trial the United States could have proven each of them beyond a reasonable doubt***.

1.  Starting before January 1, 2002, and continuing through December 14, 2003, and thereafter, JUSTIN EUGENE TAYLOR conspired with others to distribute and possess with the intent to distribute marijuana.  In furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others, known and unknown, would obtain wholesale quantities of marijuana and distribute the marijuana to coconspirators for redistribution.  Also in furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others would arrange wholesale marijuana transactions and, rather than complete the transaction, would take the money from the customer, intentionally fail to distribute the marijuana to the customer, and use the money to finance their own drug trafficking business.

2.  Prior to August 14, 2003, JUSTIN EUGENE TAYLOR met Martin Sylvester and Jonathan Hartzell.  During that meeting, JUSTIN EUGENE TAYLOR discussed his ability to supply Martin Sylvester with marijuana for redistribution and exchanged cell phone numbers with Sylvester.

**J.A. 115**

3. On August 14, 2003, JUSTIN EUGENE TAYLOR arranged to meet Martin Sylvester for the purpose of distributing marijuana to Sylvester so that Sylvester could redistribute the marijuana to others. Per their arrangements, JUSTIN EUGENE TAYLOR met Martin Sylvester and Jonathan Hartzell at the residence of a mutual acquaintance. JUSTIN EUGENE TAYLOR was driven in his car to the residence by his Coconspirator, who dropped off JUSTIN EUGENE TAYLOR without being seen. JUSTIN EUGENE TAYLOR met with Sylvester and Hartzell at the residence and then rode in Hartzell's car with Hartzell and Sylvester to the area of Hanover Avenue and North Lombardy Street, in the City of Richmond, Virginia, in order to obtain marijuana for Sylvester. Upon arriving at that area, JUSTIN EUGENE TAYLOR asked Sylvester for the money to pay for the marijuana, but Sylvester refused to give the money to JUSTIN EUGENE TAYLOR until he saw the marijuana. JUSTIN EUGENE TAYLOR left Hartzell's vehicle in order to obtain the marijuana, however, he was unable to do so.

4. JUSTIN EUGENE TAYLOR contacted his Coconspirator and the two of them devised a plan to steal the money that Sylvester had to purchase the marijuana. Pursuant to that plan, the Coconspirator, who was armed with a 9mm semiautomatic pistol, would pose as the drug dealer, meet with Sylvester and demand to see the purchase money. Upon Sylvester showing the Coconspirator the money, the plan was for the Coconspirator to

**J.A. 116**

take the money by force and flee the area with JUSTIN EUGENE TAY-LOR, in JUSTIN EUGENE TAYLOR's car.  JUSTIN EUGENE TAY-LOR did not explicitly plan or agree to kill Martin Scott Silvester.

5.  Pursuant to this plan, the Coconspirator went to the alleyway located between Hanover and Grove Avenues, and North Lombardy and North Vine Streets.  JUSTIN EUGENE TAYLOR called Sylvester and told him to meet the man in the alleyway to obtain the marijuana.  JUSTIN EUGENE TAYLOR then went to his car to wait for the Coconspirator.

6.  The Coconspirator met Sylvester in the alleyway, displayed the 9mm semiautomatic pistol and demanded Sylvester's marijuana purchase money.  Martin Sylvester resisted, the pistol discharged and Martin Sylvester was fatally shot.  Martin Sylvester died the next day from the gunshot wound.

7.  The Coconspirator fled to JUSTIN EUGENE TAYLOR's car and the Coconspirator and JUSTIN EUGENE TAYLOR fled the area.

The actions taken by the defendant as described above, were done willfully and knowingly with the specific intent to violate the law.  The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Statement of Facts, ECF No. 32 (emphasis added).

The probation officer reviewed the information contained in the Government's file and confirmed the accuracy of the Statement of Facts.  PSR, ECF No. 72, ¶ 33.  As instructed in U.S.S.G. § 2B3.1(c)(1), the probation officer cross-referenced the murder guidelines and applied

**J.A. 117**

the First Degree Murder guideline provisions of U.S.S.G. § 2A1.1(a), resulting in an offense level 43.  After reducing defendant's sentence two levels for acceptance of responsibility (defendant pleaded guilty on the eve of trial), defendant's offense level total was 41.  With a criminal history category III, defendant was facing a guideline range of 360 to life, but his maximum sentence on Count Five was 20 years.  PSR, Worksheet D.[2]

Prior to sentencing, the defendant filed a motion for downward departure from the First Degree Murder guidelines and for overstatement of his criminal history.  After hearing the evidence and argument of counsel, U.S. District Judge Spencer found, "…I heard what everybody has to say, I understand the facts of the case, things that might argue for a different result.  But my bottom line is this:  The general genesis of this event, the plan to rip off, is with Mr. Taylor.  And he is responsible for, under the law, for what happens.  And what happened here was a felony murder.  That's first degree murder…"

Ultimately, the Court sentenced the defendant to a term of imprisonment of 360 months, consisting of 240 months on Count Five and 120 months on Count Seven, to be served consecutively.

## ARGUMENT

### I.     No relief is warranted because defendant's sentence remains lawful.

Even after *Davis,* defendant cannot obtain relief because his conviction was predicated on an offense that remains valid under the force clause, 18 U.S.C. § 924(c)(3)(A).  As set forth above, Count Seven included as its predicate crimes of violence ***both*** the conspiracy to commit

---

[2] At the time of sentencing, defendant was already serving a 72-month term of imprisonment on an unrelated conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride and cocaine base.  That sentence was imposed on January 17, 2006, more than two years prior to his indictment in this case.  *See United States v. Justin E. Taylor,* 3:05-cr-328.

## J.A. 118

robbery and the actual robbery.  Defendant pleaded guilty to the crime predicated on both of those offenses.  Thus, even if conspiracy to commit robbery is not considered valid under the force clause, the actual robbery remains valid and thus, the defendant's 924 conviction remains valid.

Although the Fourth Circuit has not yet decided whether Hobbs Act robbery is a crime of violence,[3] the other federal circuits have unanimously so held. *See United States v. Garcia-Ortiz*, 904 F.3d 102, 106–09 (1st Cir. 2018); *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018); *United States v. Robinson*, 844 F.3d 137, 144 (3d Cir. 2016); *United States v. Buck*, 847 F.3d 267, 274–75 (5th Cir. 2017); *United States v. Gooch*, 850 F.3d 285, 290–92 (6th Cir. 2017); *United States v. Rivera*, 847 F.3d 847, 848–49 (7th Cir. 2017); *Diaz v. United States*, 863 F.3d 781, 783–84 (8th Cir. 2017); *United States v. Melgar-Cabrera*, 892 F.3d 1053, 1060–66 (10th Cir.), *cert. denied*, 139 S. Ct. 494 (2018); *United States v. St. Hubert*, 883 F.3d 1319, 1328–29 (11th Cir. 2018); *see also United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016).

Any remaining doubt was settled after the Supreme Court decided *Stokeling v. United States*, 139 S. Ct. 544 (2019), which held that common-law robbery categorically satisfies the force clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e). *Stokeling* only reinforces the conclusion that Hobbs Act robbery necessarily involves the use or threatened use of violent physical force, which is force sufficient to overcome a victim's resistance, "however slight." *Stokeling*, 139 S. Ct. at 550–51; *see also United States v. Johnson*, 765 F. App'x 415, 416 (10th Cir. 2019) (concluding that *Stokeling* reinforced *Melgar-Cabrera*'s holding that Hobbs Act robbery was a violent felony).

---

[3] *But see United States v. Ali*, No. 15-4433 (4th Cir.), which was held in abeyance pending *Davis*.

Nor is the analysis different because defendant's predicate is an attempt crime. As several circuits have concluded, any attempt to commit a crime of violence involves an attempted use of violent force and therefore is itself a crime of violence. *See, e.g.*, *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018) ("Like completed Hobbs Act robbery, attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that clause expressly includes 'attempted use' of force."); *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017); *United States v. Dean*, 724 F. App'x 681, 682 (10th Cir. 2018).  Courts in this district have consistently reached this conclusion.[4] Moreover, the Fourth Circuit applied the same reasoning in an unpublished opinion. *See United States v. Holland*, 749 F. App'x 162, 166 (4th Cir. 2018) ("Several circuits have held that attempting to commit a substantive offense that qualifies as a violent felony also constitutes a qualifying violent felony. Therefore, the district court did not err in concluding that [an] attempted [crime of violence] is a crime of violence under the ACCA."). Accordingly, because defendant's predicate involves an attempt to commit a crime of violence, it remains a valid predicate under the force clause.  In this case, the substantive robbery count was charged as an attempt because they killed the victim before they could steal his money.  Clearly, brandishing and discharging a firearm and fatally shooting the robbery victim involves violence.

Nor is the analysis different because defendant was charged under an aiding and abetting theory. The Fourth Circuit recently confirmed that accessory liability to a crime of violence is

---

[4] *See, e.g., Portocarrero v. United States*, No. 1:10-cr-661, 2019 WL 181119, at *7 (E.D. Va. Jan. 11, 2019) ("According to the plain language of the force clause itself, the 'attempted use' of force is indistinguishable from 'the use' of force."); *United States v. Smith*, No. 3:13-cr-141, 2019 WL 1810983, at *3 (E.D. Va. Apr. 24, 2019); *United States v. Jones*, No. 3:11-cr-231, 2019 WL 1509598, at *4 (E.D. Va. Apr. 5, 2019); *United States v. Simmons*, No. 2:16-cr-130, 2018 WL 6012368, at *3 (E.D. Va. Nov. 16, 2018).

**J.A. 120**

itself a crime of violence, rejecting a defendant's argument that the force clause requires "that the defendant himself used the necessary force." *United States v. Dinkins*, — F.3d —, 2019 WL 2722570, at *7–8 (4th Cir. July 1, 2019); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189–90 (2007) (noting that "every jurisdiction" has abolished distinctions between principals and aiders and abettors and concluding aiding and abetting thus matched the generic theft definition). Several other circuits have reached the same conclusion. *See, e.g., United States v. Garcia-Ortiz*, 904 F.3d 102, 109 (1st Cir. 2018); *United States v. Deiter*, 890 F.3d 1203, 1215–16 (10th Cir. 2018); *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016); *see also United States v. Richardson*, 906 F.3d 417, 426 (6th Cir. 2018), *vacated and remanded on other grounds*, 2019 WL 2493913 (U.S. June 17, 2019); *United States v. Grissom*, 760 F. App'x 448, 454 (7th Cir. 2019). Accordingly, defendant's conviction under aiding-and-abetting liability does not alter the conclusion that he was convicted of a crime of violence involving the use, attempted use, or threatened use of force.

## II.   *Bousley* continues to bar relief because defendant is not actually innocent.

When a defendant pleads guilty, he waives all non-jurisdictional defects, including constitutional challenges. *See, e.g.*, *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010) (citing *United States v. Broce*, 488 U.S. 563, 575 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see also United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees."). Courts have concluded that an unconditional guilty plea like Taylor's waives a constitutional challenge like the one that Taylor now raises in his § 2255 motion. *See, e.g., United States v. Davila*, 843 F.3d 729, 732-33 (7th Cir. 2016) (defendant's guilty plea foreclosed a collateral attack based on *Johnson*); *United States v. Muhlenberg*, 667 F. App'x 615 (9th

Cir. 2016) (rejecting non-*Johnson* challenge to § 924(c) conviction based on Hobbs Act predicate where defendant pleaded guilty and waived right to appeal); *United States v. Martinez-Martinez*, 69 F.3d 1215, 1224 (1st Cir. 1995) (declining to reach § 2255 petitioner's as-applied vagueness challenge "because a valid guilty plea waives all challenges to the factual and legal foundations of the charges").

Defendant cannot now claim that his guilty plea was involuntary or not intelligently made. That issue has already been adjudicated. Defendant's plea contained an appeal waiver. Nonetheless, defendant sought to appeal his conviction and sentence on direct appeal. *See United States v. Justine Eugene Taylor,* No. 09-4468 (4th Cir. 2011). However, his appeal was dismissed because the Fourth Circuit found that defendant knowingly and voluntarily waived his right to appeal and the issues he sought to raise on appeal fell within the compass of that waiver. ECF Nos. 54, 54. The dismissal of defendant's appeal based on his waiver is the functional equivalent of a default. *See United States v. Linder*, 552 F.3d 391, 396-97 (4th Cir. 2009). Furthermore, defendant did not raise a challenge to his 924(c) conviction on the grounds of it being unconstitutionally vague. Thus, the defendant procedurally defaulted any constitutional vagueness challenge to his 924(c) conviction. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.").

There is an exception to this rule where the defendant can show either (1) cause and prejudice for the default, or (2) actual innocence, *id*. at 622, but defendant cannot make either showing here. When the defendant's appeal was dismissed, the defendant filed his first 2255 motion. *See* ECF No. 69. In denying that motion, Judge Spencer found that the defendant had sworn un-

**J.A. 122**

der oath that he was in fact guilty of the charged offenses and admitted that the facts in the Statement of Facts were true and established his guilt beyond a reasonable doubt. ECF No. 58 at 11. Thus, the Court concluded, the defendant was not actually innocent of any of the crimes he admitted. Those crimes included that defendant used and carried a firearm during and in relation to the substantive crime of Hobbs Act robbery as charged in Count Six. *See* ECF No. 17, at 4.

Furthermore, both the Fourth Circuit and the Supreme Court have long held that, as a general matter, a change in law after a guilty plea fails to make the plea not knowing or voluntary. "[A]bsent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the *then applicable law* does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *United States v. Johnson*, 410 F.3d 137, 152 (4th Cir. 2005) (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970)). *Cf. United States v. Copeland*, 707 F.3d 522, 529 (4th Cir. 2013) ("Copeland cannot invalidate his appeal waiver now to claim the benefit of subsequently issued case law.").

Defendant here pleaded guilty to an offense that was predicated on two different felony crimes of violence: conspiracy to commit a Hobbs Act robbery and the substantive count of attempted Hobbs Act robbery. Although the conspiracy to commit robbery is no longer constitutionally valid under the residual clause, the substantive count is. However, "[i]in cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624. Here, defendant was initially charged with additional predicates supporting his § 924(c) conviction, including the substantive count of robbery in Count Six, which remains a valid predicate post-*Davis*.

Although defendant only pleaded guilty to the conspiracy count, which is an invalid predicate, the defendant admitted the commission of a valid predicate in his statement of facts. *See Statement of Facts,* ECF No. 32. Defendant admitted to meeting with the victim and attempting to "rip off" the victim by taking his buy money.  ECF 32 at ¶ 3.  When that failed, the defendant devised a plan with his coconspirator to obtain the victim's money by force.  ECF 32 at ¶ 4.  The defendant then put that plan into play by calling the victim and telling him to meet the man in the alleyway to obtain the marijuana.  ECF 32 at ¶ 5.  The defendant then proceeded to the getaway car to wait for his accomplice -- who he knew was armed with a 9mm semiautomatic pistol -- to take the victim's money and escape together.  ECF 32 at ¶¶ 4-5.  When defendant's accomplice displayed the firearm and demanded the victim's money, the victim resisted, the firearm discharged and the victim was fatally shot.  ECF 32 at ¶ 6.  The defendant and his accomplice then fled the area together.  ECF 32 at ¶ 7.

A defendant may not lightly disavow statements that he makes under oath at a Rule 11 hearing. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Indeed, statements made under oath at a Rule 11 proceeding are binding on a defendant "[a]bsent clear and convincing evidence to the contrary." *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citing *Blackledge*, 431 U.S. at 74–75; *Little v. Allsbrook*, 731 F.2d 238, 239–40 n.2 (4th Cir. 1984)). As the Fourth Circuit has explained, "[i]f an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc). Summing up these cases, the Fourth Circuit observed that "in the absence of ex-

**J.A. 124**

traordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is con-clusively established." *Lemaster*, 403 F.3d at 221–22. Defendant's admissions at his plea collo-quy thus necessarily prevent him from proving "factual innocence" of the § 924(c) conviction, and, under *Bousley,* he cannot obtain relief.

**III.    If the Court were to invalidate defendant's § 924(c) conviction, the Court should Re-form the conviction to its lesser-included predicate offense.**

For all of the reasons stated above, the defendant's § 924(c) conviction is valid.  But, if the Court were to disagree, and find that defendant's § 924(c) conviction is no longer tenable fol-lowing *Davis*, the Court should not reverse the conviction altogether but should merely reduce it to a conviction for the remaining underlying predicate itself.  The defendant pleaded guilty to one of the listed predicated, but not both.  If this Court were to invalidate the § 924(c) convic-tion, it should reform the conviction to the substantive count of robbery charged in Count Six.

Both the Supreme Court and the federal appellate courts have noted that a court may "di-rect the entry of judgment for a lesser-included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." *Rutledge v. United States*, 517 U.S. 292, 306 (1996) (citing cases and noting the practice "with approval"); *see also United States v. Ford*, 750 F.3d 952, 955 (4th Cir. 2014) (noting that a court may direct the entry of judgment on a lesser included offense so long as "there is sufficient evidence to sustain a finding of guilt on all elements of the lesser offense").

This practice is squarely applicable on collateral review where defendant's § 924(c) con-viction is no longer valid under the residual clause. District courts have "'broad and flexible power' under § 2255 to determine the nature and scope of the remedial proceedings in the first instance."  *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007) (quoting *United States v.*

*Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997)). As the Fourth Circuit has held, "proof of a predicate offense is an essential element of a § 924(c) violation." *United States v. Randall*, 171 F.3d 195, 205 (4th Cir. 1999). Thus, by definition, every § 924(c) conviction carries its predicate as a lesser-included offense. Because the defendant admitted each of the elements of the underlying predicates, including the substantive charge of Hobbs Act robbery in Count Six, the court should reform the conviction to that lesser-included offense and resentence defendant accordingly.

## IV.   If the § 924(c) Conviction is Invalidated, this Court should conduct a resentencing.

In this case, the defendant's sentence is driven by the First Degree Murder guidelines that Judge Spencer found were appropriately applied.  Tr. of Sentencing, ECF No. 48, at 57-58. Here, if the Court reforms defendant's § 924(c) conviction, defendant's sentence should remain the same.  Even without the § 924(c) conviction, defendant's guideline range is 360 to life.  *See* PSR, Worksheets A and D.  By reforming the § 924(c) conviction to the substantive Hobbs Act robbery charged in Count Six, defendant's sentence should remain 10 years, consecutive to the sentence imposed on Count Five.  However, if the Court were inclined to invalidate the § 924(c) count, it should order a resentencing at which defendant and the government can urge an appropriate new sentence. The Fourth Circuit has suggested that typically, "the most 'appropriate' remedy" under § 2255 "is to . . . permit resentencing." *United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997). This maxim is particularly true where the vacated or reformed component in defendant's sentence may be a significant driver of the sentence and have a substantial effect on calculating the rest of the offense conduct. *See, e.g.*, *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007) (noting resentencing was not required where the government did not seek to use the firearm conduct to enhance remaining drug counts). While the categorical approach establishes the validity of the conviction (or not), sentencing is inherently conduct-specific and

**J.A. 126**

thus the Court should consider the appropriate sentence in light of defendant's reconfigured sentencing package.

For example, removing a § 924(c) conviction may significantly alter the Guidelines calculations for a particular defendant and require consideration of new factors in dealing with his specific offense conduct. Although the existence of a § 924(c) conviction generally precludes the application of any firearm enhancement to specific offense conduct (*see* U.S.S.G. § 2K2.4 app. note 4), defendant's admitted statement of facts or the relevant jury finding would warrant application of that enhancement to recalculate an appropriate sentence. *See, e.g.*, U.S.S.G. § 2A2.2(b)(2) (applying firearm enhancements to aggravated assault offenses); U.S.S.G. § 2A3.1(b)(1) & app. note 2(A) (applying enhancement for criminal sexual abuse involving using or brandishing a weapon); U.S.S.G. § 2A4.1(b)(3) (applying dangerous-weapon enhancement to kidnapping offenses); U.S.S.G. § 2B3.1(b)(2) (applying firearm enhancements to robbery offenses).

Here, defendant committed serious offense conduct involving the use of a firearm, which resulted in the felony murder of Martin Silvester. The First Degree Murder guidelines drove the sentence in this case. Nonetheless, the use of the firearm is relevant to determining an appropriate sentence on the remaining convictions that adequately captures the seriousness of defendant's crimes. The government therefore intends to seek the same sentence originally imposed on the remaining counts, and a resentencing is appropriate.

**J.A. 127**

Respectfully submitted,
G. Zachary Terwilliger
United States Attorney

By:          /s/
Olivia L. Norman
Virginia Bar Number 31418
Assistant United States Attorney
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone:  804-819-5400
Fax:    804-771-2316
Olivia.L.Norman@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2019, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send a notification of such filing (NEF) to all coun-

sel of record.


/s/
Olivia L. Norman
Virginia Bar Number 31418
Assistant United States Attorney
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone:  804-819-5400
Fax:    804-771-2316
Olivia.L.Norman@usdoj.gov


**J.A. 128**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Case No. 3:08cr326** |
| | ) | |
| JUSTIN EUGENE TAYLOR, | ) | |
| **Defendant** | ) | |

**REPLY TO SUPPLEMENTAL MEMORANDUM OF THE UNITED STATES
REGARDING *UNITED STATES V. DAVIS***

Justin Taylor, through counsel, replies as indicated below to the government's supplemental memorandum regarding *United States v. Davis*, 139 S. Ct. 2319 (2019), and as a supplement to his motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 in ECF No. 76. In *Davis*, the Supreme Court found that the residual clause of § 924(c)(3)(B), commonly referred to as the residual clause, is unconstitutionally vague. 139 S. Ct. at 2336. As explained below, Mr. Taylor's conviction under 18 U.S.C. § 924(c) (Count Seven) must be vacated in light of the Supreme Court's recent decision in *Davis*. Because the Court has already sentenced Mr. Taylor to the statutory maximum on Count Five, the remaining count, there is no need for a resentencing in this case.

**INTRODUCTION**

On February 13, 2009, Mr. Taylor pled guilty to one count of using a firearm during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A) (Count Seven) and one count of conspiring to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count Five). Specifically, the underlying "crime of violence" for the § 924(c) conviction was conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). The Court sentenced Mr. Taylor

**J.A. 129**

to 240 months on Count Five and 120 consecutive months on Count Seven.  However, post-*Davis*, Hobbs Act conspiracy categorically fails to qualify as a "crime of violence."  Therefore, Mr. Taylor's § 924(c) conviction is void.

The relevant portion of § 924(c) defining a "crime of violence" has two clauses.  The first clause—§ 924(c)(3)(A)—is commonly referred to as the force clause.  The other—§ 924(c)(3)(B)—is commonly referred to as the residual clause.  Because the Supreme Court in *Davis* held that the § 924(c) residual clause is unconstitutionally void in violation of the Due Process Clause, Mr. Taylor's conspiracy offense cannot qualify as a "crime of violence" under the § 924(c) residual clause.  Likewise, as the Fourth Circuit held in *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc) (and as the government conceded therein), Hobbs Act conspiracy categorically fails to qualify as a "crime of violence" under the remaining § 924(c) force clause.  Therefore, the "crime of violence" element of § 924(c) cannot be satisfied here, and a conviction cannot be constitutionally sustained under the statute.

As a result, Mr. Taylor's § 924(c) conviction 1) violates the Due Process Clause and 2) violates the United States criminal laws as interpreted by the Supreme Court and the Fourth Circuit and results in a fundamental miscarriage of justice.  Therefore, Mr. Taylor is entitled to a vacatur of his unlawful § 924(c) conviction under 28 U.S.C. § 2255(a).  Because the Court has already sentenced Mr. Taylor to the statutory maximum on the remaining count, Count Five, no resentencing is necessary in this case.

## ARGUMENT

**I.      After *Davis*, Mr. Taylor's conviction under 18 U.S.C. § 924(c) cannot be sustained because Hobbs Act conspiracy is not a "crime of violence."**

Mr. Taylor's § 924(c) conviction for using a firearm during and in relation to a "crime of violence" is void because the "crime of violence" element cannot be satisfied here.  The predicate offense of Hobbs Act conspiracy does not qualify as a "crime of violence" as a matter of law.

Under § 924(c)(3), "crime of violence" is defined as follows:

(3)      For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

>    (A)      has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

>    (B)      that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause—§ 924(c)(3)(A)—is the force clause.  The other—§ 924(c)(3)(B)—is the residual clause.  Because the Supreme Court in *Davis* held that the § 924(c) residual clause is unconstitutionally vague in violation of the Due Process Clause, it goes without saying that Mr. Taylor's § 924(c) conviction cannot be sustained under § 924(c)'s now defunct residual clause.

Likewise, a Hobbs Act conspiracy is not a "crime of violence" under the remaining force clause in § 924(c)(3)(A).  The Fourth Circuit so held in *Simms*, 914 F.3d at 233-34, because conspiracy requires the government to "prove only that the defendant agreed with another to commit actions, which if realized would violate [the object of the conspiracy].  Such an agreement does not invariably require the actual, attempted, or threatened use of physical force." *Id.* at 233-34.

**J.A. 131**

A. *The categorical approach applies to the § 924(c) force clause.*

As the Fourth Circuit held in *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015), to determine whether an offense qualifies as a "crime of violence" under the § 924(c) force clause, the district court must "employ the categorical approach or the modified categorical approach." *Id.* (internal quotation marks omitted).   The statutory text of the § 924(c) force clause alone demands this categorical framework.  As the Fourth Circuit reinforced in *Simms*, 914 F.3d at 233, 239, 241, and the Supreme Court confirmed in *Davis*, 139 S. Ct. at 2328, the words "offense" and "elements" in § 924(c)(3)(A) mandate the categorical framework.  Under this approach, courts can only "look to whether the statutory elements of the offense [of conviction] necessarily require the use, attempted use, or threatened use of physical force."  *Simms*, 543 U.S. at 233.  "This approach is 'categorical' because the courts consider only the crime as defined, not the particular facts in the case."  *Id.*

For the limited purpose of "help[ing] to implement the categorical approach," in a "narrow range of cases," a federal sentencing court may look at a short list of judicial documents (authorized by *Shepard v. United States,* 544 U.S. 13, 26 (2005)) to determine whether the defendant "necessarily" pled guilty to an offense that qualifies as a "crime of violence."  *Descamps v. United States*, 570 U.S. 254, 261, 262.  This approach, known as the modified categorical approach, is also driven by the elements.

In *Descamps,* the Supreme Court clarified that a federal court may apply the modified categorical approach only if the relevant crime at issue is divisible.  *Id.* at 260.  An offense is divisible if it has alternative elements, and thus creates multiple crimes—some of which constitute a "crime of violence" and some of which do not.  *Id.* at 260-61.  If a statute is divisible, a federal sentencing court may review *Shepard* documents only to determine "which of the statute's

**J.A. 132**

alternative elements" necessarily formed the basis of the defendant's conviction.  *Id.* at 262.[1]  In this way, the modified categorical approach "acts not as an exception [to the categorical approach] but instead as a tool.  It retains the categorical approach's central feature: a focus on the elements rather than the facts, of a crime."  *Id.* at 263.

And to be clear, under the modified categorical approach, a court cannot lawfully make a "crime of violence" finding unless the *Shepard* documents establish with "certainty" that the defendant "necessarily" pled guilty to elements constituting a "crime of violence."  *Shepard*, 544 U.S. at 21-22, 23.  "[P]lausibility or even likelihood" that the defendant pled guilty to elements constituting a "crime of violence" will not suffice.  *United States v. Clay*, 627 F.3d 959, 967 (4th Cir. 2010).  This "demand for certainty" avoids "evidentiary inquiries into the factual basis for the conviction" that the categorical framework forbids.  *Shepard*, 544 U.S. at 21.  <u>This stringent standard comports with "[t]he point of the categorical inquiry" which "is not to determine whether the defendant's conduct *could* support a conviction for a crime of violence, but to determine whether the defendant was *in fact convicted* of a crime that qualifies as a crime of violence.</u>"  *Fuertes*, 805 F.3d at 498.

Under this demand for certainty, when the *Shepard* documents do not establish the elements to which a defendant "necessarily" pled guilty, the court must assume that the defendant pled guilty to the "least serious" of the disjunctive elements of the statute.  *United States v. Chapman,* 666 F.3d 220, 227 (4th Cir. 2012).  This is true even when a count in the indictment alleges the alternative elements in the conjunctive.  As the Fourth Circuit held in *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011), and again in *Chapman*, 666 F.3d at 228, the mere fact

---

[1] These documents are the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant, a judge's factual findings in a bench trial, jury instructions, and comparable judicial records.  *Shepard*, 544 U.S. at 13, 20, 26.

that a count in an indictment charges alternative elements of a statute in the conjunctive (for example, a § 924(c) count which alleges both Hobbs Act robbery *and* Hobbs Act conspiracy as § 924(c) predicates) does not mean that the defendant necessarily pled guilty to both sets of elements. "Indictments often allege conjunctive elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty." *Vann*, 660 F.3d at 774 (quoting *Omari v. Gonzales,* 419 F.3d 303, 308 n.10 (5th Cir. 2005)). Therefore, "when a defendant pleads guilty to a formal charge in the indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct" unless *Shepard* documents conclusively establish otherwise. *Chapman,* 666 F.3d at 227-28. And if the least serious of the disjunctive elements is broader than the § 924(c) "crime of violence" definition, then the offense categorically fails to constitute a "crime of violence" and cannot support a § 924(c) conviction.[2]

---

[2] Also, it is well settled that any ambiguity in a plea agreement must be construed against the government. In construing plea agreements, courts rely on general contract law principles. *See United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986). But given the context—the waiver of a defendant's constitutional right to trial and the implications for "public confidence in the fair administration of justice"—courts analyze plea agreements with special scrutiny. *Id.* (quoting *United States v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972)). The result is that the law governing the interpretation of plea agreements is an "amalgam of constitutional, supervisory, and private law concerns." *Id.* These concerns "require holding the Government to a greater degree of responsibility than the defendant" for any imprecision in a plea agreement, so that ambiguities are construed against the government. *Id.* Therefore, any ambiguity with respect to the offense to which a defendant pled guilty must be construed against the government and in favor of the defendant. *See Benitez v. United States,* 2017 WL 2271504, at *6 (S. D. Fla. April 6, 2017) ("while the plea agreement is clear that [the defendant] pled only to the offense of possession of a firearm in furtherance of a crime of violence, even if the plea agreement was ambiguous, such ambiguity 'must be read against the government.'") (citing *United States v. Harvey,* 791 F.2d 294, 303 (4th Cir. 1986)).

Applying the categorical approach here, the court must first determine the alleged "crime of violence" upon which Mr. Taylor's § 924(c) conviction (Count Seven) was predicated.   The alleged "crime of violence" was the Hobbs Act statute (18 U.S.C. § 1951(a)).  The Hobbs Act statute is divisible because it sets forth multiple crimes with alternative elements, including (1) robbery, (2) extortion, (3) attempting to rob, (4) attempting to extort (5) conspiracy to commit robbery, and (6) conspiracy to commit extortion.  18 U.S.C. § 1951(a).  Because the Hobbs Act statute includes alternative crimes, this Court must apply the modified categorical approach and review the available *Shepard* documents to determine which of the multiple crimes necessarily served as the basis for the § 924(c) counts.

The available *Shepard* documents here—the indictment and the plea agreement—fail to conclusively establish the basis for the § 924(c) conviction.  Although Count Seven of the second superseding indictment alleged both attempted Hobbs Act robbery and Hobbs Act conspiracy (in the conjunctive) as the "crime of violence" under § 924(c), the plea agreement is radio silent on which of the two offenses necessarily served as the basis for the § 924(c) conviction.  *See* ECF No. 31.  Indeed, in reciting the elements of conviction on Count Seven, the plea agreement merely states that "Count Seven charges the defendant with the use and carry of a firearm during and in relation to a crime of violence" without specifying the "crime of violence" (whether attempted Hobbs Act robbery or Hobbs Act conspiracy) to which Mr. Taylor necessarily pled guilty.  *See* ECF No. 31 at 1.

Due to this grave ambiguity, the plea agreement fails to meet *Shepard*'s "demand for certainty."[3]  Therefore, as *Vann* and *Chapman* direct, this Court must assume that Mr. Taylor's §

---

[3] Also, it is important to note here that although the Court did not specify the purported "crime of violence" underlying the § 924(c) convictions, it was perfectly reasonable for Mr. Taylor to believe that he was pleading to a § 924(c) offense predicated on Hobbs Act conspiracy considering that separately, on Count Five, he only pled guilty to Hobbs Act conspiracy—not attempted Hobbs Act robbery.

**J.A. 135**

924(c) conviction was predicated on the least serious of the two offenses—which is Hobbs Act conspiracy. Because Hobbs Act conspiracy categorically fails to qualify as a § 924(c) "crime of violence," Count Seven is void.

> B. *Alternatively, attempted Hobbs Act robbery is also not a § 924(c) "crime of violence."*

The alternative predicate offense in Count Seven, attempted Hobbs Act robbery, does not meet the definition of "crime of violence" in § 924(c)'s force clause. A felony counts as a "crime of violence" under that clause only if the elements of the offense—not the "means by which the defendant committed" it—"necessarily require the use, attempted use, or threatened use of violent physical force." *United States v. Evans*, 848 F.3d 242, 246 (4th Cir. 2017) (citing, inter alia, § 924(c)(3)(A)). Attempted Hobbs Act robbery does not meet this definition because it can be committed without using, attempting to use, or threatening the use of force. Under the Hobbs Act, "robbery" means "the unlawful taking . . . of personal property from the person or in the presence of another, against his will, by means of actual or threatened force . . . to his person or property." 18 U.S.C. § 1951(b)(1).

To convict someone of attempted Hobbs Act robbery, the government must show that the defendant (1) had "culpable intent to commit" Hobbs Act robbery and (2) "took a substantial step towards completion of the crime that strongly corroborates that intent." *United States v. Engle*, 676 F.3d 405, 419-20 (4th Cir. 2012). Such a corroborative "substantial step" may be (1) searching for the "contemplated victim"; (2) surveying "the place contemplated for the commission of the crime"; or (3) possessing materials "to be employed in the commission of a crime." *United States v. Johnson*, 409 Fed. Appx. 688, 691 (4th Cir. 2011) (citing *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003)). Thus, a defendant can be convicted of attempted Hobbs Act robbery without the use, attempted use, or threatened use of violent physical force.

**J.A. 136**

For example, a defendant could be convicted of attempted Hobbs Act robbery for (1) telling a confidential informant ("CI") that he intends to threaten the use of force to obtain someone's property and then (2) picking up an instrument that he intends to use to threaten. As another example, a defendant could be convicted of the offense for (1) telling a CI that she intends to threaten a bank teller to obtain money, and (2) simply going to the bank to survey it. Both of these examples meet the elements of attempted Hobbs Act robbery, but neither involves the use, attempted use, or threatened use of violent physical force. *Evans*, 848 F.3d at 246. Rather, both merely involve an attempt to threaten the use of force. Because the elements of attempted HAR do not "necessarily require the use, attempted use, or threatened use of violent physical force," the offense does not qualify as a crime of violence under § 924(c)(3)(A).[4] *Id.*

The government relies on *United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018), which held that attempted Hobbs Act robbery is a crime of violence because the completed offense of Hobbs Act robbery is a crime of violence. *See* ECF No. 89 at 9. However, three judges on the Eleventh Circuit have urged the Court to reconsider *St. Hubert*. As Judge Jill Pryor noted: "Conviction for an attempt crime . . . requires an overt act, but . . . overt acts might include renting a getaway van, parking the van a block from the bank, and approaching the bank's door before being thwarted—without having used, attempted to use, or threatened to use force." *United States*

---

[4] Other sessions of this Court have held that attempted HAR qualifies as a crime of violence under § 924(c)'s force clause. *E.g., United States v. Jones*, Case No. 3:11-cr-231-HEH, 2019 WL 1509598, at *4 (E.D. Va. Apr. 5, 2019). In *Jones*, the Court concluded that Hobbs Act robbery qualifies as a crime of violence under the force clause, so "by extension the attempted" commission of Hobbs Act robbery "must also include at least the 'attempted use' of force." *Id.* (quoting *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018)). But even assuming that Hobbs Act robbery is a crime of violence under the force clause, that does not mean attempted Hobbs Act robbery is one too. As explained supra, a defendant can commit attempted Hobbs Act robbery by intending to threaten someone and then surveying the location where she intends to issue the threat. Contrary to the Court's statement in *Jones*, such an act does not "include at least the 'attempted use' of force"; rather, it merely includes an attempt to threaten the use of force. Under the plain text of the force clause—which requires the "use, attempted use, or threatened use" of force—an attempt to threaten the use of force does not constitute a crime of violence. § 924(c)(3)(A).

**J.A. 137**

*v. St. Hubert*, 918 F.3d 1174, 1212 (11th Cir. 2019) (dissenting from the denial of rehearing en banc).[5]  The government is incorrect to rely on the Eleventh Circuit's opinion in *St. Hubert*, which fails to address the myriad situations in which attempted Hobbs Act robbery can be committed without using, attempting to use, or threatening to use force.

Because *Johnson* invalidated § 924(c)(3)(B) and because attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A), the Court should vacate Mr. Taylor's § 924(c) conviction in Count Seven of the second superseding indictment.

 *C.  Mr. Taylor did not waive his challenge asserted under 28 U.S.C. § 2255 when he plead guilty.*

### i.   A jurisdictional defect may not be defaulted.

The government has argued that Mr. Taylor waived his ability to assert this challenge to his § 924(c) conviction by pleading guilty unconditionally in this case.  The unconstitutionality of a statute of conviction or the failure of an indictment to state an offense is a jurisdictional defect that cannot be defaulted, and thus Mr. Taylor has not procedurally defaulted his § 924(c) claim.  A jurisdictional defect is one that "strip[s] the court of its power to act and ma[kes] its judgment void." *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (quoting *Escareno v. Carl Nolte Sohne GmbH & Co.*, 77 F.3d 407, 412 (11th Cir. 1996)).  "Because parties cannot by acquiescence or agreement confer jurisdiction on a federal court, a jurisdictional defect cannot be waived or procedurally defaulted[.]" *Id.*

---

[5] *See also St. Hubert*, 918 F.3d at 1197 (Wilson, J., dissenting from the denial of rehearing en banc); *id.* at 1200 (Martin, J., dissenting from the denial of rehearing en banc).  The District of Connecticut has also held that the attempt to violate a Connecticut statute that is substantively identical to Hobbs Act robbery does not qualify as a crime of violence under the United States Sentencing Guidelines. *United States v. Alfonso*, No. 3:17-CR-128, 2019 WL 1916199, at *7–8 (D. Conn. April 30, 2019) ("[T]he elements of attempt to commit robbery could clearly be met without any use, attempted use, or threatened use of violence whatsoever.").

"Claims that the applicable statute is unconstitutional or that the indictment fails to state an offense are jurisdictional claims[.]" *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir. 1989), amended at 907 F.2d 115 (9th Cir. 1990) (internal quotation marks omitted). "Here, Mr. Taylor argues that he cannot be convicted under § 924(c)(3)(B) because that provision is unconstitutionally vague[,]" and therefore he has not defaulted "his claim that this statute of conviction is unconstitutional." *United States v. St. Hubert*, 883 F.3d 1319, 1324 (11th Cir. 2018) (holding that unconditional guilty plea did not waive such a claim).

Moreover, in this case, the predicate offense was not, in fact, a crime of violence, and therefore Mr. Taylor's indictment failed to state a § 924(c) offense. "[W]hen an indictment 'affirmatively allege[s] a specific course of conduct that is outside the reach' of the statute of conviction—or stated another way, 'alleges only a non-offense'—the district court has no jurisdiction to accept the guilty plea [or guilty verdict]." *Id.* at 1326 (quoting *United States v. Peter*, 310 F.3d 709, 715 (11th Cir. 2002)). In such a case, the defendant is guilty of a "non-offense that the government did not have the power to prosecute[.]" *Id.* at 1324. In this case, "the error asserted by [Mr. Taylor] is that 'the indictment consisted of only specific conduct'—carrying, using, and brandishing a firearm during [conspiracy to commit Hobbs Act robbery]—that . . . is 'as a matter of law . . . outside the sweep of the charging statute.'" *Id.* at 1326 (quoting *Peter*, 310 F.3d at 714). "Said another way, because 'the Government affirmatively alleges a specific course of conduct that [] is outside the reach of [§ 924(c)], the Government's proof of th[at] alleged conduct, no matter how overwhelming, would have brought it no closer to showing the crime charged than would have no proof at all.'" *Id.* (quoting *Peter*, 310 F.3d at 715 (emphasis added)).

Therefore, "[Mr. Taylor]'s challenge to his § 924(c) conviction[] on this ground is jurisdictional," *id.* at 1327, and it cannot be procedurally defaulted. Instead, "[a] judgment tainted

**J.A. 139**

by a jurisdictional defect . . . must be reversed." *United States v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016) (citing *McCoy*, 266 F.3d at 1249).

### ii. To the extent the Court finds procedural default, Mr. Taylor is still entitled to relief.

The government notes that a habeas petitioner can overcome procedural default by showing "either (1) cause and prejudice for the default, or (2) actual innocence . . . ." *See* ECF No. 89 at 11 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Even assuming procedural default, Mr. Taylor can show both cause and prejudice and actual innocence.

Cause is established when "a constitutional claim is so novel that its legal basis [wa]s not reasonably available to counsel" at the time of the default, such as where the default occurred before a Supreme Court decision "explicitly overrule[d] one of [the Court's] precedents" or overturned "a near-unanimous body of lower court authority." *Reed v. Ross*, 468 U.S. 1, 16-17 (1984); *accord Royer v. United States*, 324 F. Supp. 3d 719, 735 (E.D. Va. 2018) (Brinkema, J.). Mr. Taylor's direct appeal was final on March 2, 2011, more than four years before the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court found that the residual clause of the Armed Career Criminal Act was unconstitutionally vague, which led to its decision last month in *Davis* striking down § 924(c)(3)(B) on the same basis.

As Judge Brinkema explained in *Royer*, against "th[e] backdrop" of multiple Supreme Court holdings that the Armed Career Criminal's residual clause "was not unconstitutionally vague" and "a unanimous body of lower-court precedent that had similarly rejected vagueness claims," the "Supreme Court's *Johnson* decision was a bolt of lightning from the clear blue sky." 324 F. Supp. 3d at 736. *See also* Davis, 139 S. Ct. at 2333 (recognizing that "§ 924(c)(3)(B) has been used in 'tens of thousands of federal prosecutions' since its enactment 33 years ago" before

**J.A. 140**

being struck down just over a month ago). Thus, as with the petitioner in *Royer*, any argument regarding the vagueness of § 924(c)(3)(B) "was so novel that it was not reasonably available to" Mr. Taylor at the time he could have filed a direct appeal, and he has established cause for default.

Moreover, Mr. Taylor "has clearly shown prejudice" because, without § 924(c)(3)(B), he would not have been convicted of § 924(c), and would not have been sentenced to 120 months of consecutive imprisonment for that offense. *See Royer*, 324 F. Supp. 3d at 736; *see also Glover v. United States*, 531 U.S. 198, 200 (2001) (finding prejudice from ineffective assistance of counsel where defendant's sentence was increased by at least six months due to error, because "any amount of actual jail time" constitutes prejudice under the Sixth Amendment).

The government argues that Mr. Taylor is not "actually innocent of violating" § 924(c) because of facts that he admitted in his statement of facts. *See* ECF No. 89 at 12-13. This argument demonstrates a foundational misunderstanding of actual innocence doctrine and Fifth Amendment jurisprudence. The Supreme Court has made clear in *Descamps v. United States*, 570 U.S. 254 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016), that the Court looks only to the elements of the crime of conviction and not to surplus facts admitted. *Mathis*, 136 S. Ct. at 2248 ("'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' Black's Law Dictionary 634 (10th ed. 2014). . . . at a plea hearing, they are what the defendant necessarily admits when he pleads guilty. Facts, by contrast, are mere real-world things—extraneous to the crime's legal requirements") (internal citations omitted). *Descamps*, 570 U.S. at 270 ("as *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment"). "A defendant, after all, often has little incentive to contest facts that are not

**J.A. 141**

elements of the charged offense—and may have good reason not to. . . . And during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations." *Descamps*, 570 U.S. at 270.

In the § 2255 context, actual innocence is analyzed solely with respect to the indictment.[6] Factual innocence means that "it is impossible for the government to prove one of the required elements of a [] charge." *United States v. Adams*, 814 F.3d 178, 183 (4th Cir. 2016); *see also United States v. Tyler*, 732 F.3d 241, 246 (3rd Cir. 2014) ("A petitioner can establish that no reasonable juror would have convicted him by demonstrating an intervening change in law that rendered his conduct non-criminal.") (citing *Bousley v. United States*, 523 U.S. 614 (1998)); *Phillips v. United States*, 734 F.3d 573, 582 (6th Cir. 2013) ("One way to establish factual innocence is to show an intervening change in the law that establishes the petitioner's actual innocence.") (brackets omitted; citing *Bousley*); *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014) ("One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a matter of law, have committed the alleged crime.") (citing *Bousley*).

---

[6] *See also United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) ("[D]espite a provision in the plea agreement stating that Adams will 'not . . . file an appeal or otherwise challenge the conviction or sentence,' we may properly review the plea proceedings. This is because 'a defendant retains the right to contend that there were errors in the proceedings that led to the acceptance of his plea of guilty,' and he may argue that the district court failed to satisfy the requirement that there is a factual basis for the plea.") (citation omitted); *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018) (As "reflected in the decisions of the Second, Fifth, and Eleventh Circuits, . . . a challenge to a plea's factual basis survives an appellate waiver. . . . We agree and hold that even valid appeal waivers do not bar claims that a factual basis is insufficient to support a guilty plea.") (citing *Adams*); *United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008); *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285 (11th Cir. 2015)). Without the § 924(c) conviction, Mr. Taylor's statutory maximum punishment is twenty years. The sentence of 360 months Mr. Taylor is serving thus exceeds the maximum. A sentence exceeding the maximum is a "miscarriage of justice" that defeats a waiver. *See also United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (A "defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court" and thus can "not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute.").

An element of a § 924(c) offense is an underlying "crime of violence."   18 U.S.C. § 924(c)(1)(A).  As detailed above, the Supreme Court's ruling in *United States v. Davis*, 139 S. Ct. 2319 (2019), invalidated the definition of "crime of violence" in the "residual clause" at § 924(c)(3)(B).   Because there is no underlying "crime of violence" in Mr. Taylor's case, "it is impossible for the government to prove one of the required elements of [the § 924(c)] charge." *United States v. Adams*, 814 F.3d 178, 183 (4th Cir. 2016).  And because Mr. Taylor is thus actually innocent of the § 924(c) count, the waiver is no bar to this action.  *See also Royer*, 324 F. Supp. 3d at 733 ("Section 924(c) criminalizes using or carrying a firearm during and in relation to a crime of violence or possessing a firearm in furtherance of a crime of violence, and Royer's argument is that when his co-defendants used, carried, or possessed firearms, they were not, in fact, committing a crime of violence.  Therefore, Royer has appropriately presented a claim of actual innocence."); *United States v. Birdinground*, 2018 WL 3242294, at *10 (D. Mont. July 3, 2018) ("Birdinground is actually innocent. . . .  A defendant who uses or carries a firearm during and in relation to a crime that is neither a 'crime of violence' nor a 'drug trafficking crime' has not, in fact, violated § 924(c).") (Watters, J.); *United States v. Meza*, 2018 WL 2048899, at *7 (D. Mont. May 2, 2018) (same) (Christensen, C.J.).

> D. *The Court cannot "reform" Mr. Taylor's § 924(c) conviction predicated on conspiracy to commit a Hobbs Act robbery and convict him instead under § 924(c) predicated on a completed Hobbs Act robbery.*

The government also attempts to convince the Court that it has the authority and power to simply change the charge to which Mr. Taylor pled guilty to one that remains a crime.  The government posits that the Court can just strikethrough the word "conspiracy" in Mr. Taylor's conviction because completed Hobbs Act robbery is a "lesser included" of conspiracy to commit Hobbs Act robbery.  *See* ECF No. 89 at 14-15.  The government's argument ignores a core

principle of the Constitution's prohibition against placing a person twice in jeopardy for the same offense.

Since at least 1932, courts have determined whether offenses are separate offenses or lesser included offenses using the *Blockburger* test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not"). Conspiracy to commit a crime requires proof of the existence of an agreement to commit the crime while the completed crime requires proof of actual completion of the crime. Thus, conspiracy to commit a crime and committing the crime are two separate and distinct crimes. The completed crime is not a lesser included offense within a conspiracy. *See, e.g., United States v. Felix*, 503 U.S. 378, 389 (1992) ("long antedating any of these cases, and not questioned in any of them, is the rule that a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes"). The Court has no authority to "reform" or strikethrough the word conspiracy to change the crime for which Mr. Taylor has been convicted.

## CONCLUSION

Thus, Mr. Taylor asks the Court to grant his motion to vacate his conviction and sentence on Count Seven. Because the Court has already sentenced Mr. Taylor to the statutory maximum on Count Five, the remaining count in this case, no resentencing is necessary in this case.

Respectfully submitted,
JUSTIN EUGENE TAYLOR

By:            /s/
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884

**J.A. 144**

Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

**J.A. 145**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                                                      Criminal No. 3:08CR326

JUSTIN EUGENE TAYLOR,

    Petitioner.

## MEMORANDUM OPINION

Justin Eugene Taylor, a federal inmate proceeding with counsel, brings this successive

motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255

Motion," ECF No. 76).  Taylor contends that his firearm conviction and sentence are invalid

under *Johnson v. United States*, 135 S. Ct. 2551 (2015).  The Government filed a Motion to

Dismiss the § 2255 Motion, contending that the relevant statute of limitations bars relief.  (ECF

No. 81.)  The Court subsequently ordered further briefing.  In its Supplemental Memorandum,

the Government argues, *inter alia*, that Taylor's claim lacks merit.[1]  (ECF No. 89.)  Taylor filed

his Reply.  (ECF No. 92.)  As discussed below, the Court finds that Taylor's claim lacks merit

and may be dismissed on that ground.

## I.  Procedural History

On February 4, 2009, a grand jury charged Taylor with:  conspiracy to possess with intent

to distribute and distribute marijuana (Count One); attempted distribution of marijuana (Count

Two); possession of a firearm in furtherance of a drug trafficking crime (Count Three); use and

carry of a firearm during and in relation to a drug trafficking crime, to wit, attempting to

distribute marijuana as charged in Count Two (Count Four); conspiracy to interfere with

_____

[1] In addition to the timeliness arguments made in the Motion to Dismiss, the Government also argues that Taylor's claim is procedurally defaulted. (Supp'l Mem. 10–13.) The Court need not address this argument because the Court finds Taylor's claim lacks merit.

commerce by threats and violence ("Hobbs Act robbery") (Count Five); one count of attempting

to aid and abet Hobbs Act robbery (Count Six); and, use and carry of a firearm in furtherance of

a felony crime of violence, to wit, "conspiracy to interfere with commerce by armed robbery as

charged in Count Five and Interference with Commerce by Threats and Force as charged in

Count Six," in violation of 18 U.S.C. § 924(c) (Count Seven). (Sec. Super. Indictment 1–4, ECF

No. 17.) On February 13, 2009, Taylor pled guilty to Counts Five and Seven of the Second

Superseding Indictment. (Plea Agreement ¶ 1, ECF No. 31.) The Government agreed to dismiss

the other five counts. (*Id.* ¶ 12.)

In the Statement of Facts supporting his guilty plea to Counts Five and Seven, Taylor

agreed that following facts were true:

> Starting before January 1, 2012, and continuing through December 14, 2003, and thereafter, JUSTIN EUGENE TAYLOR conspired with others to distribute and possess with intent to distribute marijuana. In furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others, known and unknown, would obtain wholesale quantities of marijuana and distribute the marijuana to coconspirators for redistribution. Also, in furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others would arrange wholesale marijuana transactions and, rather than complete the transaction, would take the money from the customer, intentionally fail to distribute the marijuana to the customer, and use the money to finance their own drug trafficking business.
>
> Prior to August 14, 2003, JUSTIN EUGENE TAYLOR met with Martin Sylvester and Jonathan Hartzell. During that meeting JUSTIN EUGENE TAYLOR discussed his ability to supply Martin Sylvester with marijuana for redistribution and exchanged cell phone numbers with Sylvester.
>
> On August 14, 2003, JUSTIN EUGENE TAYLOR arranged to meet Martin Sylvester for the purpose of distributing marijuana to Sylvester so that Sylvester could redistribute the marijuana to others. Per their arrangements, JUSTIN EUGENE TAYLOR met Martin Sylvester and Jonathan Hartzell at the residence of a mutual acquaintance. JUSTIN EUGENE TAYLOR was driven in his car to the residence by his Coconspirator, who dropped off JUSTIN EUGENE TAYLOR without being seen. JUSTIN EUGENE TAYLOR met with Sylvester and Hartzell at the residence and then rode in Hartzell's car with Hartzell and Sylvester to the area of Hanover Avenue and North Lombardy Street, in the City of Richmond, Virginia, in order to obtain marijuana for Sylvester. Upon arriving at that area, JUSTIN EUGENE TAYLOR asked Sylvester for the money to pay for the marijuana, but Sylvester refused to give the money to JUSTIN EUGENE TAYLOR

**J.A. 147**

until he saw the marijuana. JUSTIN EUGENE TAYLOR left Hartzell's vehicle in order to obtain the marijuana, however, he was unable to do so.

JUSTIN EUGENE TAYLOR contacted his Coconspirator and the two of them devised a plan to steal the money that Sylvester had to purchase the marijuana. Pursuant to that plan, the Coconspirator, who was armed with a 9mm semiautomatic pistol, would pose as the drug dealer, meet with Sylvester and demand to see the purchase money. Upon Sylvester showing Coconspirator the money, the plan was for the Conspirator to take the money by force and flee the area with JUSTIN EUGENE TAYLOR, in JUSTIN EUGENE TAYLOR's car. JUSTIN EUGENE TAYLOR did not explicitly plan or agree to kill Martin Scott Silvester [sic].

Pursuant to this plan, the Coconspirator went to the alleyway located between Hanover and Grove Avenues, and North Lombardy and North Vine Streets. JUSTIN EUGENE TAYLOR called Sylvester and told him to meet the man in the alleyway to obtain the marijuana. JUSTIN EUGENE TAYLOR then went to his car to wait for the Coconspirator.

The Coconspirator met Sylvester in the alleyway, displayed the 9mm semiautomatic pistol and demanded Sylvester's marijuana purchase money. Martin Sylvester resisted, the pistol discharged and Martin Sylvester was fatally shot. Martin Sylvester died the next day from a gunshot wound.

The Coconspirator fled to JUSTIN EUGENE TAYLOR's care and the Conspirator and JUSTIN EUGENE TAYLOR fled the area.

(Statement of Facts ¶¶ 1–7 (paragraph numbers omitted).)[2]

On May 24, 2009, the Court entered judgment against Taylor and sentenced him to 240 months of imprisonment on Count Five, and 120 months of imprisonment on Count Seven, to run consecutively. (J. 3, ECF No. 44 (as paginated by CM/ECF).)

By Memorandum Opinion and Order entered on July 7, 2015, the Court denied on the merits Taylor's first § 2255 motion. (ECF Nos. 69, 70.) On June 24, 2016, the Fourth Circuit granted Taylor permission to file a successive § 2255 motion based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). (ECF No. 74.) On June 27, 2016, Taylor filed the instant § 2255 Motion. (ECF No. 76.)

---

[2] It appears that the Government may have spelled the victim's name wrong in the Statement of Facts as the Superseding Indictment spells the victim's name "Silvester" rather than "Sylvester." The Court spells the victim's name as the Government spells it in each document quoted here.

**J.A. 148**

## II. *Johnson v. United States*

In *Johnson v. United States*, the Supreme Court described the impact of the Armed Career Criminal Act "(ACCA")" on federal gun laws and noted that:

> Federal law forbids certain people—such as convicted felons, persons committed to mental institutions, and drug users—to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation[s] of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," the [ACCA] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1).

135 S. Ct. 2551, 2555 (2015) (citations omitted).

The ACCA defines a violent felony as: "any crime punishable by imprisonment for a term exceeding one year" and "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (emphasis added). "The closing words of this definition, italicized above, have come to be known as the Act's residual clause." *Johnson*, 135 S. Ct. at 2556. In *Johnson*, the Supreme Court held that the residual clause of the ACCA is unconstitutionally vague because the clause encompassed "conduct that presents a serious potential risk of physical injury to another," which defied clear definition. *Id.* at 2557–58 (citation omitted). Subsequently, in *Welch v. United States*, the Supreme Court held that "*Johnson* announced a substantive rule [of law] that has retroactive effect in cases on collateral review." 136 S. Ct. 1257, 1268 (2016).

## III. Analysis

Taylor asserts that the substantive rule announced in *Johnson* affords him relief. However, Taylor's claim lacks merit. *See United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.

4

1994) (noting that a district court may summarily dismiss a § 2255 motion where "files, and records 'show conclusively that the movant is not entitled to relief'" (quoting *United States v. Day*, 969 F.2d 39, 41–42 (3d Cir. 1992))). Taylor pled guilty to conspiracy to commit Hobbs Act robbery and using and carrying a firearm in furtherance of a felony crime of violence, to wit, "conspiracy to interfere with commerce by armed robbery as charged in Count Five and attempting to aid and abet Interference with Commerce by Threats and Force as charged in Count Six." (Sec. Super. Indictment 3–4.)[3] Taylor contends that, after *Johnson*, the offenses of attempting to aid and abet Hobbs Act robbery and conspiracy to commit Hobbs Act robbery can no longer qualify as a crime of violence under 18 U.S.C. § 924(c)(3), and thus the Court must vacate his conviction for Count Seven.[4] Taylor is incorrect.

At the time of Taylor's conviction, the United States could demonstrate that an underlying offense constituted a crime of violence if it established that the offense was a felony and satisfied one of two requirements. Namely, the statute defines a crime of violence as any felony:

(A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "Force Clause")], or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "Residual Clause")].

*Id.* § 924(c)(3). The Supreme Court recently invalidated the Residual Clause. *United States v.*

---

[3] Both Counts Five and Six arose from the robbery and killing of Martin Silvester on August 14, 2002. (Sec. Superseding Ind. 3–4.)

[4] Title 18 U.S.C. section 924(c)(1)(A) provides for consecutive periods of imprisonment when a defendant uses or carries a firearm in furtherance of a crime of violence. The baseline additional period of imprisonment is five years. 18 U.S.C. § 924(c)(1)(A)(i). If the defendant brandishes the firearm, the additional period of imprisonment increases to at least seven years. *Id.* § 924(c)(1)(A)(ii). And, if the defendant discharges the firearm, the additional period of imprisonment increases to at least ten years. *Id.* § 924(c)(1)(A)(iii).

5

**J.A. 150**

*Davis*, 139 S. Ct. 2319, 2336 (2019) (holding that "§ 924(c)(3)(B) is unconstitutionally vague").

Despite the invalidity of the Residual Clause, attempting to aid and abet Hobbs Act robbery

qualifies as a crime of violence under the Force Clause.

Here, Taylor's § 924(c) conviction was predicated on two counts: conspiracy to commit

Hobbs Act robbery as charged in Count Five *and* attempting to aid and abet Hobbs Act robbery

as charged in Count Six. (Indictment 4.) The Hobbs Act makes it a crime to obstruct, delay, or

affect commerce "by robbery" or to "attempt[ ] or conspire[ ] to do so" or to "commit[ ] or

threaten[ ] physical violence to any person or property in furtherance of a plan or purpose to do

anything in violation of this section. . . . " 18 U.S.C. § 1951(a). "Robbery" under the Hobbs Act

is defined as "the unlawful taking or obtaining of personal property" from a person "by means of

actual or threatened force, or violence, or fear of injury, immediate or future." *Id.* § 1951(b)(1).

Hobbs Act robbery remains a qualifying crime of violence under the Force Clause.

*United States v. Mathis*, --- F.3d ----, Nos. 16–4633, 16–4635, 16–4637, 16–4641, 16–4837, 16–

4838, 2019 WL 3437626, at *16 (4th Cir. July 31, 2019) (citations omitted) (holding that "Hobbs

Act robbery constitutes a crime of violence under the force clause of Section 924(c)"). Although

the Fourth Circuit has invalidated any reliance on *conspiracy* to commit Hobbs Act robbery as a

predicate crime of violence for § 924(c), *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019),

attempting to aid and abet Hobbs Act robbery constitutes a valid crime of violence under the

Force Clause because it invariably requires the actual, attempted, or threatened use of physical

force. *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018), *cert. denied*, 139 S. Ct.

1394 (2019) ("attempted Hobbs Act robbery qualifies as a crime of violence under

§ 924(c)(3)(A)'s use-of-force clause because that clause expressly includes 'attempted use' of

force"); *see Mathis*, 2019 WL 3437626, at *16; *see also In re Colon*, 826 F.3d 1301, 1305 (11th

6

J.A. 151

Cir. 2016) (because aiding and abetting presents an alternative charge that permits one to be found guilty as a principal, "conviction for aiding and abetting a Hobbs Act robbery qualifies as a 'crime of violence' under the § 924(c)(3)(A) use-of-force clause"). And because the substantive offense of Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," then an aider and abettor of a Hobbs Act robbery necessarily commits a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Accordingly, Taylor's conviction for attempted aiding and abetting a Hobbs Act robbery qualifies as a "crime of violence" under the § 924(c)(3)(A) Force Clause, without regard to the § 924(c)(3)(B) Residual Clause.

Thus, Taylor's conviction remains valid after *Johnson* and its progeny because it was predicated on attempting to aid and abet Hobbs Act robbery charged in Count Six. *See United States v. Doyle*, No. 2:18cr177, 2019 WL 3225705, at *3–4 (E.D. Va. July 17, 2019) (finding § 924(c) conviction valid when based on both conspiracy to commit Hobbs Act robbery and Hobbs Act robbery); *cf. United States v. Hare*, 820 F.3d 93, 105–06 (4th Cir. 2016) (explaining that "the court need not reach the merits of this argument . . . [because]" a § 924(c) conviction predicated on *both* conspiracy to commit Hobbs Act robbery and in furtherance of a drug trafficking crime is not affected by *Johnson*). Accordingly, Taylor's claim pursuant to *Johnson* lacks merit and will be DISMISSED.

### III. Conclusion

The § 2255 Motion (ECF No. 76) will be DENIED. The Government's Motion to Dismiss (ECF No. 81) will be DENIED as MOOT. Taylor's claim and the action will be DISMISSED.

7

J.A. 152

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Taylor has not satisfied this standard. Accordingly, a COA will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

_____
M. Hannah Lauck
United States District Judge

Date: August 26, 2019
Richmond, Virginia

8

**J.A. 153**



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**UNITED STATES OF AMERICA**

v.                                                                    **Criminal No. 3:08CR326**

**JUSTIN EUGENE TAYLOR,**

> Petitioner.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is ORDERED that:

1.     The § 2255 Motion (ECF No. 76) is DENIED;
2.     The Government's Motion to Dismiss (ECF No. 81) is DENIED AS MOOT;
3.     Taylor's claim is DISMISSED;
4.     The action is DISMISSED; and,
5.     A certificate of appealability is DENIED.

Taylor is advised that he may appeal the decision of this Court.  Should he wish to do so,

a written notice of appeal must be filed with the Clerk of the Court within sixty (60) days of the

date of entry hereof.  Failure to file a timely notice of appeal may result in the loss of the ability

to appeal.

The Clerk is DIRECTED to send a copy of the Memorandum Opinion and this Order to

Taylor and counsel of record.

It is so ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　M. Hannah Lauck
　　　　　　　　　　　　　　　　　United States District Judge

Date: August 24, 2019
Richmond, Virginia

**J.A. 154**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  Case No. 3:08cr326 |
| | ) |
| JUSTIN EUGENE TAYLOR, | ) |
| Defendant. | ) |

DEFENDANT'S NOTICE OF APPEAL

Defendant, by counsel, hereby notes his appeal to the United States Court of Appeals for the Fourth Circuit of the Judgment and Memorandum Opinion filed in this matter on August 26, 2019, denying his motion pursuant to 28 U.S.C. § 2255 (ECF Nos. 93 and 94).

Respectfully Submitted,
JUSTIN EUGENE TAYLOR

_____/s/_____
By Counsel

Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

**J.A. 155**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

**J.A. 156**

FILED: February 12, 2020

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-7616
(3:08-cr-00326-MHL-RCY-1; 3:16-cv-00508-MHL)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUSTIN EUGENE TAYLOR, a/k/a Mookie, a/k/a Mook,

Defendant - Appellant.

O R D E R

Justin Eugene Taylor seeks to appeal the district court's order denying relief on his 28 U.S.C. § 2255 (2018) motion.  We grant a certificate of appealability on the following issues: (1) whether an 18 U.S.C. § 924(c) (2018) conviction is subject to vacatur where the indictment charged multiple predicates, one of which is invalid; and (2) whether attempted Hobbs Act robbery, 18 U.S.C. § 1951(a) (2018), categorically qualifies as a predicate crime of violence for purposes of § 924(c).  The Clerk's Office will set a formal briefing schedule by separate order.

For the Court

/s/ Patricia S. Connor, Clerk

**J.A. 157**