IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-7616

UNITED STATES OF AMERICA,

*Appellee*,

v.

JUSTIN EUGENE TAYLOR,

*Appellant*.

Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond
*The Honorable M. Hannah Lauck, District Judge*

BRIEF OF THE UNITED STATES

G. Zachary Terwilliger
United States Attorney

Daniel T. Young
Assistant United States Attorney

Richard D. Cooke
Assistant United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
804-819-5400

*Attorneys for the United States of America*

**Table of Contents**

Page

Table of Authorities ................................................................................. iii

Introduction ..................................................................................................1

Issues Presented ..........................................................................................3

Statement of the Case...................................................................................3

Summary of Argument .................................................................................8

Argument.....................................................................................................10

Defendant was charged with and admitted in his guilty plea a valid
predicate for his conviction under 18 U.S.C. § 924(c), and he cannot
vacate that conviction now on collateral review ...........................................10

1.    Attempted Hobbs Act robbery qualifies as a crime of violence
      under § 924(c)(3)(A) .............................................................................11

2.    Defendant's guilty plea must be treated as validly supported by
      attempted Hobbs Act robbery given that he was charged with
      attempted Hobbs Act robbery as a predicate for the § 924(c) and
      admitted that predicate in his guilty plea ............................................21

      A.  Defendant carries the burden of showing a violation ..................21

      B.  Defendant carries the burden of showing that any constitutional
          violation harmed him .................................................................23

      C.  Defendant must overcome his procedural default ......................23

      D.  Defendant's effort to use the categorical approach to treat his
          § 924(c) conviction as necessarily resting on Hobbs Act
          conspiracy is unpersuasive.........................................................41

i

E.  If this Court agrees that defendant is entitled to relief, the appropriate remedy under § 2255 should be left for the district court on remand...............................................................47

Conclusion ...............................................................................................47

Statement Regarding Oral Argument ......................................................48

Certificate of Compliance .......................................................................49

## Table of Authorities

*Adams v. United States*, 2019 WL 4735407 (D. Md. Sept. 27, 2019) ...................28

*Ambrose v. Booker*, 684 F.3d 638 (6th Cir. 2012) .................................................37

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ................................... 37, 39, 41, 43

*Blakely v. Washington*, 542 U.S. 296 (2004) ........................................................44

*Bousley v. United States*, 523 U.S. 614 (1998) ................................. 21, 23, 24, 30

*Bradshaw v. Stumpf*, 545 U.S. 175 (2005) ...........................................................35

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ........................................................22

*Castellon v. United States*, 2020 WL 400634 (W.D.N.C. Jan. 23, 2020) .............28

*Chaney v. United States*, 917 F.3d 895 (6th Cir. 2019) ........................................13

*Class v. United States*, 138 S. Ct. 798 (2018) ......................................................44

*Clinchfield Coal Co. v. Harris*, 149 F.3d 307 (4th Cir. 1998) .............................17

*Davis v. Ayala*, 135 S. Ct. 2187 (2015) ................................................................23

*Davis v. United States*, 411 U.S. 233 (1973) ........................................................37

*Dugger v. Adams*, 489 U.S. 401 (1989) ................................................................40

*Engle v. Isaac*, 456 U.S. 107 (1982) .....................................................................38

*Ferone v. United States*, 2020 WL 520945 (W.D.N.C. Jan. 31, 2020) .................28

*Francis v. Henderson*, 425 U.S. 536 (1976) .........................................................37

*Frizzell v. Hopkins*, 87 F.3d 1019 (8th Cir. 1996) ...............................................40

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) ..............................................20

*Griffin v. United States*, 502 U.S. 46 (1991) ........................................................29

*Griggs v. Maryland*, 263 F.3d 355 (4th Cir. 2001) ..............................................19

*Hawk v. Olson*, 326 U.S. 271 (1945) ....................................................................22

*Healthkeepers, Inc. v. Rich. Ambulance Auth.*, 642 F.3d 466 (4th Cir. 2011) .......17

*Henderson v. Morgan*, 426 U.S. 637 (1976) .........................................................35

*Herrera v. Collins*, 506 U.S. 390 (1993) ..............................................................28

*Hill v. United States*, 877 F.3d 717 (7th Cir. 2017) .............................................13

*Hurst v. Florida*, 136 S. Ct. 616 (2016) ...............................................................44

*In re Colon*, 826 F.3d 1301 (11th Cir. 2016) ........................................................20

*Johnson v. United States*, 559 U.S. 133 (2010) ....................................................18

*Long v. United States*, 1998 WL 887272 (6th Cir. Dec. 10, 1998) .......................27

*Malgeri v. United States*, 1996 WL 343049 (1st Cir. June 4, 1996) .....................35

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013) ..............................................17

*McDaniel v. Brown*, 558 U.S. 120 (2010) ............................................................19

*Miller v. United States*, 261 F.2d 546 (4th Cir. 1958) ..........................................21

*Murray v. Carrier*, 477 U.S. 478 (1986) ..............................................................40

*Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990) .............................17

*Parke v. Raley*, 506 U.S. 20 (1992) ......................................................................22

*Reed v. Ross*, 468 U.S. 1, 16–17 (1984) ...............................................................38

*Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018) ......................................16

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ....................................................23

*Schlup v. Delo*, 513 U.S. 298 (1995) ........................................................28

*Sekhar v. United States*, 570 U.S. 729 (2013) .............................................11

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) ...............................................39

*Smith v. Murray*, 477 U.S. 527 (1986) ......................................................39

*Smith v. United States*, 930 F.3d 978 (8th Cir. 2019) ............................... 39, 41

*Suttles-Barden v. United States*, 2020 WL 1061222 (W.D.N.C. Mar. 4, 2020) ....28

*Thornburg v. Mullin*, 422 F.3d 1113 (10th Cir. 2005) ....................................37

*United States v. Anzaldo-Casillas*, 1997 WL 415337 (9th Cir. July 24, 1997) ......34

*United States v. Bailey*, 34 U.S. (9 Pet.) 238 (1835) ....................................18

*United States v. Booker*, 543 U.S. 220 (2005) .............................................46

*United States v. Brayboy*, 789 F. App'x 384 (4th Cir. 2020) .............................20

*United States v. Brown*, 2020 WL 1966845 (6th Cir. Apr. 24, 2020) ...................22

*United States v. Cannady*, 283 F.3d 641 (4th Cir. 2002) .................................36

*United States v. Castleman*, 572 U.S. 157 (2014) .........................................18

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) .................................41

*United States v. Collins*, 2020 WL 1528268 (4th Cir. Mar. 31, 2020) .................14

*United States v. Crawford*, 932 F. Supp. 748 (E.D. Va. 1996) ...........................35

*United States v. Davis*, 139 S. Ct. 2319 (2019) .........................................8, 21

*United States v. D.D.B.*, 903 F.3d 684 (7th Cir. 2018) ..................................14

*United States v. Deiter*, 890 F.3d 1203 (10th Cir. 2018) ................................20

*United States v. Dinkins*, 928 F.3d 349 (4th Cir. 2019) .................................20

*United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020) .............................13

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) .................................36

*United States v. Dozier*, 848 F.3d 180 (4th Cir. 2017) ........................... 11, 13, 16

*United States v. Dyess*, 730 F.3d 354 (4th Cir. 2013) ...................................37

*United States v. Engle*, 676 F.3d 405 (4th Cir. 2012) ...................................16

*United States v. Frady*, 456 U.S. 152 (1982) .............................................22

*United States v. Fugit*, 703 F.3d 248 (4th Cir. 2012) ............................... 10, 23

*United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012) ...................................10

*United States v. Garcia*, 1998 WL 101767 (4th Cir. Mar. 9, 1998) ......................34

*United States v. Garcia-Ortiz*, 904 F.3d 102 (1st Cir. 2018) ...........................20

*United States v. Grissom*, 760 F. App'x 448 (7th Cir. 2019) .............................20

*United States v. Hadden*, 475 F.3d 652 (4th Cir. 2007) ..................................47

*United States v. Hare*, 820 F.3d 93 (4th Cir. 2016) .....................................25

*United States v. Harold*, 1997 WL 256687 (5th Cir. Apr. 4, 1997) ......................34

*United States v. Harris*, 890 F.3d 480 (4th Cir. 2018) ..................................33

*United States v. Holland*, 749 F. App'x 162 (4th Cir. 2018) .............................14

*United States v. Ingram*, 947 F.3d 1021 (7th Cir. 2020) .................................12

*United States v. Johnson*, 420 F. Supp. 3d 462 (E.D. Va. 2019) ............................47

*United States v. Johnson*, 688 F. App'x 404 (8th Cir. 2017) ...................................13

*United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005) ...........................................46

*United States v. Lane*, 474 U.S. 438 (1986) ...........................................................23

*United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005) ............................... 24, 46

*United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020) (en banc) ........................33

*United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) ...........................................11

*United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994) ..........................................33

*United States v. McCoy*, 895 F.3d 358 (4th Cir. 2018) ...........................................33

*United States v. McKelvey*, 773 F. App'x 74 (3d Cir. 2019) ...................................20

*United States v. McNamara*, 74 F.3d 514 (4th Cir. 1996) .......................................40

*United States v. Merkeley*, 2000 WL 745347 (10th Cir. May 25, 2000) ................34

*United States v. Mitchell*, 104 F.3d 649 (4th Cir. 1997) ............................. 26, 27, 28

*United States v. Moye*, 454 F.3d 390 (4th Cir. 2006) (en banc) .............................28

*United States v. Neely*, 763 F. App'x 770 (10th Cir. 2019) ....................................13

*United States v. Pettiford*, 612 F.3d 270 (4th Cir. 2010).................................. 19, 21

*United States v. Powell*, 666 F.3d 180 (4th Cir. 2011) ............................................19

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) ..........................................11

*United States v. Richardson*, 948 F.3d 733 (6th Cir. 2020) .....................................20

*United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001) ..........................................39

*United States v. Smith*, 2020 WL 2078390 (5th Cir. Apr. 30, 2020) ......................13

*United States v. Smith*, 723 F.3d 510 (4th Cir. 2013) ..............................................23

*United States v. Smith*, 241 F.3d 546 (7th Cir. 2001) ..............................................39

*United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018) ............................. 13, 14

*United States v. St. Hubert*, 918 F.3d 1174 (11th Cir. 2019) ..................................14

*United States v. Still*, 102 F.3d 118 (5th Cir. 1996) ................................................36

*United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008) ................................................10

*United States v. Stubbs*, 2000 WL 1174656, (10th Cir. Aug. 18, 2000) ................27

*United States v. Taylor*, 2019 WL 4018340 (E.D. Va. Aug. 26, 2019) ..................28

*United States v. Talebnejad*, 460 F.3d 563 (4th Cir. 2006) .....................................19

*United States v. Thrower*, 914 F.3d 770 (2d Cir. 2019) ..........................................13

*United States v. Toney*, 2020 WL 1951651 (N.D. Ind. Apr. 23, 2020) ..................47

*United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc) .............................41

*United States v. Villegas*, 777 F. App'x 660 (4th Cir. 2019) ........................... 14, 25

*Van Bui v. United States*, 2020 WL 1979330 (E.D. Va. Apr. 24, 2020) ................28

*Voisine v. United States*, 136 S. Ct. 2272 (2016) ...................................................18

*Wynn v. United States*, 2020 WL 1875646, (W.D.N.C. Apr. 15, 2020) ................28

**Statutes**

18 U.S.C. § 924(c) ...................................................................................... *passim*

18 U.S.C. § 1951 ................................................................................4
21 U.S.C. § 846 .................................................................................4
28 U.S.C. § 2255 ....................................................................... *passim*

**Federal Rules**

Fed. R. App. P. 22 ............................................................................10
Fed. R. Evid. 106 ......................................................................................

**Local Rules**

Local Rule 22 ..................................................................................10

**Other Sources**

Black's Law Dictionary (11th ed. 2019) ...........................................12
Model Penal Code § 5.01(1) ............................................................16

## Introduction

Defendant Justin Eugene Taylor conspired with others from at least January 1, 2002, through December 14, 2003, to distribute marijuana. During the conspiracy, defendant would obtain wholesale quantities of marijuana and resell it to other drug traffickers for redistribution. Defendant also chose to further his drug trafficking by setting up a wholesale drug transaction and then robbing the buyer. Defendant's guilty plea to the challenged conviction under 18 U.S.C. § 924(c) here arose from a robbery that ended with the buyer being shot to death.

On August 14, 2003, defendant met Martin Sylvester and Jonathan Hartzell to sell them marijuana. When defendant asked Sylvester for the money for the drugs, Sylvester refused to pay until he saw the marijuana. Defendant left, was unable to obtain the marijuana, and instead planned with a coconspirator to pretend to deliver the drugs and rob Sylvester. To carry out the plan, the coconspirator, who was armed with a 9mm semiautomatic pistol, would pose as a drug dealer, and demand to see the purchase money. At that point, the coconspirator would take the money by force and flee with defendant. But the plan took an even more violent turn.

When defendant directed Sylvester to the coconspirator, who was waiting in an alley in Richmond, Virginia, the coconspirator displayed the 9mm pistol and

1

demanded Sylvester's money, as planned. But then a struggle ensued, and Sylvester was fatally shot.

Defendant was indicted with seven counts, including drug-trafficking offenses, Hobbs Act violations, and three violations of 18 U.S.C. § 924(c). Two of the § 924(c) counts relied on drug-trafficking predicates arising from the drug conspiracy. One of the § 924(c) counts—count seven—relied on two separate Hobbs Act predicates—namely, conspiracy to commit Hobbs Act robbery, which was charged in count five, and attempted Hobbs Act robbery, which was charged in count six.

Defendant ultimately pleaded guilty to one § 924(c), as charged in count seven, and conspiracy to commit Hobbs Act robbery, as charged in count five. In the statement of facts for his guilty plea, however, defendant admitted both predicate offenses for the § 924(c) count—both the conspiracy and attempted Hobbs Act robbery. At his plea colloquy, the district court noted that the statement of facts "does indeed outline each of the essential elements of the offenses," A24, and defendant personally agreed that "the information contained in the Statement of Facts is true and accurate," A25.

In return for defendant's guilty plea, the United States dismissed the other counts, including the other two § 924(c) counts. Defendant also received in the

2

plea agreement immunity in federal and state court for further prosecution for the killing of Sylvester.

The district court imposed a total sentence of 240 months on count five and 120 months on count seven, to be served consecutively.

In denying defendant's authorized successive motion under 28 U.S.C. § 2255, the district court held that defendant could not validly vacate his § 924(c) count. Every circuit to consider the question has held, in agreement with the district court, that attempted Hobbs Act robbery satisfies § 924(c)(3)(A) and is a valid predicate. Given that count seven charged defendant with attempted Hobbs Act robbery as a predicate, and that defendant admitted that offense, defendant cannot show that he is entitled to vacate his guilty plea to that count.

### Issues Presented

1. Does attempted Hobbs Act robbery satisfy § 924(c)(3)(A), as every circuit to consider the question has held?

2. May defendant receive relief for a procedurally defaulted challenge to his § 924(c) count in a successive § 2255 when the indictment charged, and he admitted, a valid predicate offense for that count?

### Statement of the Case

A second superseding indictment returned on February 4, 2009, charged defendant with seven counts:

3

| | |
|---|---|
| Count one | Conspiring to possess with intent to distribute and distribute marijuana, from January 1, 2002, to December 14, 2004, in violation of 21 U.S.C. § 846. |
| Count two: | Attempting to distribute marijuana on August 14, 2003, in violation of 21 U.S.C. § 846. |
| Count three: | Possessing a firearm in furtherance of a drug trafficking crime from January 1, 2002, to December 14, 2004, in violation of 18 U.S.C. § 924(c). |
| Count four: | Using and carrying a firearm during and in relation to a drug-trafficking crime on August 14, 2003, in violation of 18 U.S.C. § 924(c). |
| Count five: | Conspiring to commit Hobbs Act robbery on August 14, 2003, in violation of 18 U.S.C. § 1951. |
| Count six: | Attempting Hobbs Act robbery on August 14, 2003, in violation of 18 U.S.C. § 1951. |
| Count seven: | Using and carrying a firearm during and in relation to a crime of violence on August 14, 2003, in violation of 18 U.S.C. § 924(c). |

A11–14.

Count seven identified two predicate crimes of violence—the conspiracy offense charged in count five and the attempted Hobbs Act robbery charged in count six. A14. Count seven read as follows: "On or about August 14, 2003, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendant, JUSTIN EUGENE TAYLOR, a.k.a. 'Mookie,' a.k.a. 'Mook,' did knowingly and unlawfully use and carry a firearm during and in relation to a felony crime of violence, to wit: conspiracy to interfere with commerce by armed

4

robbery as charged in Count Five and Interference with Commerce by Threats and Force as charged in Count Six.  (In violation of Title 18, United States Code, Section 924(c)).”  A13–14.

Defendant ultimately entered into a plea agreement in which he pleaded guilty to counts five and seven.  In return, the other counts were dismissed, and defendant received immunity from further federal and state prosecution.  A21, 40.

In pleading guilty, defendant agreed at the plea colloquy before the district court that his “signature here on this Statement of Facts not only [confirms] that you have read and understood it, but also, that to the best of your knowledge, the information contained in the Statement of Facts is true and accurate.”  A24-25.  Defendant also agreed that he had personally reviewed the plea agreement.  A19.  His plea agreement likewise provided that “defendant will plead guilty because the defendant is in fact guilty of the charged offenses.  The defendant admits the facts set forth in the statement of facts filed with this plea agreement and agrees that those facts establish guilt of the offenses charged beyond a reasonable doubt.”  A33.

Defendant’s statement of facts read in full as follows:

The parties stipulate that the allegations in Counts Five and Seven of the pending Second Superseding Indictment *and* the following facts are true and correct and that *had the matter gone to trial the United States could have proven each of them beyond a reasonable doubt*.

5

1. Starting before January 1, 2002, and continuing through December 14, 2003, and thereafter, JUSTIN EUGENE TAYLOR conspired with others to distribute and possess with the intent to distribute marijuana. In furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others, known and unknown, would obtain wholesale quantities of marijuana and distribute the marijuana to coconspirators for redistribution. Also in furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others would arrange wholesale marijuana transactions and, rather than complete the transaction, would take the money from the customer, intentionally fail to distribute the marijuana to the customer, and use the money to finance their own drug trafficking business.

2. Prior to August 14, 2003, JUSTIN EUGENE TAYLOR met Martin Sylvester and Jonathan Hartzell. During that meeting, JUSTIN EUGENE TAYLOR discussed his ability to supply Martin Sylvester with marijuana for redistribution and exchanged cell phone numbers with Sylvester.

3. On August 14, 2003, JUSTIN EUGENE TAYLOR arranged to meet Martin Sylvester for the purpose of distributing marijuana to Sylvester so that Sylvester could redistribute the marijuana to others. Per their arrangements, JUSTIN EUGENE TAYLOR met Martin Sylvester and Jonathan Hartzell at the residence of a mutual acquaintance. JUSTIN EUGENE TAYLOR was driven in his car to the residence by his Coconspirator, who dropped off JUSTIN EUGENE TAYLOR without being seen. JUSTIN EUGENE TAYLOR met with Sylvester and Hartzell at the residence and then rode in Hartzell's car with Hartzell and Sylvester to the area of Hanover Avenue and North Lombardy Street, in the City of Richmond, Virginia, in order to obtain marijuana for Sylvester. Upon arriving at that area, JUSTIN EUGENE TAYLOR asked Sylvester for the money to pay for the marijuana, but Sylvester refused to give the money to JUSTIN EUGENE TAYLOR until he saw the marijuana. JUSTIN EUGENE TAYLOR left Hartzell's vehicle in order to obtain the marijuana, however, he was unable to do so.

4. JUSTIN EUGENE TAYLOR contacted his Coconspirator and the two of them devised a plan to steal the money that Sylvester had to purchase the marijuana. Pursuant to that plan, the Coconspirator, who was armed with a 9mm semiautomatic pistol, would pose as the drug dealer, meet with Sylvester and demand to see the purchase money. Upon Sylvester showing the Coconspirator the money, the plan was for the Coconspirator to take the

money by force and flee the area with JUSTIN EUGENE TAYLOR, in JUSTIN EUGENE TAYLOR's car.  JUSTIN EUGENE TAYLOR did not explicitly plan or agree to kill Martin Scott S[y]lvester.

5. Pursuant to this plan, the Coconspirator went to the alleyway located between Hanover and Grove Avenues, and North Lombardy and North Vine Streets. JUSTIN EUGENE TAYLOR called Sylvester and told him to meet the man in the alleyway to obtain the marijuana.  JUSTIN EUGENE TAYLOR then went to his car to wait for the Coconspirator.

6. The Coconspirator met Sylvester in the alleyway, displayed the 9mm semiautomatic pistol and demanded Sylvester's marijuana purchase money. Martin Sylvester resisted, the pistol discharged and Martin Sylvester was fatally shot.  Martin Sylvester died the next day from the gunshot wound.

7. The Coconspirator fled to JUSTIN EUGENE TAYLOR's car and the Coconspirator and JUSTIN EUGENE TAYLOR fled the area.  The actions taken by the defendant as described above, were done willfully and knowingly with the specific intent to violate the law.  The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

A48–50.

After defendant entered his guilty plea, he was sentenced on May 14, 2009, to 240 months on count five and 120 months, to run consecutively, on count seven, yielding a total term of imprisonment of 360 months.  A6.  Defendant also received a three-year term of supervised release.  *Id.*

On May 19, 2009, defendant filed a notice of appeal.  But after the United States filed a motion to dismiss the appeal, asserting the appellate waiver that

defendant accepted in his plea agreement, this Court dismissed defendant's direct appeal on January 7, 2011. A7.

Defendant filed his first motion under § 2255 in 2012, and the district court denied the motion on July 7, 2015. A8.

On June 24, 2016, this Court authorized a successive § 2255, permitting defendant to file a § 2255 attacking his conviction under § 924(c). A59. After the United States filed a motion to dismiss under § 2255(f)(3), the district court held the case until May 6, 2019, when the court ordered further briefing in light of *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc). A9. The court then stayed the case pending the Supreme Court's ruling in *United States v. Davis*, 139 S. Ct. 2319 (2019). The United States filed a supplemental response after *Davis* was decided, A10, and once defendant filed a reply, the district court denied defendant's § 2255, concluding that his § 924(c) conviction rests on a valid predicate offense, attempted Hobbs Act robbery. A10. Defendant appealed, and this Court granted defendant a certificate of appealability. A157.

### Summary of Argument

Attempted Hobbs Act robbery satisfies § 924(c)(3)(A). Every court of appeals to address the question has so held. This Court has already held that Hobbs Act robbery satisfies § 924(c)(3)(A), and the question therefore becomes whether attempted Hobbs Act robbery also qualifies. When Congress used the

8

word "attempt" in § 924(c)(3)(A), Congress adopted the federal meaning of attempts. Thus, "attempt" in § 924(c)(3)(A) matches "attempts" in the Hobbs Act. That conclusion follows from canons of statutory interpretation and the great weight of precedent. Section 924(c)(3)(A) applies to federal offenses only, and to read the "attempt" language in § 924(c)(3)(A) as reaching no federal attempt crimes would rob the attempt language in § 924(c)(3)(A) from having any independent meaning. This case well illustrates why Congress included attempt crimes in defining crimes of violence. The gunpoint robbery here actually resulted in death even if the robbery itself was unsuccessful.

Given that attempted Hobbs Act robbery satisfies § 924(c)(3)(A), defendant is not entitled to relief. Multiple legal doctrines and lines of precedent support that basic conclusion. Because defendant admitted in his guilty plea that he participated in an attempted Hobbs Act robbery and that the firearm was used during and in relation to that attempted Hobbs Act robbery, he cannot establish a right to vacate his conviction. Defendant received significant benefits from his guilty plea by avoiding other convictions, and he admitted that he committed the valid § 924(c) offense to which he pleaded guilty.

**Argument**

**Defendant was charged with and admitted in his guilty plea a valid predicate for his conviction under 18 U.S.C. § 924(c), and he cannot vacate that conviction now on collateral review.**

Once a defendant receives a certificate of appealability (COA) in an appeal of the denial of a motion under 28 U.S.C. § 2255, this Court reviews a district court's legal interpretations de novo and factual findings for clear error. *See, e.g., United States v. Fulks*, 683 F.3d 512, 516 (4th Cir. 2012) (citing *United States v. Stitt*, 552 F.3d 345, 350 (4th Cir. 2008)). Although a defendant may not expand a COA without satisfying Fed. R. App. P. 22(b) and Local Rule 22(a), the United States may defend a judgment on a ground, such as procedural default, not relied on by the district court and does not have to obtain a COA. *See, e.g., United States v. Fugit*, 703 F.3d 248, 257-58 (4th Cir. 2012); Fed. R. App. P. 22(b)(3).

As explained below, defendant's guilty plea to the § 924(c) count must be treated as validly supported by attempted Hobbs Act robbery as a predicate, and attempted Hobbs Act robbery satisfies § 924(c)(3)(A). Defendant fails to meet his burden for obtaining relief under § 2255(h)(2).

The United States' discussion below begins with the threshold issue of whether defendant's § 924(c) count has a valid predicate crime of violence. As explained below, his § 924(c) count does because attempted Hobbs Act robbery satisfies § 924(c)(3)(A).

10

## 1. Attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A).

Defendant's argument that attempted Hobbs Act robbery is not a force-clause crime of violence fails on its merits. Substantive Hobbs Act robbery is a force-clause crime of violence. *See United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019). Because attempted Hobbs Act robbery requires the specific intent to use force and a substantial step toward that end, it constitutes an "attempted use … of physical force" under § 924(c)(3)(A).

As a matter of plain text, § 924(c)(3)(A) designates offenses as "crimes of violence" if they have, as an element, not only the actual "use" of force but also the "attempted use" and the "threatened use of physical force" as independent criteria. An attempt has a well-settled meaning at federal and common law: it encompasses both the specific intent "to commit the completed offense" and "'an overt act' that constitutes a 'substantial step' toward completing the offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 106–09 (2007); *see also United States v. Dozier*, 848 F.3d 180, 186 (4th Cir. 2017). Congress undoubtedly had this meaning in mind when determining the scope it wished to give § 924(c)(3)(A). *See, e.g.*, *Sekhar v. United States*, 570 U.S. 729, 732–33 (2013) ("It is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses."). Consistent with the foregoing, Black's Law Dictionary defines "attempt" in the criminal law—the

11

relevant context here—as "[a]n overt act that is done with the intent to commit a crime but that falls short of completing the crime." Black's Law Dictionary (11th ed. 2019). That definition fits perfectly with the unanimous views of every court of appeals to address this question and this Court's consistent approach in unpublished opinions. It also resolves the issue in this appeal. When a defendant attempts to commit Hobbs Act robbery, he intends to use force but his actions fall short of completing that goal. He has therefore attempted to use force, thereby satisfying the relevant prong of § 924(c)(3)(A).

Thus, applying the categorical approach to an attempt to commit a substantive crime of violence is straightforward. Under established statutory principles, an attempted use of violent physical force means (a) the specific intent to use such force and (b) an overt act in that direction. And, by definition, any attempt to commit a crime of violence requires both the specific intent to commit it (and thus the intent to employ the violent, physical force in that offense) and an overt act toward completing that crime. Because these sets of elements match, an attempt to commit a substantive crime of violence is an "attempted use … of physical force" and satisfies § 924(c)(3)(A).

The plain text is borne out in judicial application. Every circuit to have considered the issue has held that attempted Hobbs Act robbery constitutes a crime of violence on this reasoning. *See, e.g.*, *United States v. Ingram*, 947 F.3d 1021,

1025–26 (7th Cir. 2020) (attempted Hobbs Act robbery); *United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020) (attempted Hobbs Act robbery); *United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018) (attempted Hobbs Act robbery), *cert. denied*, 139 S. Ct. 1394 (2019); *see also United States v. Smith*, — F.3d —, 2020 WL 2078390 (5th Cir. Apr. 30, 2020) (applying this reasoning to federal attempted murder). Likewise, every circuit considering state attempt predicates has used this reasoning to conclude that, where state attempt law matches or is narrower than federal attempt law, any attempt to commit a substantive offense involving the use of violent force is itself an attempted use of violent force. *See, e.g.*, *United States v. Thrower*, 914 F.3d 770, 776–77 (2d Cir.) (attempted New York robbery), *cert. denied*, 140 S. Ct. 305 (2019); *Chaney v. United States*, 917 F.3d 895, 904 (6th Cir.) (attempted Michigan robbery), *cert. denied*, 140 S. Ct. 265 (2019); *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017) (attempted Illinois murder); *see also United States v. Neely*, 763 F. App'x 770, 780 (10th Cir.) (attempted Nevada battery resulting in substantial harm), *cert. denied*, 140 S. Ct. 90 (2019); *United States v. Johnson*, 688 F. App'x 404, 406 (8th Cir. 2017) (attempted Minnesota aggravated robbery).[1] Indeed, this Court has done so three

---

[1] In cases involving state predicates, courts add a step to determine whether the state's definition of an "attempt" matches—or is narrower than—generic federal attempt. *See, e.g.*, *Dozier*, 848 F.3d at 186–87 (applying this approach for controlled substance offenses under the career-offender Guideline); *cf. Thrower*, 914 F.3d at 776–77 (noting that New York attempt law is narrower than a federal

times in unpublished opinions. *See United States v. Collins*, — F. App'x —, No. 18-4525, 2020 WL 1528268 (4th Cir. Mar. 31, 2020) (attempted New York first-degree assault); *United States v. Villegas*, 777 F. App'x 660, 661 (4th Cir. 2019) (attempted Virginia murder); *United States v. Holland*, 749 F. App'x 162, 166 (4th Cir. 2018) (attempted North Carolina assault with a deadly weapon with intent to kill).

A few judges have dissented from this reasoning, but the unanimous precedential opinions have the better statutory interpretation. *See, e.g.*, *Dominguez*, 954 F.3d at 1262 (Nguyen, J., dissenting in part); *United States v. St. Hubert*, 918 F.3d 1174, 1210 (11th Cir. 2019) (Jill Pryor, J., dissenting from denial of rehearing en banc). The dissenting judges argue that one can intend to commit a crime that involves the use of force and take a substantial step in that direction without it necessarily being an attempt to use violent force. *See, e.g.*, *Dominguez*, 954 F.3d at 1262–63; *St. Hubert*, 918 F.3d at 1212.

As an initial matter, § 924(c)(3)(A) on its face encompasses crimes that do not require force be actually used because it reaches crimes involving either an

---

attempt). Where a state adopts a broader definition of attempt than federal law, a court has found that there is no categorical match. *See United States v. D.D.B.*, 903 F.3d 684, 693 (7th Cir. 2018) (holding that because Indiana attempt lacks an intent element, attempted Indiana robbery is not an attempted use of force). Of course, that step is unnecessary under § 924(c), which encompasses only federal predicates and therefore only federal attempts.

14

"attempted" or "threatened" use of violent force. *Cf. St. Hubert*, 918 F.3d at 1212 (Jill Pryor, J., dissenting) (acknowledging that "actual force need not be used for a crime to qualify as a crime of violence"). Thus, § 924(c)(3)(A) does not exclude substantial steps because the substantial step itself need not always involves violent force. Section 924(c)(3)(A) does not look solely at the substantial step, and the dissenting judges erroneously seek to distinguish an attempt to commit a substantive crime of violence from an attempted use of force. For example, the *Dominguez* dissent posits that a man who drives towards a target he intends to rob but "returns home after seeing police in the vicinity" has committed attempted Hobbs Act robbery but has not attempted to use force. *Dominguez*, 954 F.3d at 1263. In doing so, the dissent distinguished between a robber pulling a trigger when the gun jams—which it found constitutes an attempted use of force—and the scenario where the man turns around. *Id.* at 1263–64; *see also St. Hubert*, 918 F.3d at 1212 (using similar hypothetical).

But these distinctions are fundamentally inconsistent with federal attempt law. For example, in making its argument, the *Dominguez* dissent relies on a dictionary definition of "attempt," describing it as "a defendant's physical act of trying (but failing) to use violent physical force." 954 F.3d at 1264. But use of a dictionary definition to interpret such a well-established common-law term of art is contrary to canons of construction. *See Sekhar*, 570 U.S. at 732–33. And under

15

federal law, an "attempt" encompasses more conduct than simply trying and failing. *Compare* Model Penal Code § 5.01(1)(a) and (b) (describing conduct involving a person's unsuccessful conduct that would otherwise complete the crime), *with id.* § 5.01(1)(c) (describing attempts accomplished by specific intent and a substantial step). Nothing in § 924(c)(3)(A) suggested that an "attempted use" is so limited.

To support an attempt conviction, a defendant must take, at minimum, a purposeful "substantial step in a course of conduct planned to culminate in [the offender's] commission of the crime." Model Penal Code § 5.01(1)(c). Relying on the Model Penal Code, this Court has described a substantial step as "a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose." *Dozier*, 848 F.3d at 186 (quoting *United States v. Engle*, 676 F.3d 405, 423 (4th Cir. 2012)). By definition, therefore, the defendant's purposeful conduct must be "planned to culminate in" a completed crime involving the use of violent force. Any substantial step toward completing the crime is necessarily a purposeful and planned substantial step toward the completed use of force. That is all the statute requires to constitute an "attempted use … of physical force." § 924(c)(3)(A).

Importantly, the dissenting judges' interpretation would render the "attempted use" language a nullity. *See Rubin v. Islamic Republic of Iran*, 138 S.

16

Ct. 816, 824 (2018) (noting that "one of the most basic interpretive canons" is "that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"). Courts should interpret statutes such "that all language in the statute should be given full effect." *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471–72 (4th Cir. 2011) (quoting *Clinchfield Coal Co. v. Harris*, 149 F.3d 307, 313 (4th Cir. 1998)). For this reason, courts should have "deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." *Id.* (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990)). Under the dissents' reasoning, *no* attempt crime would ever constitute a crime of violence, because there would always be a theoretical gap between a substantial step toward the crime's completion and a substantial step toward the use of force. That framework leaves the statutory clause addressing attempt without any effect at all; a completed crime will typically involve only the actual use of force or a threat to use force, both covered by § 924(c)(3)(A)'s other definitional components. It is by far the better statutory construction to conclude that Congress specifically intended the "attempted use" clause to encompass inchoate attempts to commit substantive crimes of violence. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (noting "the canon against surplusage is strongest when an

interpretation would render superfluous another part of the same statutory scheme").

The Supreme Court has found that a common-law definition of force was not incorporated into a statute when doing so produced a "comical misfit with the defined term." *Johnson v. United States*, 559 U.S. 133, 140 (2010). But *Johnson* supports applying the common-law meaning when it "fits perfectly" within a statutory scheme. *United States v. Castleman*, 572 U.S. 157, 163 (2014). And applying the federal meaning of "attempt" to a criminal statute designed to reach federal crimes "fits perfectly," while refusing to apply the federal meaning of "attempt" to § 924(c)(3)(A) leaves the attempt language reaching no crimes at all. Congress should be presumed to use the word "attempt" in § 924(c)(3)(A) in the same way that Congress uses "attempt" elsewhere in federal criminal law, for "Congress must be presumed to have legislated under this known state of the laws." *Voisine v. United States*, 136 S. Ct. 2272, 2280 (2016) (quoting *United States v. Bailey*, 34 U.S. (9 Pet.) 238, 256 (1835) (Story, J.)). The Supreme Court has declined to construe a term classifying offenses when doing so would fail to reach many states' laws. *Voisine*, 136 S. Ct. at 2280–81 (citing *Castleman*, 572 U.S. at 167). Here, refusing to interpret "attempt" in § 924(c)(3)(A) as reaching federal attempts leaves both leaves *all* federal attempt crimes outside § 924(c)(3)(A) and results in the language having *no* application. That cannot be a

18

correct reading of the statute, as it would fail "to give effect to Congress's clearly express intent." *United States v. Talebnejad*, 460 F.3d 563, 568 (4th Cir. 2006).

This Court should continue to adhere to the uniform view of the federal circuits that an attempt to commit a substantive crime of violence is itself an "attempted use … of physical force" within the meaning of the force clause. And because this Court established that completed Hobbs Act robbery is a crime of violence in *Mathis*, defendant's attempted Hobbs Act robbery conviction remains a valid predicate.

Finally, defendant did not contend in the district court or now on appeal that his § 924(c) conviction is invalid because it relied on aiding and abetting liability. "[A]n argument not presented to the federal district court in a habeas petition is forfeited and cannot be advanced at the merits stage, on appeal." *United States v. Pettiford*, 612 F.3d 270, 281 (4th Cir. 2010) (citing *McDaniel v. Brown*, 558 U.S. 120, 136 (2010) (per curiam)). Moreover, by not raising the argument on appeal, he has waived any such claim. *United States v. Powell*, 666 F.3d 180, 185 n.4 (4th Cir. 2011). The issue is also outside the certificate of appealability that this Court granted, and this Court should "decline to amend the certificate of appealability to include" it. *Griggs v. Maryland*, 263 F.3d 355, 359 n.2 (4th Cir. 2001).

But the argument is meritless in any event. "Because an aider and abettor is responsible for the acts of the principal as a matter of law, an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal Hobbs Act robbery." *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016). Thus, "an aider and abettor of a Hobbs Act robbery necessarily commits a crime that 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *Id.*

This Court recently confirmed that accessory liability for a crime of violence is itself a crime of violence, rejecting a defendant's argument that § 924(e)(2)(B)(ii) requires "that the defendant himself used the necessary force." *United States v. Dinkins*, 928 F.3d 349, 359 (4th Cir. 2019); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189–90 (2007) (noting that "every jurisdiction" has abolished distinctions between principals and aiders and abettors and concluding aiding and abetting thus matched the generic definition of theft). As this Court explained in *United States v. Brayboy*, 789 F. App'x 384, 385 (4th Cir. 2020), other circuits to have addressed this question agree. *See, e.g.*, *United States v. Richardson*, 948 F.3d 733, 741–42 (6th Cir. 2020); *United States v. Garcia-Ortiz*, 904 F.3d 102, 109 (1st Cir. 2018); *United States v. Deiter*, 890 F.3d 1203, 1215–16 (10th Cir. 2018); *see also United States v. McKelvey*, 773 F. App'x 74, 75 (3d Cir. 2019); *United States v. Grissom*, 760 F. App'x 448, 454 (7th Cir. 2019).

**2.** **Defendant's guilty plea must be treated as validly supported by attempted Hobbs Act robbery given that he was charged with attempted Hobbs Act robbery as a predicate for the § 924(c) and admitted that predicate in his guilty plea.**

Defendant faces a series of procedural hurdles on collateral review to establishing his right to vacate his § 924(c) count because it also included as a predicate conspiracy to commit Hobbs Act robbery, which is no longer a valid predicate after the Supreme Court invalidated § 924(c)(3)(B) in *United States v. Davis*, 139 S. Ct. 2319 (2019). Defendant must overcome three interlocking hurdles on collateral review—(1) he carries the burden of showing a constitutional violation, (2) he carries the burden of showing harm from any violation, and (3) he must overcome his procedural default of this claim. The United States outlines below these three doctrines and then explains why defendant fails to overcome these hurdles. Briefly, defendant was charged with and admitted the attempted Hobbs Act robbery as a predicate, which establishes a valid offense, and defendant cannot show that he would have withdrawn from the plea, which gave him immunity from further prosecution and allowed him to avoid successive § 924(c) offenses.

### A. *Defendant carries the burden of showing a violation.*

A defendant seeking relief under § 2255 bears the burden of establishing a constitutional violation. Collateral review "is an extraordinary remedy" that "will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S.

21

614, 621 (1998) (citation omitted).  Once direct review is completed, "a presumption of finality and legality attaches to the conviction and sentence," *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (citation omitted), and courts are "entitled to presume" that the defendant's conviction and sentence are lawful, *United States v. Frady*, 456 U.S. 152, 164 (1982).  That "presumption of regularity … makes it appropriate to assign a proof burden to the defendant" on collateral review.  *Parke v. Raley*, 506 U.S. 20, 31 (1992); *see Hawk v. Olson*, 326 U.S. 271, 279 (1945) (explaining that a prisoner necessarily "carries the burden in a collateral attack on a judgment").

This Court and other courts have agreed that a defendant carries the burden of showing a constitutional violation.  *See, e.g., Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) ("[T]he district court must determine whether the [§ 2255 movant] has met his burden of showing that this sentence is unlawful on one of the specified grounds."); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon the petitioner to establish by a preponderance of evidence that he did not intelligently waive his right to assistance of counsel."); *United States v. Brown*, — F.3d —, 2020 WL 1966845, at *8 (6th Cir. Apr. 24, 2020) ("A petitioner bears the burden of proof in a § 2255 proceeding, so

Brown must show by a preponderance of the evidence that his three aggravated-burglary convictions did not occur on different occasions.").

**B.** ***Defendant carries the burden of showing that any constitutional violation harmed him.***

Similarly, a defendant must show that a constitutional error resulted in harm on collateral review. *See, e.g., United States v. Smith*, 723 F.3d 510, 512 (4th Cir. 2013) (citing *Brecht*, 507 U.S. at 623); *cf. Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("In a collateral proceeding, the test is different. For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *Brecht*, 507 U.S. at 637; *United States v. Lane*, 474 U.S. 438, 449 (1986)).

**C.** ***Defendant must overcome his procedural default***

By not raising his constitutional attack on count seven before his conviction became final, the defendant procedurally defaulted it. *Bousley*, 523 U.S. at 621–22; *Fugit*, 703 F.3d at 253–54; *United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009). That default "may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom." *Fugit*, 703 F.3d at 253 (quoting *Bousley*, 523 U.S. at 621). The defendant cannot satisfy either standard.

### i. *The defendant cannot demonstrate actual innocence.*

The defendant is not actually innocent of violating § 924(c). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Defendant cannot make this showing. Even acknowledging that conspiracy to commit Hobbs Act robbery is now an invalid predicate, the statement of facts makes clear that the firearm in this case was used during and in relation to the attempted Hobbs Act robbery, a valid predicate under § 924(c)(3)(A). Because that predicate validly supports a conviction under § 924(c), defendant is not actually innocent.

In pleading guilty, the defendant agreed that his statement of facts was true and accurate. A24-25. Those admissions are binding on collateral review—so much so that any contrary allegations would be "palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005).

The grand jury here returned an indictment specifying that the defendant violated § 924(c) in relation to both the conspiracy and the attempted Hobbs Act robbery offenses charged in counts five and six. There is no constructive-

24

amendment or *Bousley* problem in concluding that, if one of those predicates is invalid, the § 924(c) conviction may permissibly rest on another. And indeed, this Court has already held that only one valid predicate is necessary to support a § 924(c) conviction. In *United States v. Hare*, 820 F.3d 93 (4th Cir. 2016), this Court considered a case in which a § 924(c) conviction rested on both a robbery predicate and a drug-trafficking predicate. The jury completed a special verdict form indicating that the government proved both predicate offenses. *Hare* concluded that it need not reach the issue of whether Hobbs Act robbery was a "crime of violence" under § 924(c) because the drug-trafficking predicate alone was sufficient to support the conviction. *See id.* at 105–06.

This Court has repeatedly ruled in keeping with *Hare*. *See, e.g., United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019) (upholding § 924(c) conviction under plain error where jury found both conspiracy to commit Hobbs Act robbery and aiding and abetting Hobbs Act robbery as predicates); *United States v. Cannon*, 778 F. App'x 259, 260-61 (4th Cir. 2019) ("The § 924(c) count to which he pled guilty was predicated not only on conspiracy but also on substantive Hobbs Act robbery that Cannon committed on April 27, 2015; and his stipulated statement of facts established he committed that substantive offense."); *United States v. Walker*, 789 F. App'x 241, 244-45 (2d Cir. 2019) (unpublished) (same); *cf. United States v. Villegas*, 777 F. App'x 660, 661 (4th Cir. 2019)

(upholding § 924(c) conviction with two predicates, one valid and the other not).

Indeed, a predicate offense need not be charged separately for a § 924(c) violation. *Cf. United States v. Hopkins*, 310 F.3d 145, 152-53 (4th Cir. 2002) (affirming § 924(c) conviction for assault with weapon in violation of 18 U.S.C. § 111(b), even though jury convicted defendant only of lesser included of § 111(a), assault without weapon).

Another Fourth Circuit case, *United States v. Mitchell*, 104 F.3d 649 (4th Cir. 1997), illustrates how to apply *Hare*'s logic in the context of guilty pleas. There, the Fourth Circuit considered the effect of *Bailey v. United States*, 516 U.S. 137 (1995), where the Supreme Court narrowed the meaning of "using" a firearm under § 924(c), on the validity of a guilty plea. More specifically, the defendant in *Mitchell* challenged his guilty plea on direct appeal, arguing that his plea was invalid because it lacked an adequate factual basis to establish that he "used" a firearm in the manner required by *Bailey*. In resolving that claim, *Mitchell* observed that § 924(c) criminalizes both using *and carrying* a firearm during and in relation to a drug-trafficking crime. Then, *Mitchell* simply reviewed the plea record to determine if the defendant had both used and carried a firearm. It explained the applicable legal standards this way:

> In order to comply with Rule 11(f), a district court need not replicate the trial that the parties sought to avoid. Rather, it need only be subjectively satisfied that there is a sufficient factual basis for a

26

conclusion that the defendant committed all of the elements of the offense. The district court possesses wide discretion in determining whether a sufficient factual basis exists, and its acceptance of a guilty plea will be reversed only for an abuse of that discretion. And, if the evidence presented is sufficient to demonstrate that the defendant committed the elements of the charged offense, acceptance of the plea clearly does not constitute an abuse of discretion.

*Id.* at 652 (internal citations omitted). Under these rules, the plea in *Mitchell* was valid. As this Court put it, "the record developed before the district court was adequate to support a conclusion that Mitchell 'carried' the firearm," since "[h]e knowingly possessed and transported the firearm in his automobile." *Id.* at 654.

While *Mitchell* arose in the context of a direct-appeal challenge to the factual basis supporting a guilty plea, its reasoning applies equally to an actual-innocence inquiry. *See, e.g.*, *Long v. United States*, No. 97-3609, 1998 WL 887272, at *1–2 (6th Cir. Dec. 10, 1998) (holding that a defendant could not show actual innocence to overcome a procedural default, and thereby challenge his guilty plea post-*Bailey*, where he could not establish his factual innocence as to both using and carrying the firearm); *United States v. Stubbs*, No. 99-5230, 2000 WL 1174656, at *2 (10th Cir. Aug. 18, 2000) (same).

Here, the evidence presented in the statement of facts establishes that the defendant is criminally liable for the use of a firearm during and in relation to the attempted Hobbs Act robbery. Because the plea record "is sufficient to demonstrate that the defendant committed the elements of the charged offense,"

*Mitchell*, 104 F.3d at 654, defendant cannot show that he is actually innocent.[2]

If a defendant has defaulted an attack on his guilty plea, he can only raise that attack on collateral review by passing through either the actual-innocence or the cause-and-prejudice gateway. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995) (stating that a "claim of innocence is … 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits'" (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))). Just as, post-*Bailey*, defendants bringing defaulted challenges to their guilty pleas had to demonstrate actual innocence of both using and carrying firearms (provided that both forms of conduct were charged in the indictment), this defendant must be able to demonstrate actual innocence of the attempted Hobbs Act robbery predicate. Because the actual-innocence inquiry is antecedent to any challenge to the plea, the Court need not

---

[2] Several jurists in this Circuit have concluded that a defendant's guilty plea to a § 924(c) count with multiple predicates is valid so long as one predicate remains valid. *See, e.g.*, *Van Bui v. United States*, No. 1:05-cr-300 (LMB), 2020 WL 1979330, at *7 (E.D. Va. Apr. 24, 2020); *Wynn v. United States*, No. 3:16-cr-74 (MOC), 2020 WL 1875646, at *4–5 (W.D.N.C. Apr. 15, 2020); *Suttles-Barden v. United States*, No. 3:12-cr-146 (FDW), 2020 WL 1061222, at *4–5 (W.D.N.C. Mar. 4, 2020); *Ferone v. United States*, No. 5:12-cr-37 (KDB), 2020 WL 520945, at *5–6 (W.D.N.C. Jan. 31, 2020); *Castellon v. United States*, No. 3:08-cr-134 (RJC), 2020 WL 400634, at *3–5 (W.D.N.C. Jan. 23, 2020); *Adams v. United States*, No. 12-cr-300 (DKC), 2019 WL 4735407, at *2 (D. Md. Sept. 27, 2019); *United States v. Taylor*, No. 3:08-cr-326 (MHL), 2019 WL 4018340, at *4–5 (E.D. Va. Aug. 26, 2019).

reach the merits of such a challenge at all if the defendant cannot overcome his procedural default.

A defendant does not plead guilty to a predicate alone; he pleads guilty to the overarching offense. So long as that plea is valid, the adequacy of the factual basis supporting the plea—including any alternative predicates—simply turns on the contents of the plea record. To put it another way, there is no such thing as a voluntariness challenge to an alternative theory of liability. So long as the plea itself was voluntary, the sufficiency of any alternative theory of liability is just a factual question answered by reference to the plea record as a whole. The inquiry is therefore analogous to a sufficiency-of-the-evidence review where a single count rests on multiple factual theories of liability. In those circumstances, courts simply review the trial record to determine if the evidence was sufficient as to any one of the alternative theories. *See Griffin v. United States*, 502 U.S. 46, 56–57 (1991); *see also United States v. Moye*, 454 F.3d 390, 401 (4th Cir. 2006) (en banc) (stating that, so long as there is sufficient evidence supporting one of several alternative factual theories of liability, "*Griffin* prevents [an appellate court] from tampering with the jury's verdict").

So too here. The Court can simply review the plea record—including the statement of facts—to determine whether the defendant remains guilty on any of the alternative theories of violating § 924(c) charged in the indictment. The

29

statement of facts, in turn, makes it clear that the defendant remains liable for the attempted Hobbs Act robbery predicate.  That forecloses the defendant from showing that he is actually innocent.

Defendant fails to show actual innocence for another reason as well.  Under *Bousley*, an actual-innocence showing must extend to any more serious charge foregone by the government as part of the plea.  523 U.S. at 624.  As the Seventh and D.C. Circuits have explained, this requirement logically extends to equally serious charges as well.  *See United States v. Caso*, 723 F.3d 215, 220–22 (D.C. Cir. 2013); *Lewis v. Peterson*, 329 F.3d 934, 936 (7th Cir 2003).

The Seventh Circuit's *Lewis* decision is instructive.  The defendant there filed a habeas petition arguing that his conviction for violating § 924(c) was no longer valid after *Bailey v. United States*, 516 U.S. 137 (1995), narrowed the meaning of "using" a firearm for purposes of violating that statute.  More specifically, the defendant argued that, post-*Bailey*, he was actually innocent within the meaning of *Bousley*.  The Seventh Circuit disagreed.  It emphasized *Bousley*'s directive that, in order to be actually innocent, a defendant must "prove[] that he is innocent both of the section 924(c) offense of which he was convicted (the 'actual innocence' requirement imposed on defaulters) and of any 'more serious' charge that the government dropped or otherwise forwent in the course of plea negotiations."  329 F.3d at 936 (quoting *Bousley*, 523 U.S. at 623–24).  As

30

part of the defendant's plea bargain, the government had dropped a second, valid § 924(c) charge. The Seventh Circuit held that the defendant's inability to show that he was actually innocent of the second, dropped § 924(c) charge doomed his habeas claim. In doing so, it explained *Bousley*'s actual-innocence logic this way:

> The idea behind this rule is that had the government foreseen *Bailey* it would not have dropped the charge and so the petitioner, who we know wanted to plead guilty, would probably have pleaded guilty to that charge instead, and if it was a more serious charge (or we add, no less serious a charge) he would probably have incurred a lawful punishment no less severe than the one imposed on him under the count to which he pleaded guilty, the count that he was later determined to be innocent of by virtue of the Court's interpretation of section 924(c) in *Bailey*.

> Of course, it could not be said with certainty that his punishment would have been the same. A defendant may want to plead guilty whether there are two counts in the indictment or one, but if he learns that one is invalid he may hold out for a better deal on the other, since, for example, he doesn't have to worry about consecutive sentences. This is a possibility, surely, but to allow the defendant to use it to get off scot free would be to confer a windfall on him, as the government would not have dropped a good count in plea negotiations had it known that the remaining count was invalid, and if the dropped charge was indeed a good count, the defendant would not have escaped punishment had it not been dropped, punishment at least comparable to that imposed on the bad count.

*Id.* (paragraph break added). In short, *Lewis* explained that where the government had dropped a valid § 924(c) charge as part of plea negotiations, the defendant could not show that he was actually innocent even if the § 924(c) conviction challenged in his habeas petition was no longer valid. Any other result would

31

grant an illogical "windfall" to the defendant, a result the Seventh Circuit squarely rejected.

Indeed, on these facts, recourse to the logic of *Lewis* and *Caso* is not even necessary. The United States dismissed two § 924(c) counts, and the *second* § 924(c) offense dismissed in exchange for the plea would have been *more* serious (because it would have resulted in 300 months of additional incarceration beyond the sentence imposed by the district court). Under *Bousley*, defendant's inability to show actual innocence with respect to the foregone charges necessarily dooms his habeas claim.

This Court's decision in *United States v. Adams*, 814 F.3d 178 (4th Cir. 2016), is not to the contrary. There, the Court rejected the argument that a *Bousley* actual-innocence showing extends to *all* dismissed counts. Instead, it adopted a "conduct-based approach." *Id.* at 184. Under this approach, "a defendant making a claim of actual innocence after a negotiated guilty plea must show that he is factually innocent of the underlying criminal conduct"—for example, "use of a firearm in *Bousley*" itself. *Id.* Applying a conduct-based approach here does not aid defendant, for the relevant dismissed charges meet *Adams*'s test.

> ii. **The defendant cannot show prejudice to overcome his procedural default under the cause-and-prejudice standard.**

The defendant also cannot show cause and prejudice for his default.

Because both cause *and* prejudice must be established, the United States will address first the prejudice inquiry, for that forecloses defendant's claim in much the same way that the actual-innocence inquiry foreclosed his claim.

> ### a. No error occurred in the defendant's plea proceedings.

The defendant cannot establish prejudice because no error occurred in his plea proceedings. When a defendant has "not attempt[ed] to withdraw his guilty plea in the district court, [this Court] review[s] his plea challenge for plain error." *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc) (citing *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018)). A defendant satisfies the plain-error standard by demonstrating "(1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018). On collateral review, the prejudice standard is more exacting still. *See Frady*, 456 U.S. at 166 (rejecting "use of the 'plain error' standard to review [a] § 2255 motion" and stating "that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal"); *accord United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994) ("hold[ing] that the *Frady* cause and prejudice standard applies to … collateral challenges to unappealed guilty pleas").

Under these standards, defendant must show an error in the plea proceedings

33

themselves. But in addressing analogous claims, this Court has concluded that, if a plea record supports a finding of guilt on one of several alternative theories of liability, no Rule 11 error occurred.

This Court considered this issue in *United States v. Garcia*, No. 97-6175, 1998 WL 101767 (4th Cir. Mar. 9, 1998) (per curiam), where it rejected a post-*Bailey* collateral attack on the knowingness and voluntariness of a guilty plea. The defendant there argued that he did not "use" a firearm within the meaning of *Bailey*, but this Court reviewed the plea record and concluded that the defendant did "carry" a firearm within the meaning of § 924(c). *See id.* at *1 (citing *Mitchell*, 104 F.3d at 652). Without addressing procedural default or actual innocence, *Garcia* analyzed the collateral attack on the plea this way:

> [T]his is not a case where the petitioner pled guilty to conduct which was not criminal. Had someone been able to correctly explain to Garcia the meaning of "use" under § 924(c) at the time he pled guilty, it would have been clear that his conduct was criminal. Garcia's plea was therefore entered knowingly and voluntarily. Moreover, we find that the district court did not abuse its discretion in finding a sufficient factual basis for Garcia's plea. Hence, Garcia fails to establish any violation, much less a prejudicial violation, of Federal Rule of Criminal Procedure 11.

*Id.* (internal citations omitted).[3] District court have correctly adopted the same

---

[3] Several other courts approached post-*Bailey* challenges to guilty pleas in the same way. *See United States v. Merkeley*, No. 99-4169, 2000 WL 745347 (10th Cir. May 25, 2000); *United States v. Anzaldo-Casillas*, No. 96-36201, 1997 WL 415337 (9th Cir. July 24, 1997); *United States v. Harold*, No. 96-11288, 1997 WL

approach to resolving a post-*Bailey* collateral attack in *United States v. Crawford*, 932 F. Supp. 748 (E.D. Va. 1996). There, the court concluded that a defendant could not show the requisite prejudice to escape his procedural default where, notwithstanding *Bailey*, he pleaded guilty to both using *and* carrying a firearm. As the court put it:

> Defendant's guilty plea … was not based on a misunderstanding of the law as it relates to the facts. This is because the law, as it relates to the facts in defendant's case, is unaffected by the Supreme Court's decision in *Bailey*. Accordingly, defendant cannot show any prejudice from his failure to raise the narrowed interpretation of section 924(c)(1) articulated in *Bailey* prior to his sentencing.

*Id.* at 752. Under *Crawford*'s logic, there was also no error here. In light of the other valid predicates supporting the defendant's plea, he entered that plea with an adequate understanding of the law in relation to the relevant facts. The plea therefore remains valid. *Cf. Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (district court not required to explain offense elements in plea colloquy when relying on defense counsel's sufficient explanation of those elements) (citing *Henderson v. Morgan*, 426 U.S. 637, 647 (1976)).

> b. *Any error did not affect the defendant's substantial rights.*

The defendant also cannot show prejudice for a second reason. When

---

256687 (5th Cir. Apr. 4, 1997); *Malgeri v. United States*, No. 95-2136, 1996 WL 343049 (1st Cir. June 4, 1996) (per curiam).

raising a forfeited attack on a guilty plea, a defendant must demonstrate that an error affected his substantial rights (or establish prejudice on collateral review) by "show[ing] a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). A defendant must satisfy this standard even if he establishes that the district court committed an error in his plea colloquy. *See, e.g.*, *United States v. Cannady*, 283 F.3d 641, 647–48 (4th Cir. 2002). Here, the defendant cannot make the requisite showing.

First, if the indictment had charged a violation of § 924(c) based on only the attempted Hobbs Act robbery, omitting the conspiracy to commit Hobbs Act robbery entirely, nothing would have changed. Defendant would have faced the same statutory sentencing range and exactly the same guideline range. Likewise, by entering into the plea agreement, defendant obtained immunity from state prosecution for the felony murder, and he obtained dismissal of successive § 924(c) counts, as well as the other drug-trafficking counts. These were significant benefits, and defendant bears the burden of showing that he would have gone to trial and given up the benefits of his plea agreement if he had known that one of the two charged predicates is not a crime of violence. *Cf. United States v. Still*, 102 F.3d 118, 124–25 (5th Cir. 1996) (holding that the district court did not abuse its discretion in declining to permit a defendant to withdraw his guilty plea

post-*Bailey* where, in pleading guilty, the defendant "admitted both to using and to carrying a firearm during and in relation to a drug trafficking crime" such that he could not "persuasively argue that *Bailey* would have affected his willingness to plead guilty").

Defendant cannot meet his burden of showing harm. *See, e.g., Francis v. Henderson*, 425 U.S. 536, 542 (1976); *Davis v. United States*, 411 U.S. 233, 245 (1973); *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012); *Thornburg v. Mullin*, 422 F.3d 1113, 1141 (10th Cir. 2005).

> c.      *If the defendant had raised his* Davis *claim earlier, the government simply would have corrected the error in the indictment.*

First, if the defendant had raised his claim earlier, the government would simply have corrected the error. In *United States v. Dyess*, 730 F.3d 354 (4th Cir. 2013), for example, this Court considered whether the defendant could show prejudice arising from the purportedly ineffective assistance of his counsel in failing to raise an *Apprendi* claim based on the absence of required drug weights in an indictment. This Court answered "no." It reasoned that "Dyess … [could not] show that any (assumed) deficient performance by trial counsel prejudiced him," because "if Dyess had raised [an *Apprendi* objection to his indictment], the Government could have simply issued a superseding indictment with drug weights or proceeded under a criminal information." 730 F.3d at 363–64.

37

The same logic applies here.  Had the defendant raised his claim of *Davis* error—that is, had he argued that conspiracy to commit Hobbs Act robbery was not a "crime of violence"—the government would simply have obtained a superseding indictment (or filed a criminal information) revising count seven so that it rested only on the attempted Hobbs Act robbery predicate.  To put it another way, *Dyess* stands for the proposition that a technical charging error is not a basis for finding prejudice on collateral review when the underlying factual record is otherwise sufficient to support the conviction.

### iii.     *Defendant cannot show cause for his procedural default*

Even if defendant were able to show prejudice, he would also have to show cause for his procedural default.  One way to establish cause would be to argue that the Supreme Court's *Johnson* jurisprudence (culminating in *Davis*) was so novel that no reasonable litigant would have thought to challenge a § 924(c) conviction on vagueness grounds.  But the Supreme Court has already explained that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'"  *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).  To the extent that an exception to this rule exists for truly novel claims, *see Reed v. Ross*, 468 U.S. 1, 16–17 (1984), that exception is too narrow to accommodate the defendant's case.

In determining whether a claim is novel enough to establish cause for a

procedural default, the relevant inquiry is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986).

Any novelty argument here is incompatible with both *Bousley* and binding Circuit precedent. In *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001), for example, the Fourth Circuit concluded that an *Apprendi* claim was not novel enough to excuse a procedural default, favorably citing a Seventh Circuit case reaching the same conclusion as to a defendant sentenced in 1992, a full eight years before *Apprendi* was decided. *Id.* at 145–46 (citing *United States v. Smith*, 241 F.3d 546 (7th Cir. 2001)). *Sanders* cautioned that liberally construing arguments as novel enough to satisfy the cause-and-prejudice exception to procedural default would threaten to a create a world in which "[c]ollateral review would come … to serve as an all-purposive receptacle for claims which in hindsight appear more promising than they did at the time of trial." *Id.* at 146.

The same reasoning applies here. Indeed, as Justice Gorsuch pointed out in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), courts have been striking down or refusing to apply criminal statutes on vagueness grounds since the early 1800s. *See id.* at 1225–27 (Gorsuch, J., concurring). Had the defendant wanted to raise such a claim about his § 924(c) conviction, he was entirely capable of doing so—

39

just like a defendant who wanted to raise an *Apprendi*-style claim in 1992. *Accord Dugger v. Adams*, 489 U.S. 401, 409–10 (1989) (concluding that a claim was not novel where "the legal basis for a challenge was plainly available"); *Frizzell v. Hopkins*, 87 F.3d 1019, 1021 (8th Cir. 1996) ("If the tools were available for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." (citation and internal quotation marks omitted)). Consistent with *Sanders*, the defendant's failure to raise such a claim earlier is not excusable on novelty grounds. *But see United States v. Bennerman*, 785 F. App'x 958, 963 (4th Cir. 2019) (finding *Johnson* challenge to a sentence under the Armed Career Criminal Act was not reasonably available to defendant at the time of defendant's sentencing); *cf. James v. United States*, 550 U.S. 192, 230–231 & n.7 (2007) (Scalia, J., dissenting, arguing residual clause is unconstitutionally vague).

Another way to establish cause for a procedural default would be to show that defense counsel performed deficiently by failing to raise a particular claim. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). While the defendant has not yet linked his *Davis* claim to a claim of ineffective assistance of plea counsel, the government notes that doing so in an attempt to overcome his procedural default would be unavailing. The general rule is that "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient." *United States v. McNamara*,

74 F.3d 514, 516 (4th Cir. 1996); *see also Dyess*, 730 F.3d at 363 (holding that a defense attorney's failure to anticipate *Apprendi* did not constitute deficient performance). That principle applies equally to *Johnson* claims. *See, e.g.*, *Smith v. United States*, 930 F.3d 978, 982 (8th Cir.), *cert. denied*, 140 S. Ct. 547 (2019) (holding that defense counsel did not render deficient performance by failing to anticipate *Johnson*).

### D. Defendant's effort to use the categorical approach to treat his § 924(c) conviction as necessarily resting on Hobbs Act conspiracy is unpersuasive.

Defendant argues that this Court must assess any post-*Davis* challenge to a § 924(c) guilty plea with alternative predicates by reference to *United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc), and *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012). But those cases do not aid him.

In *Vann*, this Court evaluated a defendant's guilty pleas to a North Carolina indecent-liberties statute to determine whether he had committed three violent felonies under the Armed Career Criminal Act. 660 F.3d at 772. The North Carolina statute had two prongs, only one of which qualified as a violent felony, and the charging instruments did not specify which prong the defendant allegedly violated. *Vann* concluded that an enhancement was improper because the government could not show that the defendant had pleaded guilty to violating the prong of the statute constituting a violent felony. It reasoned that, even though the

41

relevant charging instruments listed both prongs conjunctively, "a guilty plea admits all the elements of a formal criminal charge," and "[t]he formal criminal charge … is nothing more than the least serious of the disjunctive statutory conduct, not the entirety of the conduct alleged in the conjunctive." *Id.* at 775 (internal quotation marks omitted).

Then, in *Chapman*, this Court applied *Vann* in a different context. *Chapman* involved a Second Amendment challenge to a conviction under 18 U.S.C. § 922(g)(8). In evaluating that claim, this Court confronted the fact that § 922(g)(8) has two sub-sections, and it was not clear from the defendant's guilty plea which he had violated. *Chapman* resolved the issue by looking to *Vann*. It stated that "when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct." 666 F.3d at 228. The Fourth Circuit then decided which of § 922(g)(8)'s prongs was "less serious" and evaluated the defendant's constitutional claim as an attack on that prong alone.

Invoking *Vann* and *Chapman*, defendant makes the following argument:

- Under *Vann* and *Chapman*, I only admitted in my guilty plea to violating § 924(c) in relation to the least serious predicate offense.

- One of my predicates is now invalid.

42

- A § 924(c) conviction based on an invalid predicate is a nullity and would result in zero jail time. Therefore, the invalid predicate is the "least serious" offense to which I pleaded guilty.

*Vann* and *Chapman* are inapposite for multiple reasons. First, those cases addressed convictions to statutes with discrete sub-offenses. But § 924(c) describes only one crime. A defendant who pleads guilty to violating § 924(c) is guilty of the same offense irrespective of the predicate supporting the conviction.

Second, in *Vann*, this Court compared the situation to trials by jury where "it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced—*in the absence of a special verdict identifying the factual bases for conviction*—to a term of imprisonment exceeding the statutory maximum for the 'least-punished' of the disjunctive statutory conduct." *Id.* (emphasis added).

But cases like *Vann* and the authority that it cites do not address a scenario where the defendant expressly admits in an accompanying statement of facts all of the facts that show his guilty plea is supported two distinct theories of guilt. To take a simple example, if a defendant expressly admitted to conspiring to distribute both a kilogram of crack cocaine *and* a kilogram of marijuana, the defendant would have, under *Vann*, made factual admissions that are the equivalent of a "special verdict," establishing defendant's guilt for the higher statutory penalty range for the crack cocaine. Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

43

"a judge may impose any sentence authorized 'on the basis of the facts reflected in the jury verdict or admitted by the defendant.'" *Hurst v. Florida*, 136 S. Ct. 616, 623 (2016) (quoting *Blakely v. Washington*, 542 U.S. 296, 303 (2004)). *Cf. Class v. United States*, 138 S. Ct. 798, 804-05 (2018) (a guilty plea waives "case-related constitutional defects that occurred prior to the entry of the guilty plea" and that could "have been cured through a new indictment."). In short, *Vann* did not deal with a scenario where a defendant admitted in pleading guilty to conspiring to distribute both the kilogram of marijuana and the kilogram of crack, and likewise, *Vann* did not address a scenario where a defendant expressly admitted the facts supporting a valid § 924(c) predicate and then claims that the § 924(c) lacks a valid predicate.

Defendant should not be better off than a defendant who went to trial and had both predicates submitted to the jury. In that scenario, as in *Hare*, this Court would affirm. Under Supreme Court precedent, an "alternative-theory error is subject to ordinary harmlessness review, and the relevant appellate inquiry is whether the error was harmless beyond a reasonable doubt." *United States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012) (citing *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (per curiam)). As this Court's opinion in *Steward* demonstrated, when the record establishes that the jury would have validly convicted a defendant under § 924(c) even absent a challenged predicate offense, this Court has affirmed.

44

To use another example, a defendant who pleads guilty to conspiring to rob and murder a person and then enters a guilty where he admits that he agreed both to rob and then murder someone cannot claim that his guilty plea must be limited to a conspiracy to rob on the theory that the robbery object is less serious.  It is not impossible to plead guilty to a multiple-object conspiracy, and guilty pleas to multiple-object conspiracies are not automatically, by operation of law, reduced to the least serious object when a defendant expressly admits all of the objects.

Moreover, defendant's theory makes no sense in the context of this case.  He says that a court must assume that he admitted the least-serious alternative predicate offense.  But defendant offers no basis for saying that conspiracy to commit Hobbs Act robbery is less serious than substantive Hobbs Act robbery.  Both offenses have the same statutory penalty range and in the context of this case deal with the same offense conduct, and both predicates independently support the same conviction for violating § 924(c).  In characterizing the conspiracy offense as the less serious offense, defendant apparently seeks to rely on the invalidation of § 924(c)(3)(B), not anything that makes the conspiracy offense itself less serious to admit.  But defendant identifies no authority that supports such reasoning for deeming the conspiracy offense less serious.  Defendant also seeks to characterize by fiat his plea as being limited to conspiracy.  But the factual admissions in defendant's statement of facts for his guilty plea directly contradict his effort to

45

limit his admissions.  In short, defendant's legal arguments contravene both binding precedent and the content of his own admissions, *see United States v. Lemaster*, 403 F.3d 216, 220-21 (4th Cir. 2005), and must be rejected.

Defendant's argument also fails to account for the relevant doctrinal question, which is whether, in the absence of the purported error, the defendant would have pleaded guilty anyway.  For the reasons already discussed, defendant had compelling reasons to plead guilty.  This points to another problem.

Defendants invoking *Vann* and *Chapman* have argued that an invalid predicate, such as conspiracy to commit Hobbs Act robbery, is "less serious" than a valid one.  But that assertion improperly reframes the analysis in terms of the law as it stands today.  This Court has confirmed that post-plea changes in law are irrelevant to questions of voluntariness and knowingness under Rule 11.  In *United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005), it held that "the issuance of *Booker* after [a] plea agreement was reached does not render [a prior] plea unknowing or involuntary."  *Id.* at 153.  It reasoned that "[a] plea agreement, like any contract, allocates risk," and "the possibility of a favorable change in the law occurring after a plea is one of the normal risks" accompanying a guilty plea.  *Id.* So too here.

**E.  *If this Court agrees that defendant is entitled to relief, the appropriate remedy under § 2255 should be left for the district court on remand.***

Finally, even if this Court agrees that defendant is entitled to vacate his § 924(c) count, this Court should remand for the district court to determine the appropriate remedy.  *See, e.g., United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007); *United States v. Johnson*, 420 F. Supp. 3d 462 (E.D. Va. 2019); *United States v. Toney*, 2020 WL 1951651 (N.D. Ind. Apr. 23, 2020).

## Conclusion

For the foregoing reasons, this Court should affirm defendant's convictions and sentence.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

_____/s/_____
Richard D. Cooke
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument would aid the Court in reaching its decision.

## Certificate of Compliance

I certify that I wrote this brief using 14-point Times New Roman typeface and Microsoft Word 2010.

I further certify that this brief does not exceed 13,000 words (and is specifically 11,712 words) as counted by Microsoft Word, excluding the table of contents, table of citations, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____
Richard D. Cooke
Assistant United States Attorney