No. 19-7616

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

JUSTIN EUGENE TAYLOR,
*Defendant/Appellant*.
_____

On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. M. Hannah Lauck)
_____

REPLY BRIEF OF THE APPELLANT
_____

**GEREMY C. KAMENS**
**Federal Public Defender**

**Frances H. Pratt**
**Laura J. Koenig**
**Assistant Federal Public Defenders**
**Counsel for Appellant**
**1650 King Street, Suite 500**
**Alexandria, VA 22314**
**(703) 600-0800**
**Fran_Pratt@fd.org**
**Laura_Koenig@fd.org**

# **TABLE OF CONTENTS**

Table of Authorities .................................................................................................. iii

Argument......................................................................................................................1

I.  Under the Modified Categorical Approach, This Court Must Assume
    That Mr. Taylor's Guilty Plea to the 18 U.S.C. § 924(c) Count Was
    Predicated on Hobbs Act Conspiracy............................................................1

    A.  The Government's Attempts to Avoid Application of the
        Categorical / Modified Approach Fail ...............................................1

    B.  The Government's Fact-Based Harmless Error Analysis Does
        Not Apply Here ...................................................................................4

        1.  After Finding *Shepard* Error in the Application of the
            Categorical or Modified Categorical Approach on Plain
            Error Review, Courts Determine Harm by Whether the
            Error Increased the Sentence ...................................................5

        2.  The Government Relies on Inapposite Cases ............................7

II. Attempted Hobbs Act Robbery Does Not Categorically Qualify as a
    Crime of Violence Under § 924(c)'s Force Clause .........................................9

    A.  Section 924(c)'s Force Clause Does Not Include Offenses That
        Can Be Proven Without Evidence That the Defendant Used
        Force, Threatened to Use Force, or Attempted to Use Force ..............9

    B.  Because the Elements of an Attempted Commission of a Crime
        of Violence Can Be Satisfied by Any Substantial Act – Including
        Acts That Do Not Involve Force – Meant to Culminate in
        Commission of the Crime, It Is Not Equivalent to an Attempted
        Use of Force .......................................................................................14

    C.  Mr. Taylor Was Charged With Aiding and Abetting an
        Attempted, Not a Completed, Hobbs Act Robbery ...........................18

III. Mr. Taylor Can Establish Cause and Prejudice to Excuse His
     Procedural Default...................................................................................20

C.      Mr. Taylor Satisfies the Standard for Demonstrating Cause ..............20

D.      A *Johnson/Davis* Claim Is a Truly Novel Claim That Falls Within the *Reed* Exception, Contrary to the Government's View ..................................................................................................23

E.      Mr. Taylor Can Establish Prejudice ....................................................26

Conclusion ......................................................................................................27

Certificate of Compliance

# **TABLE OF AUTHORITIES**

## Cases

*Bailey v. United States*, 516 U.S. 137 (1995) ......................................................8, 23

*Bousley v. United States*, 523 U.S. 614, 623 (1998)..........................................23, 24

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)............................................................4

*Cross v. United States*, 892 F.3d 288 (7th Cir. 2018)...............................................25

*Glover v. United States*, 531 U.S. 198 (2001) ........................................................26

*James v. United States*, 550 U.S. 192 (2007) .............................................22, 24, 25

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ..........................22, 23, 25, 26, 27

*Lassend v. United States*, 898 F.3d 115 (1st Cir. 2018) ..........................................24

*McLaughlin v. United States*, 476 U.S. 16 (1986)............................................. 11-12

*Murray v. Carrier*, 477 U.S. 478 (1986) ..........................................................20, 21

*Pangelinan v. United States*, 2020 WL 1858403 (D. N. Mar. I. Apr. 10, 2020) ...................................................................................................................................12

*Reed v. Ross*, 468 U.S. 1 (1984) .....................................................21, 22, 23, 24, 25

*Rose v. United States*, 738 F. App'x 617 (11th Cir. 2018)................................24, 25

*Royer v. United States*, 324 F. Supp. 3d 719 (E.D. Va. 2018) ...............................26

*Schlup v. Delo*, 513 U.S. 298 (1995) .....................................................................21

*Shepard v. United States*, 544 U.S. 13 (2005)...............................................3, 4, 5, 7

*Strickler v. Greene*, 527 U.S. 263 (1999) ..............................................................26

*United States v. Boykin*, 669 F.3d 467 (4th Cir. 2012)................................5, 6, 7, 9

*United States v. Bryant*, 949 F.3d 169 (4th Cir. 2020) .............................................2

*United States v. Castillo-Marin*, 684 F.3d 914 (9th Cir. 2012)..................................7

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) .........................................2

*United States v. Cordero*, 166 F.3d 334 (4th Cir. 1998) .........................................12

*United States v. Dantzler*, 771 F.3d 137 (2d Cir. 2014)........................................6, 7

*United States v. Davis*, 139 S. Ct. 2319 (2019) ............................................23, 25, 27

*United States v. Dinkins*, 928 F.3d 349 (4th Cir. 2019)..........................................19

*United States v. Dominguez*, 954 F.3d 1251, 1267 (9th Cir. 2020).............13, 14, 18

*United States v. Dozier*, 848 F.3d 180 (4th Cir. 2017) .............................................9

*United States v. Engle*, 676 F.3d 405 (4th Cir. 2012)..............................................9

*United States v. Frady*, 456 U.S. 152 (1982)..........................................................26

*United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015)........................................2, 9

*United States v. Hamrick*, 43 F.3d 877 (4th Cir. 1995)..........................................16

*United States v. Hare*, 820 F.3d 93 (4th Cir. 2016)..................................................8

*United States v. Horse Looking*, 828 F.3d 744 (8th Cir. 2016) ................................4

*United States v. Ingram*, 947 F.3d 1021, 1025-26 (7th Cir. 2020).....................14, 18

*United States v. Kennedy*, 881 F.3d 14 (1st Cir. 2018) ............................................4

*United States v. Marcia-Acosta*, 780 F.3d 1244 (9th Cir. 2015)...............................4

*United States v. McFadden*, 739 F.2d 149 (4th Cir. 1984)..........................11, 14, 18

*United States v. Mitchell*, 104 F.3d 649 (4th Cir. 1997)...........................................8

*United States v. Olano*, 507 U.S. 725 (1993) ...........................................................4

*United States v. Pratt*, 351 F.3d 131 (4th Cir. 2003)........................................10, 18

*United States v. Redrick*, 841 F.3d 478 (D.C. Cir. 2016)........................................25

*United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020) .............................................25

*United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018) (*St. Hubert II*).............14

*United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001) ......................................23, 25

*United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc) ....12, 13, 14, 15, 18

*United States v. Smith*, 957 F.3d 590 (5th Cir. 2020)..............................................14

*United States v. Snyder*, 871 F.3d 1122 (10th Cir. 2017)....................................25, 26

*United States v. Strayhorn*, 743 F.3d 917 (4th Cir. 2014) ......................................13

*United States v. Terry*, 131 F.3d 138, 1997 WL 759274 (4th Cir. 1997)................17

*United States v. Turner*, 501 F.3d 59 (1st Cir. 2007) ...............................................10

*United States v. Vann*, 660 F.3d 771 (4th Cir. 2011)...............................................2, 3

*United States v. Villegas*, 655 F.3d 662 (7th Cir. 2011) ..........................................11

*United States v. Wrobel*, 841 F.3d 450 (7th Cir. 2016) ............................................11

Statutes

18 U.S.C. § 111 ..............................................................................................................16

18 U.S.C. § 924(c) ...............................................................................................*passim*

18 U.S.C. § 924(e) (ACCA)......................................................................6, 7, 22, 25

18 U.S.C. § 1114 ...........................................................................................................16

18 U.S.C. § 1512 ...........................................................................................................16

18 U.S.C. § 1951 (Hobbs Act) .........................................................................*passim*

28 U.S.C. § 2255 ...................................................................................................20, 27

No. 19-7616

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT

_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

JUSTIN EUGENE TAYLOR,
*Defendant/Appellant.*

_____

On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. M. Hannah Lauck)

_____

REPLY BRIEF OF THE APPELLANT

_____

**<u>ARGUMENT</u>**

I.   UNDER THE MODIFIED CATEGORICAL APPROACH, THIS
     COURT MUST ASSUME THAT MR. TAYLOR'S GUILTY PLEA
     TO THE 18 U.S.C. § 924(C) COUNT WAS PREDICATED ON
     HOBBS ACT CONSPIRACY

     A.   <u>The Government's Attempts to Avoid Application of the
          Categorical / Modified Approach Fail</u>

     1.   Essentially ignoring the categorical approach to determining whether

an offense constitutes a crime of violence, the government argues that Mr. Taylor is

not entitled to relief because of his admissions in his statement of facts.  *See* Gov't

1

Br. 43.  Instead, the government maintains that the modified categorical approach does not apply because this case does not involve prior convictions or a trial but a guilty plea. *See* Gov't Br.  41-46.  The government is wrong.

First, the categorical and modified categorical approach provide the only tests by which offenses are identified as crimes of violence.  In *United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015), for example, this Court explicitly said that both the categorical approach and the modified categorical approach apply to the "crime of violence" element in the § 924(c) offense at issue.  *Id.* at 498.  Likewise, in *United States v. Bryant*, 949 F.3d 169, 172 (4th Cir. 2020), the Court applied the modified categorical approach to § 924(c)'s crime of violence element.  *Id*. at 172.  The *Bryant* court reiterated that "[t]o determine whether an offense qualifies as a crime of violence under the force clause of § 924(c)(3)(A), 'we apply the categorical approach or the modified categorical approach, depending on the nature of the offense.'"  *Id*. (internal citations omitted).  This is consistent with *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) (en banc), in which the Court applied the modified categorical approach to an instant offense when the offense had alternative elements. *Id.* at 227-28.

Second, the modified categorical approach applies equally to jury trials and to guilty pleas.  As the Court clarified in *United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc), like guilty pleas*,* "in trials by jury, it has been established that a

2

defendant convicted under a conjunctively charged indictment cannot be sentenced –

in the absence of a special verdict form identifying the factual bases for conviction –

to a term of imprisonment exceeding the statutory maximum for the 'least-punished'

of the disjunctive statutory conduct." *Id.* at 774.

Accordingly, the government's attempt to avoid the modified categorical

approach should be rejected. The approach squarely applies here and requires the

Court to conclude that Mr. Taylor's § 924(c) conviction rested on Hobbs Act

conspiracy.

2. The government also suggests that even if the modified categorical

approach applies, a court may assume that the § 924(c) conviction was predicated

on both a qualifying offense and the non-qualifying offense so long as the defendant

factually admits to both. Gov't Br. 43-44. The Court should reject this suggestion,

for it ignores *Shepard*'s command that the *Shepard* documents must conclusively

establish that the defendant pled to the qualifying offense. When the facts in the

plea agreement satisfy either attempted Hobbs Act robbery and Hobbs Act

conspiracy as the basis for the § 924(c) count, then the attempted Hobbs Act robbery

facts were not necessary to the § 924(c) conviction. That in turn means the Court

must assume the defendant pled to Hobbs Act conspiracy, the less serious of the two

offenses, as *Vann* makes clear.

*Marcia-Acosta*, *Kennedy*, and *Horse Looking*,[1] all of which adhere to *Shepard*, are directly on point. *See* Appellant's Br. 21-27. In those cases, the defendants admitted to facts that made out both a qualifying offense and a non-qualifying offense, but there was nothing in the record establishing that the elements to which the defendant pleaded guilty were necessarily for the qualifying offense. The government, though, says nothing at all about these cases and cites to nothing contrary.

B.      The Government's Fact-Based Harmless Error Analysis Does Not Apply Here

To obtain relief on collateral review raising claims of constitutional error, a defendant must demonstrate that the error had "substantial and injurious effect" on the outcome. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). This standard is the same as the third prong of plain error review on direct appeal, which requires a defendant to demonstrate that an unobjected-to error affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 734 (1993). In the context of appellate plain error review involving *Shepard* error in the application of the categorical or modified categorical approach, this Court and others measure harm by looking at whether a defendant has been subjected to additional prison time.

---

[1] *United States v. Marcia-Acosta*, 780 F.3d 1244 (9th Cir. 2015); *United States v. Horse Looking*, 828 F.3d 744 (8th Cir. 2016); *United States v. Kennedy*, 881 F.3d 14 (1st Cir. 2018).

4

In arguing that the error here is harmless, however, the government employs a fact-based harmless error analysis, and relies on inapposite cases. For the following reasons, the Court should reject the government's arguments on harm.

1.      After Finding *Shepard* Error in the Application of the Categorical or Modified Categorical Approach on Plain Error Review, Courts Determine Harm by Whether the Error Increased the Sentence

As a preliminary matter, the government conflates harmless-error analysis of Mr. Taylor's merits-based arguments, with actual-innocence analysis applicable to procedural default. But these are two distinct inquiries. Moreover, the government's argument on actual innocence is a red herring. Mr. Taylor has no need to show actual innocence because it is just one means of excusing procedural default, cause and prejudice being the other. *See infra* Part III.

Turning to the merits of Mr. Taylor's substantive arguments, again, this case involves the crime-of-violence element of § 924(c), which requires application of the categorical/modified categorical approach. Thus, the relevant cases for determining harm are those involving the categorical/modified categorical approach and *Shepard* error on plain error review. These cases demonstrate that the analysis regarding whether the error affects the defendant's substantial rights is conducted without looking to the facts.

In *United States v. Boykin*, 669 F.3d 467 (4th Cir. 2012), this Court found plain error where the district court relied on facts in the presentence report to

determine whether two prior offenses were committed on different occasions for purposes of applying the ACCA. 669 F.3d at 471-72. This Court applied the modified categorical approach, looking only to approved *Shepard*-documents, and concluded that the district court erred when it relied on facts in the presentence report that did not bear the hallmarks of derivation from *Shepard*-approved sources. *Id*. at 470. When assessing the prejudice prong, this Court did not stray from the modified categorical approach and switch gears to perform a factual analysis. Rather, it concluded that the error affected the defendant's substantial rights because "he was sentenced to 180 months of incarceration, drastically exceeding his advisory guidelines range." *Id*. at 472. This Court also determined that such an error was a miscarriage of justice and warranted relief. *Id*.

The Second Circuit has held the same on similar facts. In *United States v. Dantzler*, the Court found plain error when the district court relied on factual descriptions in the presentence report in determining whether two prior offenses occurred on different occasions for ACCA purposes. 771 F.3d 137, 148 (2d Cir. 2014). As in *Boykin*, the appellate court strictly applied the modified categorical approach and did not look to the facts when analyzing whether the error affected the defendant's substantial rights. *Id*. Instead, the Second Circuit held that the error affected Dantzler's substantial rights because "[t]his factual determination [by the district court] in turn triggered the enhancement in Dantzler's applicable Guidelines

6

imprisonment range from 92-115 months to 168-210 months, as well as the 15-year (180-month) mandatory minimum sentence under the ACCA." *Id*. Following the reasoning in *Boykin*, the Court held that error affected the fairness, integrity, or public reputation of judicial proceedings. *Id*.; *accord United States v. Castillo-Marin*, 684 F.3d 914, 926 (9th Cir. 2012).

Thus, when appellate courts confront the intersection of the modified categorical approach and plain error review, they stay true to the modified categorical approach and do not switch to a factual prejudice inquiry. In other words, plain error review does not allow the government to abandon the modified categorical approach. "The absence of an objection will not relieve the Government of its burden of proving through *Taylor*- and *Shepard*-approved sources that the ACCA enhancement applies." *Dantzler*, 771 F.3d at 148.

Similarly, the absence of a preserved claim here does not relieve the government of its burden to prove that the § 924(c) conviction was predicated on offenses whose elements constitute an actual crime of violence. And because Mr. Taylor was sentenced to a 120-month consecutive sentence, he can establish actual prejudice.

### 2. The Government Relies on Inapposite Cases

In arguing that Mr. Taylor cannot demonstrate actual innocence, which as noted above is not the standard applicable to Mr. Taylor's substantive argument on

the ambiguity of his guilty plea, the government relies on cases that are inapposite. For example, the government cites to *United States v. Hare*, 820 F.3d 93 (4th Cir. 2016). Gov't Br. 25. But the government's description of *Hare* makes clear why it is not relevant: the jury found on a special verdict sheet that the § 924(c) conviction rested not only on Hobbs Act robbery but also on a drug trafficking predicate. *Id.* at 106.

In this case, though there is nothing in the plea colloquy or plea agreement to establish that Mr. Taylor pled guilty to the elements of both alleged predicates. In the plea agreement, there is no elements section with checked boxes establishing that Mr. Taylor pled guilty to the elements of both attempted Hobbs Act robbery and Hobbs Act conspiracy. Likewise, in the plea colloquy, the district court never specified that the elements to which Mr. Taylor was pleading included both attempted Hobbs Act robbery and Hobbs Act conspiracy.

As another example, the government relies on *United States v. Mitchell*, 104 F.3d 649 (4th Cir. 1997), as an example of "how to apply *Hare*'s logic in the context of guilty pleas." Gov't Br. 26. But *Mitchell* involved a *Bailey* issue, and did not involve an element requiring the categorical/modified categorical approach. Therefore, it has no bearing on this case.

In sum, in refusing to adhere to the correct harmless error analysis in *Boykin*, and instead asking the Court to presume, based on the *facts* of the case, that Mr. Taylor's § 924(c) conviction *could* have rested on a valid predicate, the government does an end run around the categorical/modified categorical approach, which forbids "evidentiary inquiries into the factual basis" to determine what the jury *could* have found. *Shepard v. United States*, 544 U.S. 13, 20 (2005); *Fuertes,* 805 F.3d at 498.

II.    ATTEMPTED HOBBS ACT ROBBERY DOES NOT CATEGORI-CALLY QUALIFY AS A CRIME OF VIOLENCE UNDER § 924(C)'S FORCE CLAUSE

A.    <u>Section 924(c)'s Force Clause Does Not Include Offenses That Can Be Proven Without Evidence That the Defendant Used Force, Threatened to Use Force, or Attempted to Use Force</u>

Mr. Taylor and the government agree that to prove an attempted Hobbs Act robbery, the government is required to show that the defendant (1) had "culpable intent to commit" the robbery and (2) "took a substantial step towards completion of the crime that strongly corroborates that intent." *United States v. Engle*, 676 F.3d 405, 419 20 (4th Cir. 2012). A substantial step is "a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose." *United States v. Dozier*, 848 F.3d 180, 186 (4th Cir. 2017). *See* Appellant's Br. 37; Gov't Br. 16. While "mere preparation" is not sufficient, a "direct, substantial act toward the commission of a crime need not be the last possible act before its commission. An attempt comprises any substantial act

9

in a progression of conduct that is meant to culminate in the commission of the crime intended." *United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003).

Mr. Taylor and the government disagree, however, about whether § 924(c)'s force clause is necessarily satisfied by the attempted commission of a crime of violence. Although the government claims that its argument follows the "plain text" of the statute, Gov't Resp. 12, in fact the government seeks to redraft the force clause to encompass offenses that have "as an element the use or threatened use of physical force against the person or property of another, and attempts to commit such offenses." But that is not what the statute says.

The text of the force clause is limited to those offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Accordingly, a crime of violence must have *an element* that requires proof of either the use or threatened use of force, or the attempted *use of force*. Congress, in other words, did not define a crime of violence as an offense that has as an element the use or threatened use of force, or a substantial step toward some other non-force element of the offense.

The elements of attempted Hobbs Act robbery, however, do not require proof of an attempt to commit the force element of the offense. *See e.g., United States v. Turner*, 501 F.3d 59, 68 69 (1st Cir. 2007) (defendant and coconspirators planned robbery, surveilled target, prepared vehicles, and gathered at designated meeting

10

point); *United States v. Villegas*, 655 F.3d 662, 68 69 (7th Cir. 2011) (evidence of attempted Hobbs Act robbery sufficient where defendant had discussed robbery with codefendant the day before and arrived at pre-arranged meeting place, where he gave codefendant tools for getaway); *United States v. Wrobel*, 841 F.3d 450, 454-55 (7th Cir. 2016) (defendants made plans to travel from Chicago to New York to commit a robbery but were arrested before they reached New York).

Likewise, as this Court held in *United States v. McFadden*, proof of an attempt to commit bank robbery does not require "that force and violence or intimidation must accompany the attempt to take property from the custody or possession of the bank." 739 F.2d 149, 151 (4th Cir. 1984); *see* Appellant's Br. 38-39. Attempted Hobbs Act robbery is no different than attempted bank robbery in this regard, and does not require proof of a substantial step toward the commission of the force element of the substantive offense.

Moreover, the force clause is limited to an offense with an element of "attempted *use*" of force, not an "attempted *threat* to use force." Yet attempted Hobbs Act robbery can be accomplished solely by attempting to threaten the use of force. To explain, the text of the Hobbs Act robbery statute provides that it can be accomplished by "means of actual *or threatened* force," 18 U.S.C. § 1951(b)(1) (emphasis added), and "the display of" even an inoperable replica or toy firearm is sufficient to "instill fear[] in the average citizen." *See McLaughlin v. United States*,

476 U.S. 16, 17-18 (1986); *United States v. Cordero*, 166 F.3d 334 (4th Cir. 1998) (affirming Hobbs Act robbery conviction of defendant who robbed store using toy pistol).

In turn, an *attempted* Hobbs Act robbery can be committed merely by attempting to threaten force (i.e., taking a substantial step toward the threat of force), for example, by approaching a store with the intent to rob it with the assistance of an inoperable firearm. But such action is neither a *completed threat* of force nor an attempt to *use* force as required to satisfy the force clause definition. Consequently, "[w]here police apprehend this would-be robber while they are approaching their target, but before they have threatened anyone with a ruse, the government may still prosecute them for attempted Hobbs Act robbery. The would-be robber, however, has neither attempted to use nor yet threatened to use violent force against anyone." *Pangelinan v. United States*, 2020 WL 1858403, at *8 (D. N. Mar. I. Apr. 10, 2020). An attempted Hobbs Act robbery thus does not satisfy the requirement of having an element of "attempted use" of force.

This is no different from conspiracy to commit Hobbs Act robbery. In *Simms*, this Court held that conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence because it "does not invariably require the actual, attempted, or threatened use of force." *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019) (en banc) (emphasis added). Prosecution for conspiracy to commit Hobbs Act

robbery requires that the government "prove that the defendant agreed with at least one other person to commit" every element of Hobbs Act robbery. *United States v. Strayhorn*, 743 F.3d 917, 925 (4th Cir. 2014). But *Simms* also makes clear that mere *intention* to commit each element of a substantive offense is not enough to transform an inchoate offense – such as conspiracy or attempt – into a crime of violence, even when corroborated through an overt act or substantial step, because nothing in the elements of either inchoate offense requires that act or step to involve violent physical force.

As Ninth Circuit Judge Nguyen wrote recently in a dissenting opinion, "the Fourth Circuit's holding that *conspiracy* to commit Hobbs Act robbery is not a crime of violence is relevant" because the Court's reasoning in *Simms* "*applies with equal force* to the crime of attempted Hobbs Act robbery. Comparing the act element of an attempt – a substantial step – with the qualifying act elements of a crime of violence leads to only one conclusion. Attempted Hobbs Act robbery does not qualify as a crime of violence." *United States v. Dominguez*, 954 F.3d 1251, 1267 (9th Cir. 2020) (Nguyen, J., dissenting in part) (first emphasis in original, second added).

B.     <u>Because the Elements of an Attempted Commission of a Crime of Violence Can Be Satisfied by Any Substantial Act – Including Acts That Do Not Involve Force – Meant to Culminate in Commission of the Crime, It Is Not Equivalent to an Attempted Use of Force</u>

Strikingly, the government never responds to this comparison between an attempt to commit Hobbs Act robbery and a conspiracy to commit Hobbs Act robbery, and it does not cite either *McFadden* or *Simms*. Instead, following the lead of the Eleventh, Seventh, and Ninth Circuits, the government collapses the distinction between an attempt to commit an offense generally and an attempt to use force specifically. *See Dominguez*, 954 F.3d at 1261-62; *United States v. Ingram*, 947 F.3d 1021, 1025-26 (7th Cir. 2020); *United States v. St. Hubert*, 909 F.3d 335, 352-53 (11th Cir. 2018) (*St. Hubert II*); *see also United States v. Smith*, 957 F.3d 590, 594-96 (5th Cir. 2020) (holding that attempted murder satisfies force clause). Again, § 924(c)'s force clause requires an element involving force. It does not include any offense requiring proof of a "substantial act in a progression of conduct that is meant to culminate in the commission of the crime" that contains a force element, because such an offense does not categorically involve the attempted use of force.

In the government's view, however, a defendant who attempts to commit Hobbs Act robbery "intends to use force." Gov't Br. 12.[2] The government then maintains that the defendant's intention coupled with an overt act to commit a crime of violence that falls short of completion "resolves the issue in this appeal" because these elements establish that a defendant "attempted to use force." *Id.* This is a non sequitur because the force clause definition and the categorical approach focus on the "elements" of an offense. As this Court held in *Simms*, regardless of a defendant's intentions, if the elements of an offense do not categorically require proof that involves the use, threatened use, or attempted use of force, the offense is not a crime of violence under the force clause. 914 F.3d at 233-34. As such, if the overt act that constitutes the "substantial step" did not involve an attempt to use force, the elements of the offense did not require proof of an "attempted use of force."

To be sure, later in its argument, the government tries to get around § 924(c)'s plain language. *See* Gov't Br. 14-19. In doing so, it claims that the interpretation of § 924(c) adopted by the dissenters in *St. Hubert* and in *Nyugen* would "render the

---

[2] This statement is not entirely accurate. As explained above, Hobbs Act robbery can be committed by *threatened* force, even when a defendant never actually intends to use force. But the threatened use of force is covered by a separate prong of § 924(c)'s force clause. And again, § 924(c)'s plain language requires that an offense have, as an element, an attempted use of force, which is distinct from a threatened use of force.

'attempted use' language a nullity" for "[u]nder the dissents' reasoning, *no* attempt crime would ever constitute a crime of violence, because there would always be a theoretical gap between a substantial step toward the crime's completion and a substantial step toward the use of force."  Gov't Br. 16, 17.

There are two problems with the government's position.  First, its view of the *St. Hubert* and *Nguyen* dissents ignores attempt cases in which the "substantial step" is clearly corrobative of an intent to use force, not to commit an offense more generally.  For example, someone can be convicted of assaulting a federal officer by using "a deadly or dangerous weapon (including a weapon intended to cause death or danger *but that fails to do so by reason of a defective component*)."  18 U.S.C. § 111(b).  Using a weapon "intended to cause death or danger but that fails to do so by reason of a defective component" plainly constitutes an attempt to commit assault with a deadly or dangerous weapon – i.e., an attempted use of force.  Indeed, attempted assault under § 111(b) has been used as the basis for a § 924(c) conviction. *See United States v. Hamrick*, 43 F.3d 877, 880 (4th Cir. 1995) (charging both § 111(b) and attempted murder of a federal officer, 18 U.S.C. § 1114, as predicates for § 924(c) offenses).

Additionally, witness tampering under 18 U.S.C. § 1512(a)(2) & (a)(3)(B)(ii) requires the "use or attempted use of physical force against any person."  In turn, attempted witness tampering indisputably qualifies as a "crime of violence" under

16

the § 924(c) force clause, which likewise requires an element "the use, attempted use, or threatened use of physical force." Finally, assimilated state offenses containing an element of the attempted use of force can qualify as § 924(c) predicates. *See United States v. Terry*, 131 F.3d 138, 1997 WL 759274, at *2 (4th Cir. 1997). Each of these examples demonstrates that, contrary to the government's view, there is no "theoretical gap" between a substantial step toward the crime's completion and a substantial step toward the use of force.

Second, as noted earlier, had Congress intended the force clause to operate in the way the government contends it does, the legislature would have drafted the clause as follows:

> For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –
>
> (A)   (i) has as an element the use or threatened use of physical force against the person or property of another, *or* (ii) is an attempt to commit an offense that has such an element; …

But Congress did not do so. This Court should reject the government's attempts to rewrite the statute, and adhere to the plain textual meaning of § 924(c)'s force clause.

At bottom, the government urges this Court to follow the lead of the three other federal appellate courts that have concluded that attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s force clause simply because a completed Hobbs Act robbery qualifies. As Mr. Taylor argued previously,

17

Appellant's Br. 41-45, these decisions all make the same error, in that they wrongly equate an attempt to *commit a crime of violence* on the one hand with an attempt to *use physical force* on the other. These two things are not the same, because proof of intent and a substantial step toward the commission of a violent crime does not categorically require proof of the use, attempted use, or threatened use of force.

This Court should follow its en banc decision in *Simms*, 914 F.3d at 233-34, not *Dominguez* or *Ingram* or *St. Hubert*, and *Simms* stands for the proposition that intention to commit a crime of violence is insufficient to satisfy the force-clause definition of a crime of violence. The Court should also adhere to its explanation of what is required to show an "attempt," a category of conduct that includes "*any substantial act in a progression of conduct that is meant to culminate in the commission of the crime intended.*" *Pratt*, 351 F.3d at 136 (emphasis added). Finally, the Court should abide by its ruling in *McFadden*, in which it rejected the argument that force or violence must be part of an attempted robbery offense. Because attempted Hobbs Act robbery does not categorically require proof of the attempted use of force, it does not satisfies the force clause of § 924(c)'s definition of a crime of violence.

  C. <u>Mr. Taylor Was Charged With Aiding and Abetting an Attempted, Not a Completed, Hobbs Act Robbery</u>

Finally, the government briefly suggests that because Mr. Taylor was also charged with aiding and abetting a Hobbs Act robbery, his § 924(c) conviction

remains valid. Govt. Br. 19-20. While the government relies on *United States v. Dinkins*, 928 F.3d 349, 359 (4th Cir. 2019), for support, the government does not address what Mr. Taylor stated in his brief about the decision: that it actually *supports* his argument that attempted robbery is not a crime of violence. *See* Appellant's Br. 44-45. This is so because to be convicted of aiding and abetting a violent offense, the offense must have been completed. That fact was critical to the *Dinkins* Court's conclusion that accessory before the fact to a violent felony is also a violent felony; as the Court explained, "[t]his fact distinguishes Dinkins' conviction as an accessory before the fact from other inchoate offenses, such as conspiracy, which do not require that the object crime be completed." *Id.* at 359 n.7. The absence of that fact is critical to the Court's analysis of attempt to commit a violent felony or crime of violence, which similarly "do[es] not require that the object crime be completed."

More importantly, the government assumes that Mr. Taylor was charged with aiding and abetting Hobbs Act robbery. He was not. Count Six charged that Mr. Taylor "did knowingly and unlawfully obstruct, delay, and affect commerce by attempting robbery, and did aid and abet the same, to wit: by attempting and *aiding and abetting another to attempt to rob* at gun-point of an individual of United States Currency …." J.A. 13.

## III. MR. TAYLOR CAN ESTABLISH CAUSE AND PREJUDICE TO EXCUSE HIS PROCEDURAL DEFAULT

In granting a certificate of appealability, this Court identified only two questions for consideration, both substantive in nature. Procedural issues relating to § 2255 litigation were not among those questions. The government acknowledges that it need not raise these issues now, yet spends over half of its argument on them. *See* Gov't Br. 21-41. Moreover, to the extent that the government raised procedural default in the district court, it argued only that Mr. Taylor could not demonstrate that he was actually innocent; it did not argue that he could not establish cause and prejudice. *See* J.A. 121-25. Therefore, the government has waived that part of its argument addressing cause and prejudice.

For both these reasons, the Court should decline to address these issues now, and instead leave them to the district court to decide on remand. However, to the extent the Court wishes to address these issues now, it is plain that Mr. Taylor can establish both cause and prejudice to excuse procedural default.

### C. Mr. Taylor Satisfies the Standard for Demonstrating Cause

Defendants are ordinarily barred from asserting new claims raised for the first time on collateral review. The failure to present such claims earlier, though, may be excused if the defendant establishes either (1) "cause" for and "prejudice" from the procedural default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or (2) a

20

"miscarriage of justice" that permits "a habeas court to reach the merits of a barred claim," *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

"Cause" is satisfied when the legal basis of a claim was not reasonably available to a petitioner at the time of his direct appeal. *See Murray*, 477 U.S. at 488 ("[A] showing that the factual or legal basis for a claim was not reasonably available to counsel … would constitute cause under this standard." (citations omitted)); *Reed v. Ross*, 468 U.S. 1, 15 (1984) ("Counsel's failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar.").

In *Reed*, the Supreme Court held that that when a claim is based upon one of its decisions that either "explicitly overrule[s] one of [its] precedents," or "overtur[n][s] a longstanding practice … which a near-unanimous body of lower courts authority has expressly approved," "the failure of a defendant's attorney to have pressed such a claim before a [] court is sufficiently excusable to satisfy the cause requirement." *Reed*, 468 U.S. at 17. As applied here, Mr. Taylor's claim meets this standard.

First, *Reed* makes clear that if Supreme Court precedent affirmatively forecloses relief at the time of sentencing and direct appeal, then cause is satisfied. Mr. Taylor pleaded guilty in February of 2009 and was sentenced that May. J.A. 5-6, 15, 52. This Court dismissed Mr. Taylor's direct appeal in January of 2011.

J.A. 7. At that time, the Supreme Court had already decided *James v. United States*, 550 U.S. 192 (2007), in which the Court explicitly held that the ACCA residual clause was not void for vagueness. That, in turn, meant that § 924(c)'s residual clause, which was worded similarly to the ACCA residual clause, was also not void. Therefore, in 2009, the void-for-vagueness argument was foreclosed under the first prong of *Reed*.

Second, under *Reed*, when there is a wall of uniform lower court authority that forecloses a claim at time of sentencing and direct appeal, cause has been established. In 2009 and 2010 (and, indeed, up until *Johnson*), every court to decide the issue, both before *James* and after, had held that the residual clause in the ACCA was not void for vagueness. That means, in turn, that unanimous lower court authority precluded the similar claim that the § 924(c) residual clause was not unconstitutionally void before *Johnson*. In other words, a unanimous body of lower court authority *had* expressly approved the § 924(c) residual clause at that time. Consequently, the second *Reed* prong is also easily met.

*Johnson* expressly overruled *James* and it overturned long-standing circuit decisions. Accordingly, the failure of Mr. Taylor's original counsel to challenge § 924(c)'s residual clause as being void for vagueness "is sufficiently excusable to satisfy the cause requirement." *Reed*, 468 U.S. at 17.

D.   A *Johnson/Davis* Claim Is a Truly Novel Claim That Falls Within the *Reed* Exception, Contrary to the Government's View

The government claims that Mr. Taylor cannot establish "cause" to excuse procedural default on the ground that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time,'" as opposed to being truly novel.  Gov't Br. 38 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998), internal quotation marks omitted, and citing *Reed*, 468 U.S. at 16-17).  Analogizing Mr. Taylor's *Johnson/Davis* claim to an *Apprendi* challenge to a statutory range based upon judge-found facts, the government maintains that "[a]ny novelty argument here is incompatible with both *Bousley* and binding Circuit precedent" holding that *Apprendi* claims not asserted on direct appeal were subject to procedural default.  Gov't Br. 39 (citing *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001)).  For two reasons, the government is wrong.

First, *Reed* and *Bousley* presented contrasting circumstances.  In *Reed*, as described above, the Supreme Court held that when a claim is based on one of its decisions that either overturned an earlier Supreme Court case or overturned near-unanimous circuit precedent, a defendant's failure to raise the claim "is sufficiently excusable to satisfy the cause requirement." *Reed*, 468 U.S. at 17.

*Bousley* involved the failure to raise a claim regarding the meaning of "use" of a firearm in 18 U.S.C. § 924(c) that the Court adopted in *Bailey v. United States*, 516 U.S. 137 (1995).  The Court's decision in *Bailey* did not overrule a prior

Supreme Court decision, lower courts were split on the issue, and therefore a defendant's failure to pursue such an argument on appeal was not excusable. Indeed, the statement in *Bousley* that "futility cannot constitute cause" when it refers to the "unacceptab[ility]" of a claim to a particular court at a particular time was made in the context of issues that remain open questions, and have not been foreclosed by a Supreme Court precedent.

As the First Circuit has explained,

> *Bousley* is no help to the government because the petitioner's argument in that case was not based on a constitutional right created by the Supreme Court's overruling of its own precedent. *Reed* stated that, where the Supreme Court "explicitly overrule[s] one of [its own] precedents, … the failure of a defendant's attorney to have pressed such a claim … is sufficiently excusable to satisfy the cause requirement." That is what happened here. Unlike the defaulted argument in *Bousley*, Lassend's argument was not "available at all" until the Supreme Court "explicitly overrule[d]" *Sykes* and *James*[.]

*Lassend v. United States*, 898 F.3d 115, 122-23 (1st Cir. 2018) (internal citations omitted). Consequently, *Bousley* "does not bar Mr. [Taylor's] vagueness challenge from being sufficiently novel to support cause because (1) the Supreme Court had decided and rejected that challenge in *James* …; and (2) because of *James* and *Sykes*, the circuits were in complete agreement on the issue as well." *Rose v. United States*, 738 F. App'x 617, 628 (11th Cir. 2018).

Indeed, several courts have agreed that a *Johnson* claim is a truly novel claim, finding that "no one – the government, the judge, or the [defendant] – could reasonably have anticipated *Johnson*." *Cross v. United States*, 892 F.3d 288, 295 (7th Cir. 2018) (quoting *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017)); *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016) (same); *cf. United States v. Rumley*, 952 F.3d 538, 546 (4th Cir. 2020) (describing *Johnson* as an unforeseeable "sea change" in ACCA jurisprudence). In sum, "*Reed* clearly applies to [Mr. Taylor's] case because *Johnson*, in announcing a new retroactively-applicable rule of constitutional law, explicitly overruled *James* and *Sykes*." *Rose*, 738 F. App'x at 628.

Second, the government's analogy to *Apprendi* claims, *see* Gov't Br. 39, is inapt. Defendants could not establish cause for failing to raise *Apprendi* claims because "defendants had been making *Apprendi*-like arguments ever since the Sentencing Guidelines came into being," *Sanders*, 247 F.3d at 145, and such arguments were not foreclosed by Supreme Court precedent. *See Rose*, 738 F. App'x at 628 n.7 (rejecting government's argument based on *Apprendi* that *Johnson* claims do not establish "cause" for procedural default). Accordingly, "*Reed* is squarely on point," *id.*, and neither *Bousley* nor *Apprendi* are relevant to Mr. Taylor's *Johnson*/*Davis* claim.

25

E.     Mr. Taylor Can Establish Prejudice

To establish "prejudice" sufficient to excuse procedural default and reach the merits of a claim, a petitioner need only show a "reasonable probability" that without the error at issue, the proceedings would have been different. *Strickler v. Greene*, 527 U.S. 263, 289 (1999). The prejudice inquiry turns on whether the error complained of "worked to [the petitioner's] actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982).

In other words, the question is whether a reasonable probability exists that the error at issue caused harm to the petitioner. And in this case, a reasonable probability exists that but for the error, Mr. Taylor could not have been convicted of the § 924(c) offense alleged in his indictment, thereby satisfying the "prejudice" required to excuse procedural default. *See United States v. Snyder*, 871 F.3d 1122, 1128 (10th Cir. 2017) (holding that "alleged error" based on *Johnson* necessarily resulted in prejudice); *Royer v. United States*, 324 F. Supp. 3d 719, 736 (E.D. Va. 2018) (holding that defendant established prejudice based on § 924(c) conviction based on conspiracy predicate); *see also Glover v. United States*, 531 U.S. 198, 200 (2001) (finding prejudice from ineffective assistance of counsel where defendant's sentence was increased by at least six months due to error, because "any amount of actual jail time" constitutes prejudice under the Sixth Amendment). Put differently, assuming

Mr. Taylor's claim has merit, the error necessarily impacted his conviction and sentence for violating § 924(c).

Whether the government hypothetically could have obviated the claim by charging the defendant differently is irrelevant. The prejudice inquiry does not provide an opportunity for speculation about what the government would have done had Mr. Taylor asserted a *Johnson*/*Davis* objection during his prosecution. In sum, because a "reasonable probability" exists that Mr. Taylor was sentenced based on a conviction that rests on the unconstitutional residual clause definition of a crime of violence, Mr. Taylor suffered actual prejudice.

## CONCLUSION

For the reasons set forth above and those argued in his opening brief, Mr. Taylor respectfully asks this Court to reverse the district court's denial of his § 2255 motion. Mr. Taylor further asks that the Court remand the case with instructions to the district court to vacate his § 924(c) conviction on Count Seven and conduct a resentencing hearing.

Respectfully submitted,

GEREMY C. KAMENS
Federal Public Defender
for the Eastern District of Virginia

s/ Frances H. Pratt
Frances H. Pratt
Laura J. Koenig
Assistant Federal Public Defenders
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
Fran_Pratt@fd.org
Laura_Koenig@fd.org

Dated July 28, 2020 (refiled August 3, 2020)

# CERTIFICATE OF COMPLIANCE

1.  This Reply Brief has been prepared using Microsoft Word 2016 software, Times New Roman font, 14-point proportional type size.

2.  EXCLUSIVE of the table of contents, table of authorities, and the certificate of service, this brief contains no more than 6,500 words, specifically 6,303 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

<table>
<tr><td>August 3, 2020</td><td>s/ Frances H. Pratt</td></tr>
<tr><td>Date</td><td>Frances H. Pratt<br>Assistant Federal Public Defender</td></tr>
</table>